IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 14-00826 LEK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MOTION |
| vs. | ) | |
| | ) | |
| ALBERT S.N. HEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION

I.    NATURE OF THE CASE

The Superseding Indictment charges Defendant Albert S.N. Hee with seven counts of corrupt interference with the administration of the Internal Revenue Service laws during 2002-2012, and six counts of submitting false tax returns for the years 2007-2012.  The Superseding Indictment alleges that Defendant caused multiple companies which he controlled to pay his personal expenses of approximately $4,063,294.39, and to misclassify such payments as deductible business expenses.  It is further alleged that Defendant failed to declare the receipt of such funds as income on his personal income tax returns, resulting in an unpaid tax liability of $425,988.00, and that his companies underpaid total corporate taxes of $140,651.00 by improperly deducting the payments as business expenses.

II.    STATEMENT OF RELEVANT FACTS

    A.    Mr. Kawafuchi's Role As Custodian Of Records.

Kurt Kawafuchi, Esq. is an attorney licensed to practice law in Hawaii and California. According to the 2013-2014 Annual Directory of the Hawaii State Bar Association, as well as his Pacer registration, Mr. Kawafuchi practices with the Hochman firm, which is located in Beverly Hills, California. Mr. Kawafuchi and Steven Toscher, also of the Hochman firm, are presently representing Defendant Albert S.N. Hee in this case.

In September or October of 2010, during the grand jury investigation of the case, Mr. Kawafuchi advised the government that he represented Defendant and his various companies and family trusts, namely, Waimana Enterprises, Inc., Clearcom, Inc., Ho'opa'a Insurance Corporation, Kekauluohi, Inc., Sandwich Isles Communications, Manu-Wai Corporation, Mauna Kea Power Company, the Adrianne Hee Irrevocable Trust, the Breanne Hee Irrevocable Trust and the Charlton Hee Irrevocable Trust. The grand jury investigation involved false tax returns filed both by Defendant and the foregoing corporate and trust entities. Mr. Kawafuchi agreed to accept service of grand jury subpoenas on behalf of those corporations and trusts, and to provide all subpoenaed business records of those corporations and trusts to the United States. Mr. Kawafuchi thereafter provided voluminous business records on behalf of such entities.

The records provided by Mr. Kawafuchi as custodian of records for the Defendant's companies are essential to the prosecution of the case, and must be introduced at trial.  At the time of the writing of this motion, however, Mr. Kawafuchi has declined to enter a written stipulation attesting to the authenticity of the business records.[1]  The United States thus will call Mr. Kawafuchi as a witness in the case, to describe the manner by which the records were maintained and collected, and authenticate them for admission.

B.   Mr. Kawafuchi's Role In The Creation Of A Potential "Reliance" Defense.

Prior to September 15, 2010, three months after this tax investigation commenced in June 2010, Mr. Kawafuchi, in his role as the Defendant's attorney, contacted KMH, the return preparer accounting firm hired by WEI and its subsidiaries, Waimana Enterprises, Inc., Clearcom, Inc., Ho'opa'a Insurance Corporation, Kekauluohi, Inc., Sandwich Isles Communications, Manu-Wai Corporation and Mauna Kea Power Company, to compile WEI's 2009 return.  Mr. Kawafuchi asked KHM personnel to review a statement that should be attached to

---

[1]   Moreover, the government's history of previous dealings with the Hochman firm in this district casts doubt on whether such a business records stipulation will be entered.  In <u>United States v. James Henry Pflueger</u>, Cr. No. 10-00631 LEK, the Hochman lawyers trying that case required William M. McCorriston, Esq. to appear and testify about his providing records to the grand jury as a custodian under very similar facts.  (Exhibit "2")

WEI's 2009 Form 1120 return.  (Exhibit "1" - "Statement in Support of 2009 Tax Return")

