STEVEN TOSCHER, ESQ. (CA SBN 91115)
EDWARD M. ROBBINS, JR., ESQ. (HI Bar No. 8314)
KURT KAWAFUCHI, ESQ. (HI Bar No. 4341)
HOCHMAN, SALKIN, RETTIG, TOSCHER & PEREZ, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212-3414
Telephone: (310) 281-3200
Facsimile: (310) 859-1430
E-mail:    toscher@taxlitigator.com
           robbins@taxlitigator.com
           kawafuchi@taxlitigator.com

Attorneys for Defendant,
ALBERT S. N. HEE

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALBERT S. N. HEE<br><br>Defendant. | CR NO. 14-00826-SOM<br><br>DEFENDANT ALBERT S. N. HEE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CASE WITH PREJUDICE |

## MEMORANDUM OF POINTS AND AUTHORITIES

On December 17, 2014, the government obtained a seven count superseding indictment against Mr. Hee. The superseding indictment charges Mr. Hee with one count of violating the "omnibus clause" of Internal Revenue Code ("IRC") Section 7212(a) during years 2002 - 2012, contending that Mr. Hee corruptly endeavored to obstruct and impede the administration of the Internal Revenue Laws, and also accuses him of six counts of violating IRC section 7206(1) ("tax perjury"), by willfully submitting false individual income tax returns for years 2007 through 2012.

By this motion, Mr. Hee seeks to have this entire case dismissed with prejudice because of the government's institutional bad faith in the investigation of this case. In the alternative, Mr. Hee seeks an order suppressing certain evidence collected by IRS Revenue Agent Crystal Carey. In the second alternative, Mr. Hee asks for an evidentiary hearing so Mr. Hee can obtain witness testimony regarding the investigation of this case.

### I. SUMMARY

**Exhibit A** is a separate filing containing a copy of the Form 9984 (Examining Officer's Activity Record) created by the examining agent in this case, Revenue Agent Crystal Carey. The Form 9984 reveals the government's problem here. The defendant faced a secret criminal investigation under the guise of a civil

examination. IRS guidelines make it secret. Agent Carey kept her investigation secret from Mr. Hee and his advisors. The secret investigation was unknowingly abetted by Mr. Hee's professional advisors who, as ordered by IRS Circular 230 on pain of losing their jobs, had to cooperate with Agent Carey in her investigation and had to force the taxpayer to promptly cough up whatever Agent Carey asked for, including documents and verbal testimony, no matter how incriminating to Mr. Hee. What is wrong here is institutional, resulting in institutional bad faith. The procedures the IRS employed here violated Mr. Hee's Fourth, Fifth and Sixth Amendment rights. This case should be dismissed with prejudice.

## II. THE GOVERNMENT'S PROCEDURAL SCHEME

### A. The Internal Revenue Manual

The government's procedural scheme for examining tax fraud cases, set forth in the Internal Revenue Manual ("IRM"), was created in response to *United States v. Tweel*, 550 F.2d 297, 299 (5th Cir. 1977) and *United States v. Grunewald*, 987 F.2d 531, 534 (5th Cir. 1993). The IRM advises the revenue agent[1] how to conduct a criminal investigation without ostensibly running afoul of *Tweel*, and *Grunewald*.

---

[1] The Revenue Agent is supposed to be the civil tax examiner for the IRS. The Special Agent is the criminal tax investigator for the IRS.

The problem faced by the IRS was that in tax cases, "a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery or misrepresentation of the Internal Revenue agent." *United States v. Robson*, 477 F.2d 13, 17 (9th Cir. 1973). The Fifth Circuit, in addressing situations where evidence is obtained during a civil audit that the government later attempts to introduce as part of a criminal prosecution, has found that the burden of determining whether the IRS has committed deception rests with the defendant; the record "must disclose some affirmative misrepresentation to establish the existence of fraud, and the showing must be clear and convincing." *United States v. Tweel*, 550 F.2d 297, 299 (5th Cir. 1977) (citing *United States v. Prudden*, 424 F.2d 1021, 1033 (5th Cir. 1970)). In *Tweel*, a taxpayer was prosecuted for tax evasion and moved to suppress evidence obtained through a civil audit. *Id.* When the taxpayer's accountant had asked if a "special agent" was involved in the investigation, the revenue agent replied "no" without disclosing that the audit was conducted at the request of the Organized Crime and Racketeering Section of the Department of Justice, which is only involved in criminal prosecutions. *Id.* The court found that the revenue agent's failure to tell the taxpayer of the "obvious criminal nature of this investigation was a sneaky deliberate deception." *Id.* Expanding on *Tweel*, the Fifth Circuit has held that suppression is proper if: "1) the IRS had firm indications of fraud by the defendant, 2) there is clear and convincing

evidence that the IRS affirmatively and intentionally misled the defendant, and 3) the IRS's conduct resulted in prejudice to defendant's constitutional rights." *United States v. Grunewald*, 987 F.2d 531, 534 (5th Cir. 1993).[2]

