FLORENCE T. NAKAKUNI #2286
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR. #3740
Chief, Criminal Division

LESLIE E. OSBORNE, JR. #3740
LAWRENCE L. TONG #3040
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, HI 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Les.Osborne@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 14-00826 SOM |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN OPPOSITION TO |
| | ) | DEFENDANT'S MOTION TO DISMISS |
| vs. | ) | CASE WITH PREJUDICE; |
| | ) | DECLARATION OF CRYSTAL |
| ALBERT S.N. HEE, | ) | CAREY; DECLARATION OF COLIN |
| | ) | CHIGAWA; DECLARATION OF |
| Defendant. | ) | GREGORY MIKI; EXHIBITS "1"-"3"; |
| | ) | CERTIFICATE OF SERVICE |
| | ) | |
| | ) | Date:   April 13, 2015 |
| | ) | Time: 9:00 a.m. |
| | ) | Judge:  Hon. Susan O. Mollway |

<u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S</u>
<u>MOTION TO DISMISS CASE WITH PREJUDICE</u>

Comes now the United States of America, by and through Leslie E. Osborne,

Jr. and Lawrence L. Tong, Assistant United States Attorneys, on behalf of

Florence T. Nakakuni, United States Attorney for the District of Hawaii, who by

these pleadings oppose the Defendant's Motion to Dismiss Case With Prejudice

[Doc. 47].

I.     <u>STATEMENT OF THE FACTS</u>

This motion addresses the Second Superseding Indictment filed on

March 25, 2015 a few days after the Defendant filed his Motion to Dismiss on

March 20, 2015.

The Form 9984 (Examining Officer's Activity Record) was created by the

examining agent in this case, Revenue Agent Crystal Carey ("RA Carey").

Defendant's Exhibit "A", Form 9984, (Examiner's Activity Record) reveals that

there was "no secret criminal investigation under the guise of a civil examination".

RA Carey conducted a civil examination of Waimana Enterprises, Inc.  In fact,

when RA Carey met with the Fraud Technical Advisor ("FTA") on October 22,

2008, the FTA stated that "fraud for the corporation is probably not viable, we

must have more substantiation to determine if Mr. Hee MIGHT potentially have

fraud, and might have preparer negligence".  After the discussion with the FTA,

the case was not placed in fraud development status which would have entailed

filing a Form 11661 – Fraud Development Recommendation – Examination, and

updating the case status to 17 on the Audit Information Management System

(AIMS). The 5345-D Examination Request Form to inspect Albert Hee's 2002 –

2007 tax returns for examination was submitted on February 25, 2009 as part of the

Waimana audit since Mr. Hee was the sole shareholder. The Form 2797 – Referral

Report of Potential Criminal Fraud Cases, signed by the FTA and Group Manager

was submitted by RA Carey on October 22, 2009. This is the point in time when

the civil examination became a criminal referral. No further evidence was

obtained after this date. (Defendant's Exh. "A")

II.    THE GOVERNMENT'S ALLEGED PROCEDURAL SCHEME

    A.    The Internal Revenue Manual

The first 13 pages of the Defendant's Memorandum of Points and

Authorities stands bereft of any legal authority and attempts to spin a conspiracy

theory with absolutely no support of fact or law. The Internal Revenue Manual

("IRM") which the Defendant attacks so vituperatively is nothing more than a

blueprint for the operation of the Internal Revenue Service ("IRS") and is available

to any citizen who might want it. Contrary to the Defendant's hyperbole, the IRM

and Circular 230 were not created for the purpose of helping civil agents avoid

running afoul of United States v. Tweel, 550 F.2d 297 (5th Cir. 1977) and United

2

States v. Grunewald, 987 F.2d 531 (8th Cir. 1993).  The IRM and Circular 230 are statements of how investigations should properly be developed.  The documents the Defendant categorizes as a plan to conduct "secret investigations" and confound Tweel, can be obtained on the Internet and are available to the public. (Exh. "1")

The Internal Revenue Manual is the primary, official source of Internal Revenue Service instructions to staff relating to the organization's administration and operation of the Service.  It details the policies, delegations of authorities, procedures, instructions and guidelines for daily operations for all divisions and functions of the Service.   The IRM Sections are written by the offices that have program ownership of an area.  There are approximately 1,800 different IRM sections.  Part 25 of the IRM addresses Special Topics such as:  Fraud, Summons, Statute of Limitations, Disaster Assistance and Emergency Relief, Taxpayer Correspondence, Restitution, etc.   The Internal Revenue Manual is not secret and can be accessible by the public.  All you need to do is Google the term "Internal Revenue Manual" and be able to read the information contained online. (Exh. "1")

The Fraud Handbook, IRM, Section 25.1.1 to Section 25.1.14, contains instruction for all compliance employees for identifying, developing and processing fraud cases.

