STEVEN TOSCHER, ESQ. (CA SBN 91115)
EDWARD M. ROBBINS, ESQ. (HI Bar No. 8314)
KURT KAWAFUCHI, ESQ. (HI Bar No. 4341)
HOCHMAN, SALKIN, RETTIG, TOSCHER & PEREZ, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California  90212-3414
Telephone:  (310) 281-3200
Facsimile:  (310) 859-1430
E-mail:      toscher@taxlitigator.com
             robbins@taxlitigator.com
             kawafuchi@taxlitigator.com

Attorneys for Defendant
ALBERT S. N. HEE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ALBERT S. N. HEE<br><br>　　　　　　　Defendant. | **CR NO.  14-00826-SOM**<br><br>DEFENDANT ALBERT S. N. HEE'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE ALLEGATIONS IN PARAGRAPHS 15 THROUGH 21 OF THE SECOND SUPERSEDING INDICTMENT |

## MEMORANDUM IN SUPPORT

### I.   BACKGROUND

Mr. Hee has been a target of a federal grand jury investigating tax matters since approximately July 2010 in the District of Hawaii.  Eventually, the Department of Justice ("DOJ") notified Mr. Hee through his counsel that the IRS had recommended to the DOJ that Mr. Hee be prosecuted for various tax crimes. Defense counsel asked that DOJ grant them a conference in the matter, and the request was granted.

On June 23, 2014, defense counsel met with the DOJ Tax Division ("Tax Division") trial attorneys who were reviewing the United States Attorney's referral of the Al Hee matter.  Defense counsel learned at the conference that the United States Attorney had recommended that the Tax Division authorize the following charges against Mr. Hee:

● IRC Section 7206 False Statements for tax years 2007 to 2012— both for individual and corporate tax returns. The corporate tax returns mainly involve Waimana Enterprises, Inc. (WEI) (but could also involve Sandwich Isles Corporation (SIC) and Clearcom Inc. (CCI)). (Generally, the false statements involve the alleged deduction of purported personal expenses at the corporate level, and not including as income the purported personal expenses at the individual level.)

2

● IRC Section 7212(a) including "obstructs, impedes…due administration of" tax laws for 2009 and 2010. (The charge appeared to arise out of conduct during the IRS audit.)

Six months later the First Superseding Indictment was filed on December 17, 2014, charging Mr. Hee with one count of violating IRC Section 7212(a) and six counts of violating IRC Section 7206(1) for his individual income tax returns for 2007 through 2012, arising out of certain payments made by Waimana Enterprises Inc. ("WEI") that the Government alleges were personal expenses of Mr. Hee and not properly reported.[1]

What is noteworthy about the First Superseding Indictment is the absence of any specific tax counts pertaining to the corporations, WEI, SIC or CCI. Individual counts under IRC Section 7206 (Fraud and False Statements), charging willfully signing a corporate return (§ 7206(1)) or aiding and assisting in the preparation of a corporate return (§ 7206(2)) that deducted the allegedly false business expenses (here Mr. Hee's alleged personal expenses), are normally routine charges reflecting a related false individual income tax return (here Mr. Hee's alleged false 2007 through 2012 individual income tax returns omitting

---

[1] The initial indictment was filed September 17, 2014, charging Mr. Hee with one count of violating IRC Section 7206(1) for his individual tax return for the 2007 tax year. It appears that this indictment was filed to protect the six year statute of limitations for 2007.

income from the paid personal expenses).  One can conclude from the absence of any specific tax counts pertaining to the corporations that either the Tax Division refused to authorize them, or the Tax Division authorized the counts and the United States Attorney was simply delaying the charges while continuing with the investigation.

On January 6, 2015, prosecutors notified defense counsel that they were considering presenting additional charges to the grand jury.

On January 8, 2015, defense counsel asked the Tax Division to grant them a conference regarding any additional charges being considered, subject to Tax Division approval.

On January 26, 2015, the prosecutors filed their motion to disqualify all defense counsel.

By letter dated January 29, 2015[2] the Tax Division responded to defense counsels' request for a second conference:  "At this time, the Tax Division is not authorizing additional charges in the above-captioned case. Accordingly, this case has been transmitted to the United States Attorney for the District of Hawaii."

It is apparent that the prosecutors asked the Tax Division for permission to indict additional charges against Mr. Hee relating to the Board of

---

[2]   Defense counsel first received the letter dated January 29, 2015 by email on March 2, 2015 and subsequently, a hard copy in an envelope that was postmarked on March 3, 2015.

4

Water Supply license, the allegations at issue in this motion.  It also apparent that the Tax Division refused to authorize those charges.

On March 6, 2015, the prosecutor's motion to disqualify all defense counsel was denied, after a hearing.

