IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 14-00826 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTIONS TO |
| | ) | DISMISS AND STRIKE ALLEGATIONS |
| vs. | ) | FROM SECOND SUPERSEDING |
| | ) | INDICTMENT; ORDER DENYING |
| | ) | MOTION TO SEAL DOCUMENTS |
| ALBERT HEE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING MOTIONS TO DISMISS AND
STRIKE ALLEGATIONS FROM SECOND SUPERSEDING INDICTMENT;
ORDER DENYING MOTION TO SEAL DOCUMENTS**

I.        INTRODUCTION.

        This case arises out of the Internal Revenue Service's
investigation of Defendant Albert Hee and his companies, Waimana
Enterprises, Inc., Clearcom, Inc., and Sandwich Isles
Communications, Inc.  In the Second Superseding Indictment of
March 25, 2015, Hee is charged with corrupt interference with the
administration of Internal Revenue laws in violation of 26 U.S.C.
§ 7212(a) and with six counts of filing false tax returns in
violation of 26 U.S.C. § 7206(1).

        Before the court are four motions.  First, Hee seeks
dismissal of all charges, arguing that the IRS revenue agent
auditing him and his companies was only purporting to be doing a
civil review while secretly collecting evidence to support
criminal charges.  Hee does not identify the point in time that

the agent allegedly began a criminal investigation. Hee appears to be raising a general challenge to IRS procedures rather than one to the agent's individual actions. For that reason, this court sees no need for the evidentiary hearing Hee requests. Relying on the written record and counsel's oral arguments, the court denies the motion to dismiss, determining that nothing in the record supports dismissal on the ground urged by Hee.

Second, Hee moves to strike allegations concerning a shareholder loan, as well as separate allegations that ceased to be relevant to this case when they were deleted from the Second Superseding Indictment. The Second Superseding Indictment refers to payments by Waimana Enterprises to Hee that were allegedly incorrectly reflected as loans when they were actually income. Arguing that he lacked notice that records concerning the money in issue, which Hee used to pay his children's tuition and living expenses, were incorrect, Hee seeks to strike the "shareholder loan" allegations. The court denies the motion, leaving it to the jury to decide whether the money constituted loans that Hee intended to repay.

Third, in a motion filed on April 3, 2014, Hee seeks to strike discussions about Waimana Enterprises' inclusions in its tax returns of allegedly false deductions for capital lease business expenses. Hee characterizes such allegations as vindictive and as insufficient to charge a crime. The court

denies the third motion as unpersuasive and unsupported by the record.

Finally, in the fourth motion before this court, Hee seeks to seal documents. Given Hee's failure to show good cause to seal the documents, the court denies this motion.

## II.        THE MOTION TO DISMISS IS DENIED.

### A.    Factual Background.

According to Form 1120, the "Examiner Officer's Activity Record," submitted by IRS Revenue Agent Crystal Carey on or about February 20, 2008, Carey was assigned and/or opened an investigation into Waimana Enterprises concerning its 2003 tax return. See IRS Form 1120, ECF No. 50-2, PageID #s 323-24. Hee was a principal of that entity. See id. (listing Albert Hee as the person to whom mail should be addressed).

On February 21, 2008, Carey called Revenue Agent Colin Chigawa to arrange a meeting with him because Chigawa was already examining the 2003 tax return for Sandwich Isles, another company with which Hee was involved. See id., PageID # 324.

On February 28, 2008, Carey called Hee and left a voicemail to schedule a "1040 audit." Hee promptly returned the call and scheduled an interview for March 26, 2008. Id., PageID # 324. This interview was rescheduled to May 7, 2008. See id., PageID # 327.

Before the meeting scheduled for May 7, 2008, Carey noticed that there was a $324,684 difference between what Sandwich Isles had reported as payment to Waimana Enterprises for services and what Waimana Enterprises had reported as income. See id., PageID # 328. This difference turned out to stem from different accounting methods for reflecting management fees. Id.