According to the actual return preparer/accountant, KMH did not have sufficient time to prepare the 2009 tax return for WEI and its subsidiaries. Numerous schedules and Exhibit "1", which was page number 106 of the return as filed, were attached to that return.  The previously described statement was ostensibly done for the purpose of alerting the IRS to the fact that the companies expected to amend the 2009 return.  It appears the Defendant Hee needed additional time to file the returns, but the filing deadline for corporate tax returns could only be extended until September 15, 2010. The WEI return was filed after the statutory time for filing, but before the extended due date, and included Exhibit "1," which read in pertinent part:

> Rather than file a delinquent tax return, the taxpayers and tax professionals made their best efforts to determine the proper tax treatment of items and substituted assumptions of facts and estimates where necessary for missing or incomplete information.  The tax return's underlying calculations were then completed and this consolidated tax return is a product of that result.
>
> The taxpayer's efforts to obtain complete information and determine the proper treatment of items on the tax returns are ongoing, and if in the future the taxpayer receives information that contradicts or causes a calculation or anything else on this tax return to change materially, the taxpayer will file an amended tax return to accurately report the changed position or calculation.

Exhibit "1" was attached as page number 106 of the return, along with numerous

schedules.   The actual tax return contains a certification which directly

contradicts the disclaimer in Exhibit "1."  The jurat on the return (Exhibit "3")

states in pertinent part:

> Under penalties or perjury, I declare that I have examined
> this return, including accompanying schedules and
> statements, and to the best of my knowledge and belief, it
> is true, correct, and complete.  Declaration of preparer
> (other than taxpayer) is based on all information of which
> preparer has any knowledge.

The tax return was signed by Defendant, as the president of WEI.  The preparer

also signed the return.

The return preparer/accountant will testify that the original template for the

"statement (Exhibit "1") came from Mr. Kawafuchi, as the lawyer for Albert Hee

and his company WEI and all its subsidiaries.  The accountant did not recall

whether Mr. Kawafuchi reviewed the statement that was attached to the 2009

consolidated tax return with him.  The tax return has not since been amended.

Mr. Kawafuchi was also involved in issues that go to the heart of the case.

One central issue is whether certain corporate payments made to the Defendant

were "loans," which are not taxable, or dividends.   A.T., the controller for

Sandwich Isles Communications, will testify that in or about December 2012

Mr. Kawafuchi instructed her and/or S.S., also a Sandwich Isles Communications

employee and accountant, to calculate the "loan to shareholder" balance and the

"accrued interest" on a "loan to shareholder" that the Defendant allegedly took during the years 2005-2012.  Mr. Kawafuchi gave those instructions either verbally or via email.   A.T. recalls S.S. computed the loan balance and the accrued interest and she provided that information to Mr. Kawafuchi.

When asked why this "loan" was paid back, A.T. responded that the Defendant was directed by his legal counsel (Mr. Kawafuchi) in 2012 to pay off the loan.  A.T. will testify that there had never been a promissory note evidencing the Defendant's debt to WEI, and that interest had not been accruing on WEI's books and records.   A.T. will testify that they first computed the interest on the loan when asked to do so by Mr. Kawafuchi, at the time of the so-called loan repayment in 2012.

 Depending on how the evidence may develop at trial, the Defendant may want to call Mr. Kawafuchi as a witness in order to assert a reliance defense.  Or, more insidiously, Defendant may seek to assert such a defense through the testimony of others, and the fact that Exhibit "1" was part of his corporate tax return.  In either case, if Defendant asserts the defense of reliance based on advice given by his lawyer, that lawyer, Kurt Kawafuchi, may be a witness of either the Defendant or the United States.  Among other things, Mr. Kawafuchi may have to testify about the preparation of the 2009 tax return, the inclusion of the "Statement in Support of 2009 Tax Return," the designation of the funds taken by the

Defendant as a loan, and other irregularities upon which Mr. Kawafuchi may have opined.  Ultimately, both the United States and the Defendant may also have much to say about Mr. Kawafuchi's "advice" (as well as the quality of information given to him by Defendant) in closing argument.

If Mr. Kawafuchi is a witness, he must be disqualified from representing the Defendant.  And, as will be shown below, all other lawyers at the Hochman law firm, including Mr. Toscher, should be disqualified, as they will labor under divided loyalties to their firm and the Defendant.