The IRS attempted to solve its *Tweel/Grunewald* problem by revising IRM §25.1 Fraud Handbook[3] and creating the position of Fraud Technical Advisor ("FTA").[4] The Fraud Handbook is the portion of the IRM dedicated to developing civil tax fraud cases, and potential criminal fraud referrals. The Fraud Handbook explicitly instructs revenue agents, revenue officers, and FTAs how to first detect fraud, and subsequently, how to gather evidence.

---

[2] The Ninth Circuit has adopted the rule in *Tweel*, requiring that there be "clear and convincing evidence of [] actual deception or trickery on the part of the Government" and that the defendant establish "some affirmative misrepresentation" to warrant suppression of evidence obtained during a civil audit. *United States v. Bridges*, 344 F.3d 1010, 1020 (9th Cir. 2003) (citing *Tweel*, 550 F.2d at 299). Additionally, the Ninth Circuit has confirmed that silence, unless intentionally misleading, will not be equated with fraud. *See Robson*, 477 F.2d at 17-18 ("the failure of an IRS agent… to warn a taxpayer that an audit may have potential criminal ramifications does not render the search unreasonable."); *see also Prudden*, 424 F.2d at 1035 (finding revenue agent's failure to warn, absent any affirmative misrepresentation, that an audit may result in criminal charges is not deceit because "[a]ny reasonable person is bound to be aware that the filing of an incorrect tax return may result in a charge of wrongdoing.").

[3] Citations to the IRM are to the version existing on January 10, 2010.

[4] For a thorough discussion on the history and creation of the Fraud Technical Advisor, see IRS Chief Counsel Memorandum, FTA's Role in Civil and Criminal Investigations, Aug. 16, 2007, available online at www.irs.gov/pub/lanoa/pmta01123_7321.pdf.

Under IRM §25.1.2.2, the examining agent is instructed to contact the group manager upon discovery of indicators of fraud.[5] Should the group manager agree with the initial assessment, the examining employee is instructed to contact the FTA assigned to the area.[6]

When indicators (signs) of fraud are uncovered, the examining agent will initiate a discussion with their group manager. If the group manager concurs that there are indicators of fraud warranting fraud development, the examining agent will contact the fraud technical advisor (FTA) assigned to that area. As described in the Criminal Referrals section of the IRM, in particular §25.1.2.3, some firm indications of fraud include omissions of entire sources of income, unexplained failure to report substantial amounts of income determined to have been received, and concealment of bank accounts, brokerage accounts, and other property.[7]

Next, the IRM instructs the FTA, group manager, and examining agent to create a Fraud Development Plan.[8] The IRM states, "if a case is being placed in fraud development status, a plan of action (plan) should be formulated as early as possible to develop and document the affirmative acts of fraud."[9] The Plan must: "provide audit steps required to establish affirmative acts (proof) of fraud; be the

---

[5] IRM §25.1.2.3 (01/01/2003).
[6] *Id.*
[7] *Id.*
[8] IRM §25.1.2 (10/30/2009).
[9] IRM §25.1.2.2.5 (10/30/2009).

joint effort of the compliance employee, the group manager and the FTA; guide the case to its appropriate conclusion in a timely manner; and specify any direct assistance the FTA will provide. The role of the FTA can be more advisory or consultive in nature."[10] The Plan remains secret from the taxpayer and his representatives.

Once firm indicators of fraud are established, the IRM directs the examining agent to immediately notify the group manager or FTA, and suspend the examination or collection activity.[11] The FTA will generally recommend a referral to CI.[12] In bold letters, the IRM admonishes the examining agent: "**Warning. The compliance employee or the group manager should never obtain advice from CI for a specific case under examination/collection activity.**"[13] Similarly, the criminal referral section of the IRM states that if "the taxpayer asks if a fraud referral is being considered or whether CI is involved, the examiner or revenue officer must not give a false or deceitful response." However, the IRM claims that silence or declining to provide an affirmative "yes" or "no" on the matter is not false or deceitful.[14]

---

[10] *Id.*
[11] IRM §25.1.2.2.6 (10/30/2009).
[12] *Id.*
[13] *Id.*
[14] IRM §25.1.3.2 (10/30/2009).