IRM Section 25.1.1.3 defines the differences between Indicators of Fraud and Affirmative Acts (Firm Indications) of Fraud.

Indicators of Fraud:

      a.    Taxpayers who knowingly understate their tax liability often leave evidence in the form of identifying earmarks (or indicators).

      b.    Serve as a sign or symptom, or signify that actions may have been done for the purpose of deceit, concealment or to make things seem other than what they are.  Indications, in and of themselves, do not establish that a particular action was done.

      c.    Examples include substantial unexplained increases in net worth, substantial excess of personal expenditures over available resources, bank deposits from unexplained sources substantially exceeding reported income, and documents that appear to be altered or false.

Affirmative Acts (Firm Indications) of Fraud:

      a.    Those actions that establish that a particular action was deliberately done for the purpose of deceit, subterfuge, camouflage, concealment, some attempt to color or obscure events, or make things seem other than what they are.

      b.    Fraud cannot be established without affirmative acts of fraud.

      c.    Examples include omissions of specific items where similar items are included; concealment of bank accounts or other assets; failure to deposit receipts to business accounts; and covering up sources of receipts.

Section 25.1.2.2 - Fraud Development Procedures states that when indicators (badges) of fraud are uncovered, the compliance employee must clearly document the potential fraud indicators and initiate a discussion with the group manager.  If the group manager concurs that there are indicators of fraud warranting fraud

development, the compliance employee must contact the fraud technical advisor

(FTA) assigned to that area.  After reviewing the potential fraud indicators and

possible barriers to a successful referral, if the compliance employee, group

manager and FTA agree the potential for fraud exists, the compliance employee

must prepare Form 11661 Fraud Development Recommendation – Examination.

The Form 11661 documents the FTA's involvement and places a case in fraud

development status.  The group manager reviews the Form 11661 and signs to

indicate approval.  If the FTA concurs with the fraud development determination,

the FTA completes Form 11661 and returns it using secure messaging to the

compliance employee and group manager.  If a case is placed in fraud development

status, a plan of action (plan) must be formulated as early as possible to develop

and document the affirmative acts of fraud.  The examiner must update the Audit

Information Management System (AIMS) to Status Code 17.

     If affirmative acts of fraud are established, the compliance employee must

suspend collection or examination activity, and immediately notify the group

manager and the FTA.  The FTA recommends a referral, Form 2797 Referral

Report of Potential Criminal Fraud Cases, to Criminal Investigation ("CI"), if

criminal criteria are met.  (Exh. "2")

B.     Application of the Internal Revenue Manual in this Case

According to RA Carey's Form 9984 (Examining Officer's Activity Record) (Defendant's Exh. **"A"**), the following actions took place:

On February 20, 2008 – Agent Carey was assigned the civil examination of Waimana Enterprises, Inc. for its 2003 tax year.

June 16, 2008 – RA Carey added the corporation's tax year 2004 to her examination.

October 22, 2008 – RA Carey met with the FTA and discussed the possibility of referring the case to CI as either a civil or criminal fraud case. The FTA stated that "fraud for the corporation is probably not viable, we must have more substantiation to determine if Mr. Hee <u>MIGHT</u> (emphasis added) potentially have fraud, and might have preparer negligence". After the discussion with the FTA, the case was not placed in fraud development status which would have entailed filing a Form 11661 – Fraud Development Recommendation – Examination and updating the case status to 17 on the Audit Information Management System (AIMS).

February 25, 2009 - The 5345-D Examination Request Form to add Albert Hee's 2002 – 2007 tax returns for examination was submitted.

October 22, 2009 – RA Carey finished writing the Form 2797 –

Referral Report of Potential Criminal Fraud Cases, and submitted it to the

Group Manager and the FTA for approval.

The civil examination of Waimana Enterprises, Inc. and Albert Hee

became a criminal referral on October 22, 2009.  (Defendant's Exh. "A")

C.   Circular No. 230 – Regulations Governing Practice before the Internal
     Revenue Service

The defense castigates Circular No. 230 as another scurrilous effort by the

IRS to invade the rights of a taxpayer.  That position is simply ludicrous.  Circular

No. 230 says in pertinent part,

> Information to be furnished.
>
> (1) a practitioner must, on a proper and lawful
> request, by a duly authorized officer or employee of the
> Internal Revenue Service, promptly submit records or
> information in any manner before the Internal Revenue
> Service unless the petitioner believes in good faith and on
> reasonable grounds that the records or information are
> privileged.
>
> (2) When the requested records or information are
> not in the possession of, or subject to the control of, the
> practitioner or the practitioner's client, the practitioner
> must promptly notify the requesting Internal Revenue
> Service officer or employee and the petitioner must
> provide any information that the petitioner HAS
> (emphasis added) regarding the identity of any person
> who the practitioner believes may have possession or
> control of the requested records or information.  The
> petitioner must make reasonable inquiry of his or her

> client regarding the identity of any person who may have
> possession or control of requested records or information
> but the petitioner is not required to make inquiry of any
> other person or independently verify any information
> provided by the practitioner's client regarding the
> identity of such persons.