Between March 11 and March 23, 2015, Defendant filed several defense motions including Motion for Bill of Particulars, Motion in Limine Re: Government's Use of Lay Summary Witness Testimony, Motion for Discovery, Motion to Strike and Motion to Dismiss Case with Prejudice.  These motions are presently scheduled for hearings.

On March 25, 2015, the Government filed its Second Superseding Indictment.  In the Second Superseding Indictment, the counts and criminal statutes charged did not change, but the tax loss increased from $566k[3] to roughly $4 million.  The increase in tax loss was the result of adding paragraphs 15 through 21 to Count 1 of the Second Superseding Indictment under the heading "WEI's False Deductions for Capital Lease Business Expenses."  These paragraphs outline brand new allegations that supposedly caused $28.8 million in false depreciation,

---

[3] The $566k in the First Superseding Indictment consisted of a $426k alleged individual income tax loss and a $140k alleged corporate tax loss.  In the Second Superseding Indictment, the $4 million tax loss consists of a $228k alleged individual income tax loss (reduced as discussed in Footnote 4), a $140k alleged corporate tax loss (same as in the First Superseding Indictment), and the addition of a $3.6 million alleged corporate tax loss relating to the Government's Board of Water Supply lease allegations at issue in this motion.

amortization and lease interest expenses based on the Government's perceived change in the tax basis of a license agreement (described as a lease in the Second Superseding Indictment) between the Board of Water Supply and CCI—an entirely new theory of tax loss now accounting for approximately 85% of the tax loss alleged in the Second Superseding Indictment.

As the Government is quite aware, under the discretionary sentencing guidelines Section 2T4.1, the newly alleged tax loss increases the base offense level from 20 (loss more than $400,000) to 24 (loss more than $2.5 million), which can increase the sentencing range from 33-41 months to 51-63 months, an approximate 50% increase in the severity of the possible punishment.

## II.     ARGUMENT

### A.     Paragraphs 15 Through 21 Should Be Stricken from the Second Superseding Indictment, Because the Presumption of Vindictiveness Applies to the Increased Severity of the Charges

The Due Process Clause forbids prosecutions that vindictively punish a person for exercising constitutional, statutory, or procedural rights. *See United States v. Goodwin*, 457 U.S. 368, 372 (1982) (stating that punishing a person for acting legally is a due process violation).  Although the Ninth Circuit has ruled that vindictiveness will not be presumed when a prosecutor enhances charges in the routine course of prosecutorial review, even if the prosecutor's action was taken after a defendant exercised a legal right, *United States v. Sinigaglio*, 942

F.2d 581, 584 (9th Cir. 1982), a presumption of vindictiveness applies where the circumstances pose a realistic likelihood of vindictiveness. *See United States v. Goodwin*, 457 U.S. 368, 384 (1982). The Ninth Circuit has developed an "appearance of vindictiveness" test—there is a presumption of vindictiveness where the defendant's exercise of a procedural right and the sequence of events that follow create an appearance of vindictiveness which, if not dispelled by the government, constitutes a due process violation. *See United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982); *United States v. Motley*, 655 F.2d 186, 188 (9th Cir. 1981). Once there is an appearance of vindictiveness, the burden shifts to the Government to rebut the presumption by showing that the decision to increase the severity of the charges was "justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness." *Motley*, 655 F.2d at 188 n.1 (quoting *United States v. Burt*, 619 F.2d 831, 836 (9th Cir. 1980)).

In *United States v. Motley*, 655 F.2d 186 (9th Cir. 1981), the prosecution brought a superseding indictment with additional charges that could result in a ten year sentencing enhancement after the defendant's mistrial motion was granted. *Id*. at 188-189. The Ninth Circuit found that the defendant had succeeded in establishing an appearance of vindictiveness, explaining: "[a] re-indictment increasing the severity of the charges following the exercise of a

procedural right creates an appearance of vindictiveness which, if not dispelled by the government, constitutes a due process violation." *United States v. Motley*, 655 F.2d 186, 188 (9th Cir. Cal. 1981) (citing *United States v. Griffin*, 617 F.2d 1342, 1347 (9th Cir. 1980)).   The Court in *Motley* stated, "The 'appearance of vindictiveness' rule is a prophylactic rule designed both to protect the present defendant from vindictiveness and to prevent a chilling of the exercise of rights by other defendants in the future." *Id.*

Defendant submits we have the appearance of vindictiveness here. After failing to obtain the Department of Justice Tax Division's authorization for additional charges, the prosecutors subverted the Tax Division's authorization process required by law, to "up the ante" by increasing their tax loss numbers after having to cut them back in the wake of the defense motions[4] and after having failed in their attempt to disqualify the defense team.   The new allegations in the Second Superseding Indictment relating to the Board of Water Supply lease did not arise in the routine course of prosecutorial review, nor did they result from the Government obtaining new information in a continuing investigation.   By letter

---

[4] In the Second Superseding Indictment, the Government has reduced the individual tax loss from roughly $426k to $228k in paragraph 12 of each of the First Superseding Indictment filed on December 17, 2014 and Second Superseding Indictment filed on March 25, 2015.  It appears that the Government has removed the $1.313 million Santa Clara house purchase from the tax loss computation, which was addressed in Defendant's Motion to Strike filed March 20, 2015.

dated January 29, 2015, the Tax Division had already concluded that it was not authorizing additional charges.