On June 13, 2008, Carey began her audit of Waimana Enterprises' 2004 tax return. See id., PageID # 330. Carey continued this audit into October 2008, talking with Hee, Waimana Enterprises' accountants, and persons with powers of attorney for companies related to Hee. See id., PageID #s 324-37. On October 22, 2008, Carey discussed with her manager, Lloyd Kamigaki, "OJI" ("On-the-Job Instructor") Carole Wong, and the fraud technical advisor, George Nunziata, the possibility of referring the case from her audit division to other personnel for treatment as either a civil or criminal fraud case. The fraud technical advisor said "no," indicating that the information Carey presented did not demonstrate corporate fraud and that more facts were needed before anyone could say that Hee might be liable for fraud. Carey was told to consider examining Hee's personal tax returns. See id., PageID #s 337-38. No fraud referral was made at that time, and Form 11611, which would have effected such a referral, was not filed.

On November 5, 2008, Carey visited the office of David M. Chinaka, who apparently was Waimana Enterprises' CPA and held a power of attorney that allowed him to talk on behalf of Waimana Enterprises with Carey. Chinaka allegedly told Carey that "Mr. Hee and he had talked about keeping receipts and other forms of documentation, and that 'Mr. Hee was aware of the requirements,' but choose to 'close deals with handshakes' and would rather 'play the odds' of being audited rather than keep records." See id., PageID #s 339.

On February 25, 2009, Form 5345-D was submitted to request Hee's personal tax returns for tax years 2002-2007. See id., PageID # 345.

On April 8, 2009, Carey received permission to audit Hee's personal tax returns for 2003 through 2006. Id., PageID # 347.

On August 12, 2009, Jill Yamasaki was Carey's acting manager while Lloyd Kamigaki was away. Yamasaki told Carey that Yamasaki had received a call from Alan Yee, a partner with another CPA firm Waimana Enterprises was using who also had a power of attorney allowing him to talk with the IRS. Yee apparently told Yamasaki that Carey had told Yee that Hee had committed fraud. Carey disputed that statement, saying that what she had told Yee was that "things look bad, and that we should try to solve as many things at my level as possible." Shortly

5

thereafter, Yee conceded to Yamasaki that Carey had not referred to "fraud." See id., PageID #s 356.

On September 30, 2009, Carey spoke with George Nunziata, the fraud technical advisor, and agreed to "**write up F2797.**" Form 2797 is a "Referral Report of Potential Criminal Fraud Cases." See id., PageID #s 360. Later that day, Carey called and cancelled a taxpayer meeting with Danielle Yanagihara, who apparently also held a power of attorney for Waimana Enterprises. Carey then indicated on Form 1120, "**This is best all around—I don't waste their time with questions Colin can answer, and also there is a clearly delineated line between when George said to write the case up for criminal referral and the cut-off of contact between myself and the [taxpayer].**" Id., PageID # 361. Nothing in the record indicates that Carey continued to investigate Hee or Waimana Enterprises after the decision was made on September 30, 2009, to refer the investigation to the criminal investigations fraud unit.

On October 22, 2009, Carey finished Form 2797 and referred the matter to the criminal investigations fraud unit by submitting that form to her manager, who approved it. See id., PageID # 361.

On November 4, 2009, Yanagihara left a voicemail for Carey asking about the status of the audits of Waimana Enterprises and Clearcom. Carey returned the call. Instead of

6

discussing the status of the audits, Carey told Yanagihara, "Hi Danielle, this is Crystal Carey from the IRS, returning your earlier phone call regarding Waimana Enterprises and Clearcom. In regard to time frames, my manager has asked me to work on another time sensitive matter, and I will have to get back in contact with you at a later date regarding resolution of the Waimana and Clearcom exams."  See id., PageID # 362.

**B.  Analysis.**

Hee seeks dismissal of the Second Superseding Indictment or, alternatively, suppression of evidence, on the ground that Carey, when conducting her civil audits, was secretly conducting a criminal investigation even before working on Form 2797.  Because the record lacks support for that claim, the motion is denied.

The court's analysis of Hee's claim of improper revenue agent conduct begins with United States v. Tweel, 550 F.3d 297 (5th Cir. 1977).  Tweel is cited by both Hee and the Government in connection with this issue.  Tweel was convicted of tax crimes following a trial in which the evidence established that he had "laundered" his income by passing sums to persons who owed little in taxes.  Id. at 298.  In May 1969, an IRS revenue agent informed Tweel and his wife that they were being audited. Tweel's accountant contacted the revenue agent and asked whether a "Special Agent" was involved in the investigation.  The revenue