## III.   STATEMENT OF THE LAW

### A.   The Conflict Question.

Local Rule 83.3, "Attorney Standard of Professional Conduct" in the District of Hawaii states that:

> Every member of the bar of this court and any attorney permitted to practice in this court pursuant to Local Rule 83.1(d) or (e) shall be governed by and shall observe the standards of professional and ethical conduct required of members of the Hawaii State Bar.

Mr. Kawafuchi is a member of the Hawaii State Bar Association but practices and maintains his office at the Hochman firm in California.  To the best of the government's knowledge, he is the only Hochman firm member licensed in

Hawaii.  The others in this case are admitted *pro hac vice*.[2]  In view of that, the

United States will utilize the applicable Hawaii State Bar rules in the analysis

supporting this Motion to Disqualify.

The June 25, 2013 Hawaii Rules of Professional Conduct make it clear that:

"A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a

necessary witness."  Rule 3.7, Hawaii Rules of Professional Conduct.  There are

three exceptions to Rule 3.7 set out in the rule, but none of those apply to this case.

In order to testify, and not be disqualified, the lawyer must show that his testimony

relates to (1) an uncontested issue, (2) the testimony would be about the value of

legal services rendered, or (3) that disqualification would work a substantial

hardship on the client.  These exceptions simply do not apply in this case.

The comments section of Rule 3.7 describes the "Advocate-Witness Rule"

and states that:

> The tribunal may object (to continued representation by
> an attorney) when the trier of fact may be confused or
> misled by a lawyer serving as both advocate and witness.
> The opposing party may object where the combination of

---

[2] It should be noted that neither Mr. Kawafuchi nor the Hochman firm maintains offices in Hawaii (see Hochman website, www.taxlitigator.com), and they do not have local counsel.  On pleadings, they are using an address which belongs to Howard Chang, Esq., who represents some of Defendant's employees, trust officers and accountants.  Mr. Chang's clients will be called as trial witnesses by the government.  This arrangement raises questions as to whether Mr. Kawafuchi and the Hochman firm are in compliance with Local Rule 83.2, and whether the trial proceedings will be further infected by conflicts arising out of witnesses and the Defendant being counseled in the same office.

> roles may prejudice a party's right in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.
>
> * * *
>
> . . . Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. . . .

Under Rule 3.7, Mr. Kawafuchi clearly cannot act as counsel for the Defendant. He is a necessary witness, and his dual role as witness and advocate would result in the very harm sought to be prevented by the rule. Mr. Kawafuchi thus must be disqualified.

The next question is whether Mr. Toscher and the Hochman firm can ethically represent the Defendant. Rule 3.7(d) states that, "a lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9 of these Rules." Rule 1.10 sets forth the general rule concerning the imputation of conflicts of interest, and also cross-references Rule 1.7, as follows:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.9, or 2.2 of these Rules, unless the

> prohibition is based on a personal interest of the
> prohibited lawyer and does not present a significant risk
> of materially limiting the representation of the client by
> the remaining lawyers in the firm.

Rule 1.7 provides that a lawyer shall not represent a client if he labors under a "concurrent conflict of interest," which exists if "there is a significant risk that the representation ... will be materially limited by the lawyer's responsibilities to ...a third person, or by the personal interest of the lawyer."

Fairness may dictate waiver of the attorney-client privilege as when the confidential communications are a material issue in the judicial proceeding.  In Re Keeper of Records (XYZ Corporation), 348 F.3d 16 (1st Cir. 2003).  Similarly, a claim of reliance on advice of counsel may waive the privilege regarding that advice.  Id.   United States v. Miller, 600 F.2d 498 (5th Cir.), cert. denied, 444 U.S. 955 (1979).  When a defendant asserts a defense of good faith reliance on the advice of counsel, the government may be permitted to cross examine the defendant on that point and about the contents of the advice notwithstanding the claim of privilege.  Miller, supra.

If the Defendant should claim an advice of counsel defense, the government would be justified in attempting to prove through the testimony of members of the Hochman firm and Mr. Kawafuchi were not acting as attorneys but rather had assumed the role of accomplice, which if believed by the jury would inure adversely to the Defendant.