In effect, the IRM advises the revenue agent how to conduct a secret criminal investigation allegedly without running afoul of at least the letter of the law in *Tweel*,[15] and *Grunewald*,[16] but emasculating the whole purpose of these cases and the taxpayer protections they seek to achieve. Such advice in the IRM evidences a calculated effort by the government to instruct its examining agents exactly how to deceive taxpayers. And that is exactly what happened here.

### B. Application of the Internal Revenue Manual in this Case

According to her Form 9984 (Examining Officer's Activity Record) (**Exhibit A**, submitted herewith) Agent Carey followed these IRM provisions.

February 20, 2008 – Agent Carey was assigned the tax examination of Waimana Enterprises, Inc. for its 2003 tax year.

June 16, 2008 – Agent Carey added the corporation's tax year 2004 to her examination.

October 22, 2008, seven months into the investigation Agent Carey met with the FTA and discussed the possibility of referring the case to CI for criminal investigation. The FTA demurred, but made recommendations for improvement of any criminal case against the company or Mr. Hee.

---

[15] *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977).
[16] *United States v. Grunewald*, 987 F.2d 531, 534 (5th Cir. 1993).

Between February 20, 2008 and October 31, 2008, Agent Carey met with the POA to discuss IDRs, and inspected the taxpayers' business premises. Agent Carey served thirty IDRs[17] on the taxpayers' POA who is an accounting professional, not a lawyer. The POA answered the 30 IDRs.

From October 2008 through September 2009 Agent Carey opened Mr. Hee's 2003 through 2006 individual income tax returns for examination. Agent Carey opened the corporation's 2002, 2005 and 2006 tax years for examination. Agent Carey served IDRs 31 through 67 on the POAs.

November 5, 2008 - Agent Carey visited the POA's office and examined the accountants' work papers. Agent Carey quizzed the POA about the companies' books and records. Agent Carey allegedly elicited the following admission from the POA: Mr. Chinaka said Mr. Hee and he had talked about keeping receipts and other forms of documentation, and that "Mr. Hee was aware of the requirements," but choose to "close deals with handshakes" and would rather "play the odds" of being audited rather than keep receipts.

---

[17] During the information gathering stage of an audit, an agent may either ask for information verbally or issue an information document request (IDR). The IDR is generally used in field audits and is an informal request for books and records, answers to specific questions, and testimony. The IDR, Form 4564, will set forth the agent's request for documentation or other information. There is no limit to the requests the examining agent can make in a single IDR and typically, especially in a complex audit, the requests in a single IDR are numerous.

9

August 12, 2009 – Agent Carey was informed by her manager that one of Mr. Hee's POAs called reporting that Agent Carey had told another of Mr. Hee's POAs that Mr. Hee had committed fraud. Agent Carey denied to her manager she had said that Mr. Hee committed fraud. Agent Carey maintained that she had "said that things look bad, and that we should try to solve as many things at my level as possible. This case is probably going to appeals." Agent Carey knew at this point she and the taxpayer would not resolve anything at Carey's level, nor was the case going to appeals. Agent Carey had already decided to refer the case to CI.

August 14, 2009 – Agent Carey's manager called Mr. Hee's POA back and informed him that Agent Carey had denied saying that Mr. Hee had committed fraud. The POA immediately repudiated his earlier statement.

September 30, 2009 – Agent Carey consulted with the FTA and the decision was reached to complete the Form 2797 (Referral Report (to CI) of Potential Criminal Fraud Cases).

October 13, 2009 - POA Yangihara called Agent Carey and said that POA Tawarahara and Sang asked about the status of the Waimana and Clearcom audits. Agent Carey told POA Yangihara she was still working on it when she knew at that time she was not working on it and had already referred the cases to CI.

October 30, 2009 – Status Codes for the case changed to 18: Accepted by CI.

November 14, 2009 - POA Yangihara called called Agent Carey and left a voicemail message asking Agent Carey for the status and timeframes for the Waimana and Clearcom audits. Agent Carey called her back and said "Hi Danielle, this is Crystal Carey from the IRS, returning your earlier phone call regarding Waimana and Clearcom. In regard to time frames, my manager has asked me to work on another time sensitive matter, and I will have to get back in contact with you at a later date regarding resolution of the Waimana and Clearcom exams." Agent Carey said this when she knew that she would never get back to POA Yangihara regarding time frames, because CI had accepted her referral for criminal prosecution.