Circular No. 230, Sections 10.20(a)(1) and (2), p. 19.  (Exh. "3")

It should also be noted that, "in general, a practitioner must, at the request of a client, promptly return any and all records of the client that are necessary for the client to comply with his or her federal tax obligations . . ."  Circular No. 230, Section 10.28(a), p. 22.  Circular No. 230 does not address the obligations of a revenue agent to the taxpayer.  Therefore, this argument is not relevant to the issue at hand.   It imposes obligations on the Defendant's POA, not the United States.

III.   <u>ARGUMENT</u>

The facts are RA Carey conducted a civil examination according to the Internal Revenue Manual.  There were some possible indicators of fraud identified for both Waimana Enterprises, Inc. and Albert Hee during the audit, however, the cases were never placed in fraud development status as there were no firm indications of fraud.  The Form 11661 was never filed and the status was not updated to status code 17.  As soon as Agent Carey determined that affirmative acts (firm indications) of fraud were present, she stopped the examination and submitted a Form 2797 Referral Report of Potential Criminal Fraud Cases on

October 22, 2009.  All of the evidence gathered prior to October 22, 2009 was part of the civil examination of Waimana Enterprises, Inc. and later Albert Hee.  There was no additional evidence obtained by the revenue agent after October 22, 2009.

In <u>United States v. Tweel</u>, <u>supra</u>, the taxpayer was prosecuted for tax evasion and moved to suppress evidence obtained through a civil audit.  The Organized Crime and Racketeering Section of the Justice Department requested an audit of Nicholas J. Tweel.  Revenue Agent D.M. ("RA D.M.") was assigned to the audit. The accountant for Tweel wanted to discover whether his client was again involved in a criminal inquiry and asked RA D.M. whether a "special agent" was involved in the new investigation.  RA D.M. replied that no special agent was involved.  This response let the accountant to believe that RA D.M. was just conducting a civil audit.  The Fifth Circuit Court of Appeals found that RA D.M. knew that the IRS was acting at the request of the Organized Crime and Racketeering Section of the Justice Department which is undeniably an instrument for criminal investigation.  RA D.M. knew that the accountant inquired whether a special agent was involved to determine whether he was conducting a criminal audit.  Revenue Agent D.M.'s response failed to inform the taxpayer of the obvious criminal nature of the investigation and indicates a flagrant disregard for the taxpayer's rights.

In Albert Hee's case, the civil examination was conducted from February 20, 2008 to October 22, 2009 by RA Carey.  Indicators of fraud were present for Waimana Enterprises, Inc. and Albert Hee's examination, and as such RA Carey discussed the possibility of a fraud referral with the Group Manager and FTA on October 22, 2008.  However, the FTA responded that fraud on the corporation is probably not viable, you need to identify the responsible person and you need more substantiation to determine if there is fraud by Albert Hee, consider opening up Mr. Hee's returns for examination.  The revenue agent followed the FTA's advice and opened a civil investigation of now Defendant Hee.

When criminal fraud was detected, the case was referred to CI using the Form 2797 Referral Report of Potential Criminal Fraud Cases on October 22, 2009.  All the evidence obtained prior to October 22, 2009 was part of the civil examination and should not be suppressed.

Unlike Tweel, when the Power of Attorney ("POA") for Albert Hee called and asked RA Carey about the status and timeframes for the Waimana and Clearcom audits, the POA did not specifically ask if it was a criminal investigation.  And RA Carey responded that her manager had asked her to work on another time sensitive matter, and she would get back in contact with the POA at a later date regarding resolution of the Waimana and Clearcom exams.  RA Carey's response did not include a positive or negative response to indicate whether the examination

was civil or criminal, because the POA did not specifically ask whether or not the examination was civil or criminal.

In United States v. Grunewald, supra, the court held that the evidence obtained in the course of a criminal investigation, where the defendant has not been apprised of the nature of the investigation, may be suppressed only if the defendant establishes the following: 1) the IRS had firm indications of fraud by the defendant, 2) there is clear and convincing evidence that the IRS affirmatively and intentionally misled the defendant, and 3) the IRS's conduct resulted in prejudice to defendant's constitutional rights.