The United States Attorney has strictly limited authority to bring tax charges without the prior approval of the Tax Division of the Department of Justice. The Assistant Attorney General for the Tax Division of the United States Department of Justice supervises the federal criminal tax enforcement program. 28 C.F.R. § 0.70. The Tax Division's authority over criminal tax cases is codified at 28 C.F.R. §§ 0.70 - 0.71 and, with exceptions not relevant here, the United States Attorney must secure Tax Division approval before bringing criminal tax charges. The United States Attorney's Manual ("USAM") states the standard the Tax Division employs before deciding to authorize prosecution:

USAM 6-4.211

Standards of Review

A.    Prosecution. The Principles of Federal Prosecution set forth the standards that govern the Tax Division's review of a criminal tax matter to determine whether to authorize prosecution. Under these principles, before authorizing a prosecution, the Tax Division must conclude that the Government has: 1) sufficient evidence to support a prima facie case; and 2) a reasonable probability of conviction. See USAM 9-27.220. The Tax Division also considers factors such as uniformity, balanced and broad enforcement goals, and Department and IRS priorities and policies in criminal enforcement matters. See generally USAM 6-4.010.

9

We submit that the United States Attorney recommended to the Tax Division that it authorize prosecution of Mr. Hee based on the Board of Water Supply lease. The Tax Division said no. Of particular note is that the prosecutor's attempted case based on the Board of Water Supply lease was so lacking in merit it could not even survive the Tax Division's test of 1) sufficient evidence to support a *prima facie* case; and 2) a reasonable probability of conviction. See discussion above.

Nevertheless, the prosecutor was not deterred; the prosecutors stuck his Board of Water Supply lease case at the bottom of Count 1, the IRC Section 7212(a) count. We find it hard to believe that the Tax Division authorized such a move, or that the prosecutor even bothered to ask for authorization. Why would he? The Tax Division authorized the 7212(a) count, so the prosecutor concluded that anything could be loaded into that count, regardless of the merits and regardless of authorization. Such behavior, in the defense view, has only one explanation: the prosecutor is attempting to get back at Mr. Hee (1) after his failure to rid himself of Mr. Hee's defense team, (2) having had to pare back his tax loss allegations relating to the Santa Clara house based upon the defense motions and (3) after having failed to obtain authorization from the Tax Division to expand his case based on the Board of Water Supply lease. Such behavior has a

10

chilling effect on a defendant's exercise of procedural and legal rights, especially where the validity of the additional allegations are at best highly questionable.

## B. In the Alternative, Paragraphs 15 Through 21 Should Be Stricken Because the Government Cannot Prove the Intent Element of Section 7212(a) as a Matter of Law

The issue of whether conduct alleged in an indictment is punishable under the statute charged is appropriately determined before trial. *See United States v. Pirro*, 96 F. Supp. 2d 279, 283 (S.D.N.Y. 1999); Fed. R. Crim. Pro. 12(b). The conduct alleged in paragraphs 15 to 21 relating to the Board of Water Supply lease is not punishable under Section 7212(a), because the Government cannot prove the intent element of Section 7212(a) as a matter of law.

Section 7212(a) is a specific intent crime that requires proof of an intentional violation of the law. Section 7212(a) requires the government to prove that the defendant "corruptly" endeavored to obstruct and impede the administration of the Internal Revenue Laws, with "corruptly" defined as "with the intention to secure an unlawful benefit for oneself or for another." *United States v. Hanson*, 2 F.3d 942, 946 (9th Cir. 1993). The intent element of a tax offense is not met "as a matter of law" where the law is uncertain or highly debatable. *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974). In such cases, the defendant's "actual intent is irrelevant," because under the due process clause of the Constitution, there must be a "sufficiently definite warning as to the proscribed

11

conduct when measured by common understanding and practices." *Id.*; *Jordan v. De George*, 341 U.S. 223, 231-232 (1951). In *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983), the Ninth Circuit held that when the law is "highly debatable, a defendant—actually or imputedly—lacks the requisite intent to violate it." *United States v. Dahlstrom*, 713 F.2d 1423, 1428 (9th Cir. 1983) (quoting *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974)).