7

agent said, "No," leading the accountant to believe that the audit was only a civil audit.  What the revenue agent did not disclose was that the audit was not routine, having been requested by the Organized Crime and Racketeering Section of the Justice Department, which handled only criminal investigations. The accountant then provided the revenue agent with records concerning Tweel.  <u>Id.</u>

On appeal, Tweel argued that his Fourth Amendment rights had been violated because his accountant had been deceived into providing records by the revenue agent's deception.  The Fifth Circuit noted that it "is a well established rule that a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery or misrepresentation of the Internal Revenue Agent."  <u>Id.</u> at 299.  Although the Fifth Circuit noted that a failure by a revenue agent to warn a taxpayer that an investigation may result in criminal charges does not amount to such deceit, trickery, or misrepresentation, it determined that the revenue agent's conduct in <u>Tweel</u> was a "sneaky deliberate deception."  <u>Id.</u>  The revenue agent knew that the accountant's inquiry about a "Special Agent" was a question about whether Tweel was the subject of a criminal investigation. The revenue agent's failure to disclose that the audit was requested by an office that only did criminal investigations was therefore a "silent misrepresentation" that misled the accountant

into providing the revenue agent with evidence for a criminal prosecution. The Fifth Circuit, concluding that any "consent" for Fourth Amendment purposes had been obtained through deceit, held that any evidence obtained as a result should be suppressed. Id. at 300.

The Eighth Circuit expounded on Tweel in United States v. Grunewald, 987 F.2d 531 (8ᵗʰ Cir. 1993). Grunewald was convicted of crimes related to underreporting income on his tax returns for 1985 to 1987. The investigation began in 1987, after an IRS employee was told by one of Grunewald's partners that Grunewald had not reported income on his tax returns. Id. at 533. A revenue agent was assigned to audit Grunewald's 1985 tax return. Id. At first, Grunewald denied underreporting, claiming that he had reported his income. Eventually, however, Grunewald admitted the underreporting, and the revenue agent referred the matter to the Criminal Investigation Department. Id. at 533-34.

On appeal, Grunewald argued that evidence against him had been improperly obtained in a criminal investigation under the guise of a civil audit. Id. at 534. The Eighth Circuit said, "It is clear that the IRS may not develop a criminal investigation under the auspices of a civil audit." Id. Citing Tweel, the Eighth Circuit stated that it "would be a flagrant disregard of individual's rights to deliberately deceive, or even lull, taxpayers into incriminating themselves during an audit

when activities of an obviously criminal nature are under investigation." Id. at 534. The Eighth Circuit said that, "once an IRS agent has developed 'firm indications of fraud,' in a civil investigation, the case must be turned over" to the Criminal Investigation Division. Id. The Eighth Circuit found no error in the district court's finding that the revenue agent had no such evidence before turning over the matter to the Criminal Investigation Division. Id. Accordingly, the Eighth Circuit affirmed the district court's refusal to suppress that evidence. Id.

As long ago as 1973, the Ninth Circuit noted the "well established rule in this and other circuits that a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery or misrepresentation of the Internal Revenue agent." United States v. Robson, 477 F.2d 12, 17 (9th Cir. 1973). In other words, "the IRS agent must not affirmatively mislead the taxpayer into believing that the investigation is exclusively civil in nature and will not lead to criminal charges." Id. at 18.

More recently, in United States v. Stringer, 535 F.3d 929 (9th Cir. 2008), the Ninth Circuit applied the reasoning in Tweel, Grunewald, and Robson to an investigation by the Securities and Exchange Commission ("SEC"). The district court in Stringer dismissed the criminal indictment, determining that

the Government had engaged in deceitful conduct.  Id. at 932.

The Ninth Circuit reversed.  Id. at 933.  The SEC had begun its

investigation in June 2000, meeting several weeks later with the

District of Oregon's United States Attorney's Office to

coordinate the SEC's investigation with a possible criminal

investigation.  Id.  At a meeting in October 2000 attended by the

SEC, the U.S. Attorney's Office, and the FBI, it was decided that

the SEC would investigate the matter without the assistance or

inclusion of the FBI.  Id.  The SEC did not hide from the

defendants the possibility or likelihood of a criminal

investigation.  Instead, when seeking documents from the

defendants, the SEC warned the defendants that it routinely

shared information with other agencies, including the United

States Attorney and state prosecutors.  Id. at 934.  The SEC also

advised the defendants of their Fifth Amendment rights, telling

them that any information they provided might be used against

them in criminal proceedings.  Id.  When a defense attorney asked

the SEC whether the SEC was working with any U.S. Attorney's

Office, the SEC said it did not respond to questions like that,

that the SEC had "routine uses" for information, and that the

defense attorney should direct that question to the U.S.