10

> The "essential aim" of the Sixth Amendment "is to guarantee an effective advocate for each criminal defendant." Wheat, 486 U.S. at 159, 108 S.Ct, 1692. Nevertheless, the Amendment does not "ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id.  The trial courts must pursue "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. at 160, 108 S.Ct. 1692.  For example, a criminal defendant does not enjoy an absolute right to be represented by an attorney laboring under a conflict of interest. See id. at 162-63, 108 S.Ct. 1692.  Even when a defendant seeks to proceed with conflicted counsel by waiving the conflict, a district court retains authority to reject the proffered waiver to preserve ethical standards and ensure a fair trial. See id. at 160, 163, 108 S.Ct. 1692.

United States v. Evanson, 584 F.3d 904 (10th Cir. 2009).

Evanson, supra, goes on to point out that the standard to determine whether a conflict of interest warrants disqualification is not set by (American Bar Assn. rules).

> To begin with, Mr. Wheeler [the defendant's lawyer in this case] might have been inclined to discourage Mr. Evanson from asserting that the letters were the product of his advice, even if such an assertion would have helped the defense. The government had argued in plea negotiations with codefendant Metcalf that the 2006 letter was an act of obstruction that could support independent charges, a position that it reasserted in its briefing on the disqualification issue.  An advice-of-counsel defense would implicate Mr. Wheeler in these allegedly unlawful acts. See Locascio, 6 F.3d at 933 (conflict arises if attorney is "constrained from making certain arguments on behalf of his client" or "tempted to

minimize his own conduct at the expense of his client"). Thus, if Mr. Evanson were to forgo an advice-of-counsel defense at his trial, he could attack his conviction (on appeal or in collateral proceedings) with a claim that Mr. Wheeler rejected the defense to protect himself and thereby provided constitutionally ineffective assistance. Although Mr. Evanson *914 suggests that a court should not consider the possibility of such a claim, it is surely proper for a court to take into account that it may be impossible to predict—and obtain firm waivers concerning—every possible conflict of interest that may arise in the proceedings.  See Wheat, 486 U.S. at 161, 108 S.Ct. 1692 (noting the "legitimate wish of district courts that their judgments remain intact on appeal.").

If, on the other hand, Mr. Evanson [the defendant] were to rely on an advice-of-counsel defense, Mr. Wheeler's personal knowledge of the merits of the defense would engender problems at trial. [FN4] First, Mr. Wheeler could become an unsworn witness who "subtly impart[ed] to the jury his first-hand knowledge" . . . [information] . . . , thereby giving his client an unfair advantage at trial.  Locascio, 6 F.3d at 933.

The jury might, for example, have been inclined to credit Mr. Wheeler's suggestions through questioning of witnesses and closing argument regarding how the [information] should be interpreted and the circumstances surrounding their creation—after all, he had been there.  See id. at 934 (attorney's interpretation of taped conversations that occurred in his presence could be given improper weight).  Second, by raising an advice-of-counsel defense, Mr. Evanson would waive the attorney-client privilege regarding what advice Mr. Wheeler gave him.  See United States v. Workman, 138 F.3d 1261, 1263-64 (8th Cir.1998); 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.41[1] (Joseph M. McLaughlin ed., 2d ed.2009).  This would permit the government to call Mr. Wheeler as a witness to challenge Mr. Evanson's version of events,

placing Mr. Wheeler in the untenable position of providing testimony against his client.  <u>See</u> Utah R. Profl Conduct 3.7 cmt. [6] ("[I]f there is likely to be substantial conflict between the testimony of the client and that of the lawyer, the representation involves a conflict of interest.").

> FN4. Although we do not assess the pretrial disqualification of counsel with "wisdom of hindsight," <u>Wheat</u>, 486 U.S. at 162, 108 S.Ct, 1692, we note that at trial Mr. Evanson ultimately claimed reliance on Mr. Wheeler's advice.  He testified that he drafted the 2006 letter after consulting with a "local attorney by the name of Max Wheeler," who, he said, provided "advice on things that I should be doing to make sure that I was in proper compliance [with tax laws]." Aplee. Supp.App. at 315-16.