February 20, 2008 through October 30, 2009 – Agent Carey never disclosed to Mr. Hee or his representatives that she was building a criminal tax fraud case against Mr. Hee, even as she informally requested and obtained from Mr. Hee and his representatives most of the documents and other data supporting the present prosecution, always maintaining the illusion she was merely conducting a civil tax examination.

### C. Application of Circular 230 in this Case

The ethics of IRS tax practice for Mr. Hee's civil tax advisors were governed by part 10 of title 31 of the Code of Federal Regulations reproduced in Treasury Department Circular No. 230 ("Circular 230"). Circular 230 regulates individual "practitioners" who practice before the Internal Revenue Service. Sanctions for violating Circular 230 include public censure, suspension or disbarment from practice before the IRS and monetary penalties.[18] Circular 230 contains several provisions that, when read together, obligate the practitioner to cooperate with the IRS in a professional and responsible manner. The practitioner must cause the client to produce all data under the client's custody or control, if the IRS requests it.[19] The stated exceptions to this duty are that the IRS's request must be "proper and lawful" and the data not be privileged." Along the same lines, the practitioner is prohibited from interfering with the production of all data under the client's custody or control, if the IRS requests it.[20] Again, the stated exceptions to this prohibition are that the IRS's request must be "proper and lawful" and the data not be "privileged." If the practitioner cannot produce the data, the practitioner must identify for the IRS those persons having custody or control over the data

---

[18] Circular 230 § 10.79, Effect of Disbarment, Suspension, or Censure.
[19] 31 C.F.R. § 10.20(a)(1).
[20] 31 C.F.R. § 10.20(c).

12

sought by the IRS, and to make reasonable inquiry of the client to obtain such information.[21]

Contrast the practitioner's obligations to the IRS under Circular 230, with the Revenue Agent's obligations to the taxpayer under Circular 230. No obligations exist for the Revenue Agent. The Revenue Agent is perfectly free to continue her secret criminal investigation with no sanctions whatsoever.

### III. ARGUMENT

On the government side we have Agent Carey following her Internal Revenue Manual and conducting a secret criminal tax investigation against Mr. Hee. The IRM advised Agent Carey how to conduct a secret criminal investigation without allegedly running afoul of *Tweel*, and *Grunewald*. This direction from the IRS in the IRM is evidence of a calculated effort by the IRS to instruct its agents how to deceive taxpayers into thinking they are facing a routine civil tax examination when they are facing a criminal tax fraud investigation.

The IRS effort here is aided greatly by Circular 230 which commanded all of Mr. Hee's POA's, on pain of losing their jobs, to give Agent Carey whatever she asked for. Mr. Hee did not know to exercise his Fourth, Fifth, or Sixth Amendment rights, because he did not know he was the target of a secret criminal tax investigation. Mr. Hee's POA's did not know to push back against Agent

---

[21] 31 C.F.R. § 10.20(a)(2).

13

Carey's demands for information, because they had no way of knowing about her secret criminal tax investigation.

There is a simple solution to the problems created by the government here – the government should inform a taxpayer whenever the examining agent consults with an FTA. But such a solution would be a complete anathema to the IRS. Why? Because then the IRS would not be able to conduct its secret criminal tax investigation against an unsuspecting taxpayer. Because then the taxpayer might think to hire a lawyer to help him out in the criminal investigation. Because then the taxpayer might think to claim privilege on some of the IDR requests. Because then the taxpayer might be more careful when he says anything to the Revenue Agent. The IRS can't have that.

### A. Agent Carey's Tax Investigation Violated Mr. Hee's Fourth Amendment Rights

Agent Carey's obtaining tax data from Mr. Hee during the IRS secret criminal tax investigation constituted an illegal search in violation of the Fourth Amendment because Mr. Hee's consent was obtained through deception. As mentioned above, the Ninth Circuit has adopted the rule in *Tweel*, requiring there be "clear and convincing evidence of [] actual deception or trickery on the part of the Government" and that the defendant establish "some affirmative misrepresentation" to warrant suppression of evidence obtained during a civil

audit. *United States v. Bridges*, 344 F.3d 1010, 1020 (9th Cir. 2003) (citing *Tweel*, 550 F.2d at 299). Here, Agent Carey's entire tax examination is a deception. Every word Agent Carey spoke to Mr. Hee or his representatives once Agent Carey embarked on her secret criminal tax investigation was part of affirmative misrepresentations designed to disguise the criminal investigation. Her secret criminal tax investigation began on October 22, 2008, the day she took her case to the FTA and the day the FTA gave her pointers for investigating a criminal fraud case. Any tax data she received from Mr. Hee or his representatives after October 22, 2008 and the derivative fruits should be suppressed under *Tweel* and *Bridges*.