In Albert Hee's case, RA Carey did not have firm indications of fraud when meeting with the Group Manager and FTA on October 22, 2008.  There were no affirmative acts (firm indications) of fraud discovered until RA Carey's referral of the case to CI using Form 2797 Referral Report of Potential Criminal Fraud Cases on October 22, 2009.  That referral included Defendant Hee and his companies, WEI, CCI and SIC.  RA Carey did not mislead the POA as to the true nature of her civil examination, or fail to refer the investigation of Waimana Enterprises, Inc., the other companies and Albert Hee.  The referral of the Waimana case to CI was in full compliance with IRS internal regulations.

The Eighth Circuit Court of Appeals also stated:

> [T]he mere failure of an IRS agent to inform a defendant that information developed in an audit may result in a further criminal investigation does not indicate affirmative and intentional deceit by the IRS.  (citations omitted)  Any further elaborations of these facts and circumstances will add nothing to our opinion.  Suffice it to say that we are unwilling to weaken the standard set forth above.  If IRS agents exercising sound discretion and good judgment fear suppression of evidence where no intentional prejudicial misrepresentation is afoot, civil audits will prematurely and unnecessarily be referred to CID.

United States v. Grunewald, 987 F.2d 531, 535 (8th Cir. 1993).

The government did not violate Albert Hee's Fourth, Fifth, and Sixth Amendment rights.

All of the evidence obtained from Waimana Enterprises, Inc., Albert Hee and CCI was accomplished prior to October 22, 2009, at which time the civil examination became a criminal investigation.  There was no additional evidence gathered by the revenue agent after that date.  There was no search at any time during the audit or subsequent criminal investigation -- Albert Hee's Fourth Amendment rights were not violated.

Fifth Amendment Rights pertain to a right to fairness in the criminal process. The government did not conduct a secret criminal investigation of Albert Hee and never took any steps to deceive him.  At no time was Mr. Hee in custody, thus, his

ability to exercise his privilege against self-incrimination under the Fifth Amendment was not impacted.

In addition, Albert Hee's Sixth Amendment rights guarantees a criminal defendant "the right...to have the Assistance of Counsel for his defense" at no cost.  Mr. Hee's right to have a criminal defense attorney represent him during the civil audit was not impacted.  Mr. Hee could easily have an attorney as his POA.  There was no secret criminal investigation conducted by the IRS.

The government did not conduct a secret criminal tax investigation against Albert Hee.  A civil audit was performed by RA Carey in full compliance with the law from February 20, 2008 to October 22, 2009 at which point a criminal referral was made to CI.  The Indictment dated March 25, 2015 is valid.  Suppression of the evidence obtained by RA Carey during the civil examination is not supported by the facts or the law.  All of the evidence here was gathered prior to the criminal referral or pursuant to grand jury subpoena after the criminal referral to CID was accepted.

## IV.   NO EVIDENTIARY HEARING IS REQUIRED

The only real issue in this case is, was there a violation of U.S. v. Tweel and its progeny?

> The Ninth Circuit has adopted the rule in Tweel, requiring that there be 'clear and convincing evidence of [] actual deception or trickery on the part of the Government' and that the defendant establish 'some

13

affirmative misrepresentation' to warrant suppression of evidence obtained during a civil audit.  United States v. Bridges, 344 F.3d 1010, 1020 (9th Cir. 2003) (citing Tweel, 550 F.2d at 299). Additionally, the Ninth Circuit has confirmed that silence, unless intentionally misleading, will not be equated with fraud.  See Robson, 477 F.2d at 17-18 ('the failure of an IRS agent... to warn a taxpayer that an audit may have potential criminal ramifications does not render the search unreasonable.'); see also, Prudden, 424 F.2d at 1035 (finding revenue agent's failure to warn, absent any affirmative misrepresentation, that an audit may result in criminal charges is not deceit because '[a]ny reasonable person is bound to be aware that the filing of an incorrect tax return may [*12] result in a charge of wrongdoing.').

United States v. Kim, 2010 WL 3490228 (N.D. Cal. 2010).

Kim, supra, mandates that a defendant present clear and convincing evidence of actual deception or trickery by the government to support a Tweel motion.  The Defendant has presented no such evidence or any evidence of any prejudice the Defendant suffered due to government action.  (See Defendant's Exh. "A"; see also Declaration of Crystal Carey, Declaration of Colin Chigawa and Declaration of Gregory Miki attached to this pleading.)

//

//

//

//

//

V.    <u>CONCLUSION</u>

In his motion to dismiss the Indictment, the Defendant has failed to establish any basis for an evidentiary hearing.  The Motion to Dismiss the Case With Prejudice should be denied on the papers filed without further hearing.

DATED: April 3, 2015, at Honolulu, Hawaii.

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii


By /s/ Leslie E. Osborne, Jr.
   LESLIE E. OSBORNE, JR.
   LAWRENCE L. TONG
   Assistant U.S. Attorneys