With respect to paragraphs 15 to 21 of the Second Superseding Indictment, Mr. Hee cannot have the intent to secure an unlawful benefit as a matter of law, because the Government's allegation that Mr. Hee underpaid his taxes as a result of the alleged conduct is not supported by the law. The Government's claim of underpaid taxes relating to the Board of Water Supply lease hinges on its claim that "Defendant thereafter failed to inform the return preparers of the lease amendment, and no amended tax returns were filed on behalf of CCI or SIC." (2nd Super. Indict. ¶ 19.) The government further alleges that an event that allegedly occurred in April 2013—a dispute between the parties regarding their agreement—caused deductions taken in prior tax years to be "false." (2nd Super. Indict. ¶ 20.) The Government's position is not supported by the law. Returns cannot be made retroactively "false" by events that happened subsequent to the filing of the prior years' returns.

Under Section 461, a deduction generally may be taken when "all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability."[5]   IRC § 461(h)(1), (h)(4); Treas. Reg. § 1.461-(1)(a)(2)(i).   Under the facts as alleged by the Government, the parties entered into a legally binding contract for a set amount, which entitled the corporation to a deduction (subject to other applicable Internal Revenue Code sections not at issue here), regardless of actual payment of the liability.   It appears that the Government's position is that when subsequent events happened that the government contends changed the corporation's entitlement to the deductions taken, Mr. Hee failed to file amended returns for the corporation.   However, there is no legal support for the Government's position that Mr. Hee was required by law to file amended returns.

Taxpayers have no legal duty to amend previously filed returns, in any situation.   The IRS advises that if a taxpayer ascertains that a liability was improperly taken into account in a prior taxable year, the taxpayer "should" file an amended return, if the statute of limitations is still open, but there is no legal

---

[5] For liabilities that arise out of the use of another person's property by the taxpayer, economic performance occurs when the taxpayer uses the property, without regard to whether the taxpayer has paid for the use of the property.  IRC § 461(h)(2)(A)(iii).  Under Section 461, it is the obligation to pay for the use of the property that gives the taxpayer the right to the deduction.

obligation to do so.   Treas. Reg. § 1.461-1(a)(3).   The Supreme Court has explained that the "Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace." *Badaracco v. Comm'r*, 464 U.S. 386, 393 (1984).   In *Broadhead v. Commissioner*, T.C. Memo 1955-328 (1955), the Tax Court held that the IRS failed to prove fraud where a taxpayer refused to file an amended return after being advised to do so by his accountant to correct an accounting error in the original return that gave rise to an understatement of sales, because "Petitioner was not required by statute to file an amended return, and if one had been tendered for filing, respondent could have declined to accept it."   *Broadhead v. Comm'r*, T.C. Memo 1955-328 (1955); *see also Shannahan v. United States*, 47 F. Supp. 2d 1128 (S.D. Cal. 1999) ("nowhere in the tax code is there a provision for filing amended returns or for the IRS' acceptance of an amended return"); *Goldring v. Comm'r*, 20 T.C. 79, 81 (1953) ("There is no statutory provision for an amended return, and the acceptance or rejection thereof is solely within the discretion of the Commissioner.").

Accordingly, because the underlying tax law does not support the Government's contention that the conduct alleged in paragraphs 15 – 21 gave rise to an "unlawful benefit," the Government cannot prove the intent element of Section 7212(a)—the intent "to secure an unlawful benefit"—as a matter of law.

14

### III.   CONCLUSION

For the foregoing reasons, Defendant Albert S. N. Hee respectfully requests the Court strike paragraphs 15 through 21 of the Second Superseding Indictment,[6] the paragraphs relating to the prosecutor's case based on the Board of Water Supply lease.

DATED: Beverly Hills, California, April 3, 2015.

STEVEN TOSCHER, ESQ.
KURT KAWAFUCHI, ESQ.
EDWARD M. ROBBINS, JR., ESQ.

HOCHMAN, SALKIN, RETTIG,
TOSCHER & PEREZ, P.C.


By:    /s/ Steven Toscher.
       STEVEN TOSCHER., ESQ.


Attorneys for Defendant,
ALBERT S. N. HEE

6427580_1

---

[6] If the Court finds that striking paragraphs 15 to 21 of the Second Superseding Indictment would interfere with prosecutorial discretion in determining which charges to bring, Defendant respectfully submits that Count 1 should be dismissed in its entirety to remedy the taint caused by the due process violations relating to the Board of Water Supply lease. *Compare United States v. Motley*, 655 F.2d 186, 190 (9th Cir. 1981) (holding that an entire indictment must be dismissed where modifying an indictment to remove the taint caused by vindictive prosecution would result in the court substituting judicial for prosecutorial discretion in determining which charges to bring), *with U.S. v. Banks*, 682 F.2d 841 (9th Cir. 1982) (holding that only the additional charges that resulted from vindictive prosecution should be dismissed, where the government had simply added additional counts to the original charges).