Attorney's Office or the Department of Justice.  Id. at 935.

        As the Ninth Circuit noted in Stringer, an agency may

conduct parallel civil and criminal investigations without

violating the Due Process Clause so long as it does not proceed in bad faith.  Id. at 936.  The Ninth Circuit noted that "the government may act in bad faith if it brings a civil action solely for the purpose of obtaining evidence in a criminal prosecution and does not advise the defendant of the planned use of evidence in a criminal proceeding." Id. at 937.  Because the defendants in Stringer were warned that any information they supplied might be used against them in a criminal investigation, the Ninth Circuit determined that the district court had erred in determining that information was obtained through deceit.  Id. at 938.  In other words, the Ninth Circuit determined that the SEC investigation had not been a pretext for a criminal investigation.  Id. at 939.  Under the circumstances, no official had affirmatively misled a defendant into believing that the SEC investigation was exclusively civil in nature and would not lead to criminal charges.

This court has before it portions of an IRS manual that sets forth procedures relevant to situations in which audits may indicate fraud.  Section 25.1.2(1) of the manual states:

> When indicators (badges) of fraud are
> uncovered, the compliance employee must
> clearly document the potential fraud
> indicators and initiate a discussion with the
> group manager.  If the group manager concurs
> there are indicators of fraud warranting
> fraud development, the compliance employee
> must contact the fraud technical advisor
> (FTA) assigned to that area.

<u>See</u> ECF No. 60-5, PageID # 460.

> Section 25.1.2(2) then states:
>
> After reviewing the potential fraud
> indicators and possible barriers to a
> successful referral, if the compliance
> employee, group manager and FTA agree the
> potential for fraud exists, the compliance
> employee must prepare Form 11661, *Fraud
> Development Recommendation–Examination* or
> Form 11661-A, *Fraud Development
> Recommendation–Collection* and forward the
> completed form to the group manager for
> approval.

<u>Id.</u>

According to the handbook, **"If affirmative acts of fraud are established**: a.  The compliance employee must suspend collection or examination activity, and immediately notify the group manager and the FTA."  <u>Id.</u>, PageID # 461.

Calling Carey's investigation a "secret criminal tax investigation," Hee argues that the IRS manual actually allowed Carey to obtain evidence for Hee's criminal charges under the guise of conducting a civil audit.  He says that his company's CPAs were required by Treasury Department Circular No. 230, 31 C.F.R. § 10.20(a)(3), to comply with Carey's requests for information so long as the requests were proper and lawful and did not seek information that was privileged.  <u>See</u> ECF No. 60-6, PageID # 463.  Hee says that Carey lied to his company's CPA in November 2009 about the status of the audit.  <u>See</u> <u>id.</u>, PageID # 362.

According to Hee, Carey secretly intended to use whatever she discovered for a criminal prosecution. Hee claims that the information sought by Carey from the CPAs was not lawful, but that the CPAs did not know they should refrain from complying with the requests, given Carey's failure to disclose her alleged plan. Hee asks the court to conduct an evidentiary hearing to examine Carey's intent. See ECF No. 50-1, PageID # 317.

An evidentiary hearing is required when, in moving to dismiss an indictment on the ground of government misconduct, a defendant raises a material issue of fact that would entitle the defendant to relief if the facts were resolved in accordance with defendant's contentions. See United States v. Irwin, 612 F.2d 1182, 1187 (9th Cir. 1980). What has become clear to this court through a nonevidentiary hearing on whether to conduct an evidentiary hearing is that Hee's motion does not turn on evidence specific to the present case. Hee acknowledged that Carey's actions complied with the IRS manual, but that the IRS is always looking to bring criminal cases. In short, Hee is seeking an order with reasoning under which any indictment preceded by a civil audit would be declared improper. In seeking such an order, Hee is not relying on factual detail about Carey in particular.