<u>United States v. Evanson</u>, 584 F.3d 904 (10th Cir. 2009).

The United States submits that, on the facts of this case, the entire Hochman firm must be disqualified from representing the Defendant for the same reasons. Mr. Kawafuchi, a member of the Hochman firm, and the Defendant Albert Hee may indeed provide conflicting testimony or advance theories that denigrate the position of the other.  In asserting a reliance defense, the Defendant may well argue that he was given improper advice.  The United States would be entitled to examine Defendant on the quality of the information given by him to his lawyers, whether they probed for full disclosure of the operative facts, and the reasonableness of his reliance.  Depending on how the facts develop, it may be in

Defendant's interest to blame his acts on bad advice given by Mr. Kawafuchi and his law firm.  Such an argument would be exceedingly difficult for Mr. Toscher to make, where he and Mr. Kawafuchi work at the same firm, and have a shared economic interest in the representation of Defendant.  Given these circumstances, Rule 1.7 precludes the Hochman firm from serving as trial counsel for Defendant.

B.   <u>Standing</u>

The government has standing to raise a conflict issue and request disqualification from the Court.  "When alerted by objection form one of the parties, [federal district courts] have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment."  <u>Wheat v. United States</u>, 486 U.S. 153, 161 (1988); <u>see</u> <u>also</u>, Fed.R.Crim.Proc. 44(c).  This duty arises, in part, "from the legitimate wish of district courts that their judgments remain intact on appeal."  <u>Wheat</u>, 486 U.S. at 161.  In addition, "federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  <u>Id.</u>  A federal district court has the power to disqualify an attorney whose representation creates a conflict of interest, or the serious possibility of a conflict, and "the Government has standing to make the motion for disqualification."  <u>United States v. Linton</u>, 502 F. Supp. 871 (D.C. Nev. 1980) (citing <u>United States v. Horak</u>, 465 F. Supp. 725 (D. Neb.

1979)); In re Gopman, 531 F.2d 262, 265 (5th Cir. 1976) (an attorney is obligated to bring possible ethical violations to court's attention).

   C.   The Sixth Amendment Right to Counsel.

   It is well established that a defendant in a criminal proceeding has a Sixth Amendment right "[t]c) have the Assistance of Counsel for his defense." U.S. Const. Amend. VI; Gideon v. Wainwright, 372 U.S. 335, 344 (1963). This right generally entitles a defendant "[t]o choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). It also entitles a defendant to "reasonably effective assistance" from that counsel and the correlative right to representation free from conflict. Strickland v. Washington, 466 U.S. 668, 687 (1984); Wood v. Georgia, 450 U.S. 261, 271 (1981).

   The right to counsel of choice is an important but limited right. The right is "[c]ircumscribed in a number of important respects" and must be balanced against other important interests in the judicial system such as the Sixth Amendment right to conflict-free counsel, the ethical standards of the profession, and the appearance of fairness to the public. Wheat v. United States, 486 U.S. 153, 159-60 (1988). As such, the presumption in favor of granting a defendant his desired counsel may be overcome by actual conflicts of interest created by that counsel under the Sixth Amendment and applicable ethical rules. Id. at 163-164. Moreover, the Supreme Court and Ninth Circuit have found that prior to a conviction, the mere potential

for a conflict of interest is sufficient to require disqualification. <u>See</u> <u>id.</u> (because

"[t]he likelihood and dimensions of nascent conflicts of interest are notoriously

hard to predict," the presumption may also be overcome by a showing of a serious

potential for such a conflict); <u>United States v. Kenny</u>, 911 F.2d 315, 321 (9th Cir.

1990) (the potential for a conflict of interest is sufficient to justify disqualification

unless defendant is attacking a conviction).

IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Motion to Disqualify both Mr. Kawafuchi

and all Hochman firm lawyers should be granted.

DATED:  January 26, 2015, at Honolulu, Hawaii.

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii


By /s/ Leslie E. Osborne, Jr.
    LESLIE E. OSBORNE, JR.
    LAWRENCE L. TONG
    Assistant U.S. Attorney