The particular affirmative misrepresentations quoted from Exhibit A came around the time of the referral to CI, and at that time there were outstanding IDRs later satisfied by Mr. Hee. These quotes provide additional reason to suppress any materials obtained by the IRS after the referral to CI.

Mr. Hee requests an evidentiary hearing to get to the bottom of what data illegally found its way into the hands of the IRS and at what time.

### B. Agent Carey's Tax Investigation Violated Mr. Hee's Fifth Amendment Rights

Mr. Hee has a right to fairness in the criminal process.

"'No general respect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt,

*eminently fair* and sober criminal law procedures. The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged.'"[22]

The Supreme Court long has protected a defendant's right to fairness in the criminal process. It has grounded this protection primarily in the Due Process Clause[23] as well as more specific provisions of the Bill of Rights, including the Confrontation and Assistance of Counsel Clauses of the Sixth Amendment.[24] Whatever the textual source, however, the Court consistently has held that criminal defendants are entitled to be treated fairly throughout the process. In everyday language, they are entitled to a fair shake. The Due Process Clause has been interpreted to provide not only procedural protection for deprivations of life, liberty, and property, but also substantive protection for fundamental rights – those that are so essential to individual liberty they cannot be infringed by the government unless the infringement is narrowly tailored to serve a compelling state interest.[25]

Here, the government's secret criminal tax investigation is unfair to Mr. Hee. The secret investigation impacts Mr. Hee's ability to exercise his privilege

---

[22] *Douglas v. 120 California*, 372 U.S. 353, 358 n.2 (1963) (quoting *Coppedge v. United States*, 369 U.S. 438, 449 (1962)) (emphasis added).
[23] U.S. CONST. amend. V, XIV.
[24] Id. Amend. VI.
[25] *See, e.g., Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

against self-incrimination under the Fifth Amendment because Mr. Hee thinks he is under a civil examination, not a criminal investigation. The secret investigation impacts Mr. Hee's right to hire a lawyer to represent him in the criminal investigation, because Mr. Hee does not know he is under a criminal investigation. It is difficult to imagine how this secret criminal tax investigation serves any legitimate interest of the federal government.

### C. Agent Carey's Tax Investigation Violated Mr. Hee's Sixth Amendment Rights

The Sixth Amendment guarantees a criminal defendant "the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has held that the Sixth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Kirby*, 406 U.S. 682, 689 (1972) (plurality opinion). The Ninth Circuit has considered pre-indictment activities relevant to the Sixth Amendment analysis. The Ninth Circuit has held, for example, that "government interference with a defendant's relationship with his attorney [before indictment] may render counsel's assistance so ineffective as to violate his Sixth Amendment right to counsel." *United States v. Irwin*, 612 F.2d 1182, 1185 (9th Cir. 1980); *see also In re Grand*

*Jury Proceedings*, 33 F.3d 1060, 1062 (9th Cir. 1994) ("The Sixth Amendment can apply when the government's conduct occurs pre-indictment.").

Mr. Hee maintains that the IRS deprived him of the ability to have a criminal defense lawyer represent him during Agent Carey's secret criminal investigation, because the investigation was kept secret by the IRS.

## IV.   CONCLUSION

The government's institutional bad faith in conducting a secret criminal tax investigation against Mr. Hee has tainted the entire prosecution of Mr. Hee and this Court should order that the indictment be dismissed with prejudice. In the lesser alternative, this Court should order the suppression of any data obtained by Agent Carey during her secret criminal tax investigation. If necessary, this Court should order an evidentiary hearing to flesh out the details of the government's bad faith conduct here.

DATED:   March 20, 2015

STEVEN TOSCHER, ESQ.
KURT KAWAFUCHI, ESQ.
EDWARD M. ROBBINS, JR., ESQ.

HOCHMAN, SALKIN, RETTIG,
TOSCHER & PEREZ, P.C.

BY:  /s/  Steven Toscher
       STEVEN TOSCHER, ESQ.

Attorneys for Defendant,
ALBERT S. N. HEE

6426204_1