Pressed at the hearing to indicate when Carey might have had sufficient indicia of fraud to be required to cease collection activities, Hee could only concede that, as of October 22, 2008, when Carey was told by the fraud technical advisor that a fraud case was not viable, Carey did not have sufficient indicia of fraud. At most, Hee argued that, as of November 5, 2008, when Carey was told by one of Waimana Enterprises' CPAs that Hee did not keep receipts and chose to close deals with handshakes and "play the odds" of being audited, there was sufficient indicia of fraud. This court disagrees. By themselves, the lack of receipts and closing of deals with handshakes are not sufficient badges of fraud to warrant a criminal investigation referral. Hee simply fails to allege "facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000).

Of course, this court understands that no defendant can be in a position to make an airtight case as to what an evidentiary hearing might reveal, but an evidentiary hearing is not available just for the asking. Hee must make some showing that Carey had the alleged secret intent. A mere supposition is insufficient, but that is all Hee offers.

While Hee complains that Carey did not tell Waimana
Enterprises' CPA on November 4, 2009, that the matter had been
referred for a criminal investigation on October 22, 2009,
instead stating that she was working on another matter, nothing
in the record establishes that Carey continued to collect
evidence from Waimana Enterprises, Hee, or any of Hee's
associates after September 20, 2009, when the decision to **"write
up F2797"** was made.  The court does not determine here that there
was "misleading" of any CPA, but even if "misleading" occurred in
the fall of 2009, it could not have prejudiced Hee given the
absence of additional information obtained by the IRS on or after
September 30, 2009.

Because nothing more than Hee's speculation and
guesswork support the motion to dismiss, the motion is denied.

**III.      THE MOTIONS TO STRIKE ARE DENIED.**

Hee has filed two motions to strike allegations in his
indictments.  In the first motion, filed on March 20, 2015, Hee
seeks to strike from the First Superseding Indictment an
allegation concerning a shareholder loan, as well as an
allegation that is no longer in issue given the filing of the
Second Superseding Indictment.  Because the shareholder loan
allegation is part of the Second Superseding Indictment, the
court deems the motion filed on March 20, 2015, before the filing

of the Second Superseding Indictment, to apply to the Second Superseding Indictment.

In relevant part, the scheme alleged in Count 1 of the Second Superseding Indictment involved Waimana Enterprises' allegedly false characterization on its books of a loan to Hee of $718,559.09 for college tuition and living expenses of Hee's children.  The Government asserts that the money Hee received in this regard was not, in fact, a loan and was instead income on which Hee owed tax.  Hee argues that no criminal charge can flow from these loan allegations because the law is not sufficiently clear as to when a loan must be treated as income for tax purposes.  For reasons detailed below, this court, being unpersuaded, denies the motion to strike the factual allegations concerning the $718,559.09 shareholder loan.

In a second motion filed on April 3, 2014, Hee seeks to strike allegations concerning Waimana Enterprises' allegedly false itemizations of capital lease business expenses on its tax returns.  The allegations in issue are set forth in paragraphs 15 to 21 of the Second Superseding Indictment.  The court denies Hee's motion to strike these allegations, as discussed in detail below.

## A.    The Motion to Strike the Shareholder Loan Allegations Is Denied.

The Second Superseding Indictment alleges that Hee incorporated Waimana Enterprises in 1988 and that Hee is its sole shareholder.  See ECF No. 55 ¶ 4, PageID # 375.  Paragraph 10(b) of the Second Superseding Indictment alleges that Waimana Enterprises' books "falsely characterized as a 'loan to shareholder'" a payment of $718,559.09 that was used by Hee to pay for his children's college tuition and living expenses.  Id. ¶ 10(b), PageID # 377.

Pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, Hee seeks to strike from the indictment the allegations concerning this purported shareholder loan.  Hee argues that, because the law is unclear as to when a loan must be treated as income, he was not on notice that what he allegedly did could have been illegal.

Rule 12(b)(3) allows the court to hear a claim that there is a defect in the indictment or information.  In ruling on a Rule 12(b)(3) motion, the district court is bound by the four corners of the indictment and presumes the truth of the indictment's allegations.  United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).  In determining whether the shareholder loan allegations should be stricken, this court examines whether the Second Superseding Indictment alleges facts that, if proven,

would constitute a violation of the law charged.  <u>United States v. Boren</u>, 278 F.3d 911, 914 (9th Cir. 2002).  "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy."  <u>United States v. Awad</u>, 551 F.3d 930, 935 (9th Cir. 2009).

Citing cases finding that certain payments to various shareholders were loans, Hee argues that he lacked notice that the payments he received might not be considered loans and asks that the reference to any alleged "shareholder loan" be stricken. The Second Superseding Indictment alleges that Hee "caused [Waimana Enterprises] to characterize the payment of . . . personal expenses as a business expense on its corporate books. This characterization in turn caused [Waimana Enterprises'] return preparers to deduct the expenses as legitimate business expenses on [Waimana Enterprises'] corporate tax returns.  Such improper deductions resulted in the underpayment of corporate taxes . . . ."  Second Superseding Indictment ¶ 11, PageID # 378. It then alleges that Hee failed to report the payments as income on his tax returns, resulting in his underpayment of taxes.  <u>Id.</u> ¶ 12, PageID # 378-79.  Hee allegedly did not document the purported shareholder loan even after being advised to do so on at least two occasions.  <u>Id.</u> ¶ 13, PageID # 379.

These allegations, if true, support the charge under 26 U.S.C. § 7212(a), which, in relevant part, prohibits a person from corruptly obstructing or impeding the due administration of the tax laws set forth in Title 26 of the United States Code. See United States v. Hanson, 2 F.3d 942, 946 (9th Cir. 1993) ("To prove a violation of § 7212(a), attempting to interfere with the administration of the IRS, the government must prove (1) corruption, force, or threat of force, and (2) an attempt to obstruct the administration of the IRS."), superseded by statute on other grounds as stated in United States v. McEnry, 659 F.3d 893 (9th Cir. 2013)). "An act is 'corrupt' within the meaning of section 7212(a) if it is performed with the intention to secure an unlawful benefit for oneself or for another." Id.

Whether Hee intended the payments to be a bona fide shareholder loan is a matter for the jury to decide. See Chism's Estate v. Comm'r of Internal Revenue, 322 F.2d 956, 960 (9th Cir. 1963) ("Whether the withdrawals were loans or dividends depends upon petitioners' intent at the time that they were made. And intent, to repay or to retain, is a question of fact, to be determined upon a consideration of all the circumstances in each case."); Clark v. Comm'r of Internal Revenue, 266 F.2d 698, 710-11 (9th Cir. 1959) ("Whether a withdrawal is a loan is a factual question to be determined upon consideration of all the circumstances present in a particular case, and depends upon the

existence of an intent at the time the withdrawal is made that it should be paid back."). If Hee never intended to repay the loans he may have corruptly endeavored to obstruct or impede the administration of the tax laws in Title 26 of the United States code. The court leaves for trial a determination of Hee's intent.

### B. The Motion to Strike the Allegations Concerning Deductions for Capital Lease Business Expenses Is Denied.

#### 1. Hee Fails to Demonstrate Vindictiveness.

Hee's second motion to strike seeks to strike the allegations contained in paragraphs 15 through 21 of the Second Superseding Indictment as vindictive. See ECF No. 65. Those paragraphs allege that Hee's companies claimed approximately $28.8 million in false business expenses on their corporate tax returns arising out of purported lease payments for the right to route telephone lines through abandoned water mains belonging to the Board of Water Supply for the City & County of Honolulu. The Second Superseding Indictment alleges that the payments had not actually been made and were not obligated, and that, by falsely claiming the business expenses, Hee's companies underpaid approximately $3.6 million in federal taxes.

Hee argues that these allegations were added only after he had filed several motions, including one that caused the Government to drop allegations that Hee had failed to report more

than $1.3 million relating to the sale of a house.  The court is
unpersuaded by the vindictiveness argument.

"The right to due process of law is violated where the
government increases the severity of alleged charges in response
to the exercise of constitutional or statutory rights."  United
States v. Burt, 619 F.2d 831, 836 (9th Cir. 1980).  A vindictive
prosecution may be proven by direct evidence.  See United States
v. Jenkins, 504 F.3d 694, 699 (9th Cir. 2007).  Alternatively, a
vindictive prosecution may be established through a presumption
of vindictiveness when a defendant shows that he or she exercised
a statutory, procedural, or constitutional right and suffered
charges "in circumstances that give rise to an appearance of
vindictiveness."  Id.  A reindictment increasing the severity of
the charges following the exercise of a right creates such an
"appearance of vindictiveness which, if not dispelled by the
government, constitutes a due process violation."  United States
v. Motley, 655 F.2d 186, 188 (9th Cir. 1981).

A defendant seeking dismissal of an indictment based on
vindictiveness must make an initial showing of an "appearance of
vindictiveness," which may involve a demonstration that the
defendant exercised a statutory or constitutional right and then
was reindicted on more severe charges.  Burt, 619 F.2d at 836.
Once the defendant makes the initial showing, the burden shifts
to the Government to prove that the increase in severity was not

caused by a vindictive motive.  Id.  The Government bears the burden of overcoming the presumption of vindictiveness by "objective evidence justifying the prosecutor's action." Jenkins, 504 F.3d at 701 (quotation marks and citations omitted).

Hee claims that the Government increased the severity of the charges against him by filing the Second Superseding Indictment with the additional information concerning false deductions for capital lease business expenses alleged in paragraphs 15 to 21.  Hee says the additional information exposes him to a higher offense level and that he demonstrates an "appearance of vindictiveness" because the increase in severity occurred after he had filed several motions.

No new charge flowed from the water main lease allegations.  Instead, those allegations serve as additional support for the § 7212(a) charge that was already included in the prior indictment.  The higher offense level that Hee says the new allegations expose him to is a sentencing guideline issue, not a statutory issue.  Even if a guideline issue qualifies as exposing Hee to a more serious charge, a proposition for which Hee cites no authority, Hee does not show that, absent paragraphs 15 through 21, his total offense level under the advisory sentencing guidelines would necessarily be lower.  As the Government notes in a footnote in its opposition memorandum, if Hee is found guilty of Count 1, the lease payments could be considered as

23

"relevant conduct" affecting guidelines calculations even if the Second Superseding Indictment made no reference at all to those lease payments.  See ECF No. 71 n.2, PageID # 555.

Even assuming that Hee satisfies his initial burden, the Government demonstrates that the additional allegations concerning the deductions for capital lease business expenses were not vindictive.

Counsel for the Government, Leslie E. Osborne, Jr., filed a declaration explaining that, in April 2014, "the Internal Revenue Service, Criminal Investigation (IRS-CI) submitted a report to IRS criminal tax counsel and the Department of Justice, Tax Division (DOJ Tax) recommending the prosecution of Mr. Hee for various tax charges."  See ECF No. 71-1 ¶ 2.  Osborne said that, at that time, the grand jury was investigating Hee's lease rights to use the Board of Water Supply's abandoned water mains. Id.

On August 8, 2014, the Tax Division of the U.S. Department of Justice authorized the prosecution of Hee for the crimes of filing false individual tax returns for the years 2007 through 2012 and corruptly obstructing or impeding the due administration of the internal revenue laws in violation of 26 U.S.C. §§ 7206(1) and 7212(a).  Id. ¶ 3.

In August 2014, the grand jury received additional evidence concerning the abandoned water main lease and the

treatment of the lease for tax purposes.  At that time, IRS-CI began preparing a report to IRS criminal tax counsel and the Department of Justice seeking authorization to bring additional charges concerning the tax treatment of the water main lease. Id. ¶ 4.

On September 17, 2014, the grand jury returned the original indictment against Hee, charging Hee with one count of filing a false personal income tax return for 2007.  See ECF No. 1.  Osborne says that this charge was brought "solely to meet the statute of limitations" and that he told defense counsel at that time that additional charges were forthcoming.  See Osborne Decl. ¶ 5, ECF No. 71-1.

On December 14, 2014, IRS-CI sent a report to IRS criminal tax counsel and the Department of Justice, asking for authorization to bring additional charges arising out of the tax treatment of the water main lease.  Id. ¶ 6.

On December 17, 2014, the grand jury returned the Superseding Indictment against Hee.  This indictment did not include any allegations relating to the tax treatment of the water main lease.  Id. ¶ 7.  Osborne says that he again told defense counsel that additional charges were being referred to the Department of Justice.  Id. ¶ 8.

Osborne says he received a letter from the Department of Justice on March 2, 2015, stating that "no further

authorization is necessary provided that Hee's conduct regarding the false deductions related to the lease of the abandoned water mains . . . are included in the previously authorized 26 U.S.C. § 7212(a) charge." Id. ¶ 9. At the hearing, the Government offered to provide this court with a copy of the letter for in camera review. For purposes of deciding the motions now before this court, this court sees no need to examine material not made available to Hee.

Late last month, on March 20 and 23, 2015, Hee filed a motion to dismiss indictment and a motion to strike allegations from the indictment. See ECF Nos. 46 and 50.

The Second Superseding Indictment was filed on March 25, 2015, shortly after the motions were filed. See ECF No. 55.

Osborne's declaration establishes that the additional allegations arising out of the tax treatment for the water main lease had been contemplated before Hee filed his motions on March 20 and 23, 2005. Under these circumstances, the Government has met its burden of demonstrating by objective evidence that it was not acting vindictively when it included paragraphs 15 through 21 in the Second Superseding Indictment.

## 2. The Second Superseding Indictment Sufficiently Alleges a Violation of § 7212(a) Arising Out of Lease Payments For Use of Abandoned Water Mains.

Hee next argues that the allegations concerning the tax consequences of the water main leases should alternatively be stricken because the law was so unclear that he could not have had the requisite intent to support the tax crime charged.

According to the allegations in the Second Superseding Indictment, Hee incorporated Clearcom Inc. in 1997. See ECF No. 55 ¶ 5. Hee then signed a lease between Clearcom and the Board of Water Supply for Clearcom to use abandoned water mains to run telephone lines. Id. ¶ 17. Clearcom was supposed to pay $48.75 million over a thirty-year period and make a guaranteed payment of $5 million in May 2007. Based on this guaranteed payment, the Second Superseding Indictment says, Clearcom's tax preparers computed and deducted the depreciation, amortization, and lease interest as business expenses on the 2002 through 2007 tax returns. Id. ¶ 18. But on August 22, 2005, Hee allegedly signed an amended contract that extended the date for the $5 million guaranteed payment to December 2013. Id. ¶ 19. Hee allegedly failed to tell his tax preparers about this extension, and no amended tax returns were filed. Id.

In April 2013, Hee told the Board of Water Supply that he was disputing the legitimacy of the $5 million dollar

guaranteed payment. In December 2013, Hee instructed his employees not to make the payment. Id. ¶ 20. Clearcom's tax returns continued to deduct expenses related to the $5 million payment on its tax returns through 2012. Id. ¶ 21.

Count 1 charges a violation of § 7212(a). As noted above, to prove a violation of § 7212(a), "the government must prove (1) corruption . . . , and (2) an attempt to obstruct the administration of the IRS." United States v. Hanson, 2 F.3d at 946. "An act is 'corrupt' within the meaning of section 7212(a) if it is performed with the intention to secure an unlawful benefit for oneself or for another." Id.

The Government argues that Hee violated § 7212(a) by concealing the amended lease from his tax preparers and directing that lease payments not be made in an ongoing attempt to impede the IRS and the tax laws. According to the Government, Hee knew his companies were being audited in 2008 and concealed the change in Clearcom's obligation to pay the $5 million. Hee's conduct violated § 7212(a) if Hee corruptly attempted to obstruct the administration of the IRS and/or the tax laws. That is, to be guilty under § 7212(a), Hee, in failing to tell his CPAs about the amended contract obligating him to pay $5 million in 2013 instead of 2007, must have intended to secure an unlawful benefit for himself or Clearcom. Whether Hee's conduct was such a corrupt attempt to obstruct the administration of the IRS and/or

the tax laws is a matter for the jury to decide.  The court is unpersuaded by Hee's argument that the water main lease allegations should be stricken because the law was too unclear to allow him to be convicted in that regard.  The law clearly provided for a conviction if a taxpayer had the requisite corrupt motive.

**IV.      THE MOTION TO SEAL DOCUMENTS IS DENIED.**

On April 9, 2015, Hee filed a motion to seal documents pursuant to Local Rule 83.12.  The motion seeks to seal a Referral Report of Potential Criminal Fraud Cases, Form 2797, arguing that it contains the Government's fraud theories and related tax information.  The motion is denied, as it makes only a pro forma attempt at satisfying the requirements of Local Rule 83.12.  It does not identify specific information that is confidential or discuss why the information should be sealed.  Of course, pursuant to Local Rule 100.10.1, certain personal identifiers may be redacted from the documents without a specific court order granting leave to do so.

**V.       CONCLUSION.**

The court denies Hee's motion to dismiss indictment, denies both of Hee's motions to strike allegations from the indictment, and denies Hee's motion to seal documents.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 27, 2015.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge