STEVEN TOSCHER, ESQ. (CA SBN 91115)
EDWARD M. ROBBINS, JR., ESQ. (HI Bar No. 8314)
KURT KAWAFUCHI, ESQ. (HI Bar No. 4341)
HOCHMAN, SALKIN, RETTIG, TOSCHER & PEREZ, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California   90212-3414
Telephone:   (310) 281-3200
Facsimile:   (310) 859-1430
E-mail:        toscher@taxlitigator.com
                  robbins@taxlitigator.com
                  kawafuchi@taxlitigator.com

Attorneys for Defendant,
ALBERT S. N. HEE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR NO.   14-00826-SOM |
|---|---|
| Plaintiff, | DEFENDANT ALBERT S. N. HEE'S TRIAL BRIEF; CERTIFICATE OF SERVICE |
| v. | |
| ALBERT S. N. HEE | Trial Date: June 23, 2015 Time: 9:00 a.m. |
| Defendant. | Judge: Susan Oki Mollway |

COMES NOW, Defendant Albert S. N. Hee, by and through his attorneys, and hereby submits this Trial Brief.

1

# I.    BACKGROUND

This is criminal tax case.   The United States government filed criminal charges against Albert S. N. Hee.   The government alleges that Mr. Hee "corruptly" obstructed or impeded, or endeavored to obstruct or impede, the due administration of the U.S. tax laws.   "Corruptly" means intentionally trying to secure an unlawful benefit for Mr. Hee or another person.   The government has also alleged that Mr. Hee filed false personal tax returns from 2007 through 2012.[1] In this criminal tax case, the government must show that Mr. Hee "willfully" filed false returns.   Here the government is employing a specific items method of proof.[2]

This criminal tax case is the culmination of a long running tax dispute between the IRS and Mr. Hee and his companies. The IRS examination of SIC started in 2006.   The grand jury commenced in June 2010 and extended more than four (4) years before the initial indictment on September 17, 2014.   The first superseding indictment was filed on December 17, 2014 ("First Superseding Indictment") and Mr. Hee was arraigned on December 23, 2014.   The second superseding indictment was filed on March 25, 2015 ("Second Superseding

---

[1]   These charges also arise out of Mr. Hee's companies, Waimana Enterprises, Inc. (WEI), Sandwich Isles Communications, Inc. (SIC) and ClearCom, Inc. (CCI)).
[2]   The specific items method of proof consists of direct evidence of the items of income received by a taxpayer in a given year.

Indictment").   But for the criminal charges, this case is not unlike typical civil tax disputes that play out everyday before the IRS and the Courts. This case should have never been charged criminally.

Indeed, a small part of the IRS's effort of examining and investigating under a microscope Mr. Hee's tax affairs over an eleven (11) year period from tax years 2002 through 2012 recently reached its conclusion in *Johnston v. Commissioner,*[3] when the United States Tax Court rejected the IRS's assertion that Mr. Hee and his companies forgave a loan to one of its former employees and accepted the testimony of Mr. Hee as credible.[4]

Rather than allowing the IRS examination which had been ongoing for over three years to run its course, the IRS suspended its civil examination of Mr. Hee and his companies and referred the matter for a criminal investigation in 2009.

What the Court will see in this case is a typical civil tax dispute between a taxpayer and the IRS where technical tax issues are the predominant feature. What the Court will not see, even after a detailed and lengthy investigation of Mr. Hee's tax affairs, are the typical hallmarks of criminal tax violations—badges of fraud reflecting on the willfulness of the taxpayer.

---

[3]   *Johnston v. Commissioner*, T.C. Memo. 2015-91.
[4]   According to the Tax Court Judge: "Mr. Johnston and Mr. Hee testified at trial regarding the SIC loan. Having observed their appearances and demeanors at trial, we find their testimonies on this issue to be honest, forthright, and credible."   *Id.*

As the Supreme Court noted in *Cheek v. United States*[5], because of the complexity of our tax laws, criminal tax violations require more than a taxpayer just being wrong as to a particular question of tax law—it requires that the taxpayer be willful and intentionally violate a known legal duty.   Accidental, inadvertent, mistaken, negligent, or even grossly negligent conduct does not constitute willful conduct.[6]

We expect that the evidence will show that the accounting staff within Mr. Hee's companies, as well as the outside accountants, were aware of and accepted the substance of many if not all of the tax reporting positions the government asserts were fraudulent.   We expect that the evidence will also establish that Mr. Hee was in good faith at all times regarding his tax obligations.   The government will fail to prove that Mr. Hee willfully signed and filed a false return or corruptly obstructed the IRS, because Mr. Hee lacked the specific intent required for these charges.

---

at 9.

[5]  *Cheek v. United States*, 498 U.S. 192, 201 (1991).

[6]  *United States v. Collins*, 457 F.2d 781, 783 (6th Cir. 1972); *United States v. Matosky*, 421 F.2d 410, 413 (7th Cir. 1970).

## II.    STATEMENT OF FACTS

There are several factual issues involved.

● **Depreciation, Amortization and Lease Interest Expenses Stemming from the BWS Lease/License**

According to the government, Mr. Hee caused WEI, SIC and CCI to claim approximately $28.8 million in false business expenses on corporate tax returns, for allegedly false depreciation, amortization and lease interest expenses stemming from a license agreement (described as a lease in the Second Superseding Indictment) between the Board of Water Supply ("BWS") and CCI, based on the government's perceived change in the tax reporting of the agreement—an eleventh hour theory of tax loss now accounting for approximately 85% of the tax loss alleged in the Second Superseding Indictment.   The government alleges in its Second Superseding Indictment that a change in the expected timing of a $5 million guaranteed payment as a result of a 2005 amendment to the license agreement and a subsequent dispute relating to the agreement made the tax reporting retroactively "false" and that "no amended tax returns were filed."   (2nd Super. Indict. ¶¶ 19-21.)   The government has repeatedly failed to articulate for this Court the tax law error in the manner that the license agreement with the BWS was reported, which is a highly complex technical tax issue.   The evidence will

show that the accountants were aware of the extension of the $5 million payment and thought that the reporting of the transaction was unaffected.

Note the odd evolution of this specific item as a criminal tax item.   On March 25, 2015, the government filed its Second Superseding Indictment.   In the Second Superseding Indictment, the counts and criminal statutes charged did not change, but the tax loss increased from $566K[7] to roughly $4 million.   The increase in tax loss was the result of adding the BWS allegations to the indictment, which became paragraphs 15 through 21 of Count 1 of the Second Superseding Indictment under the heading "WEI's False Deductions for Capital Lease Business Expenses."

We can only conclude that the government threw in the BWS allegations in an effort to increase the tax loss figures.   As the government is quite aware, under the discretionary sentencing guidelines Section 2T4.1, the newly alleged tax loss increases the base offense level from 20 (loss more than $400,000) to 24 (loss more than $2.5 million), which can increase the sentencing range from 33-41 months to 51-63 months, an approximate 50% increase in the severity of the

---

[7] The $566K in the First Superseding Indictment consisted of a $426K alleged individual income tax loss and a $140K alleged corporate tax loss.   In the Second Superseding Indictment, the $4 million tax loss consists of a $228K alleged individual income tax loss, a $140k alleged corporate tax loss (same as in the First Superseding Indictment), and the addition of a $3.6 million alleged corporate tax loss relating to the government's Board of Water Supply lease allegations.

possible punishment.

● **Business Expense for Daughter's College Tuition**

The government has identified as a specific criminal tax item college tuition payments of $33,523.00 for Mr. Hee's eldest child which, according to the government, was falsely characterized as a business expense of WEI.   The evidence will show that this was an error by the accountants and when discovered, the accountants advised that those expenses should be treated as a shareholder loan (*i.e.* a loan from WEI to Mr. Hee).   The accounts thereafter treated these payments as shareholders loans.   It goes without saying that this is not a criminal tax specific item.

● **Loan to Shareholder**

Numerous other payments totaling $718,559.09 for college tuition and living expenses of Mr. Hee's children were booked by WEI as shareholder loans, which were, according to the government, falsely characterized by WEI as a "loan to shareholder" as the result of the procedures described above.

The government alleges that Mr. Hee's failure to document this shareholder loan results in the principal amount of the loan being taxed as income to Mr. Hee, apparently under the theory that the loan was bogus for want of documentation. The government is wrong.   Failing to document a shareholder loan is a legally

insufficient basis to invalidate the loan.[8]   In any event, the loan was documented

on the books of WEI.

The government seems to think the law is "very clear" but then proceeds to

list a number of factors that Federal courts consider in determining whether a

shareholder loan is a valid loan for tax purposes.   (Doc. No. 62, Gov. Opp. 2-3.

(citing *Crowley v. Comm'r*, 962 F.2d 1077, 1079 (1st Cir. 1992).)   Although the

existence of a promissory note is a factor that courts consider to determine the tax

treatment of a loan, it is *not* a requirement for there to be a valid loan.[9]

In Defendant's Memorandum in Support of its Motion to Strike filed March

20, 2015 (Doc. No. 46, pages 10 – 12), Mr. Hee has cited numerous decisions

where Federal courts have determined there to be a valid loan despite the lack of a

promissory note.   The government in fact acknowledges in its Opposition filed

April 3, 2015, that "no single factor is dispositive."   (Doc. No. 62, Gov. Opp. 3.)

*See United States v. Wealth*, 204 F.3d 1228, 1230 (9th Cir. 2000).

The government has brought criminal charges under IRC section 7212(a)

and 7206(1) based on its assessment of a non-exclusive, multi-factor test that was

---

[8]   The parties addressed this issue in the briefing on Defendant's Motion to Strike
Allegations in the Superseding Indictment (Doc. No. 46).
[9]   Common sense supports this conclusion.   A co-worker asks to borrow $1,000
and you give it to him.   No note.   No interest.   No time for repayment.   Can
there be any doubt that this is a real loan?   You may have a proof problem, if he
fails to repay you, but that does not mean it was not a loan.

developed in civil cases and has resulted in case holdings that are difficult to reconcile. Such allegations lack the necessary clarity in the law that due process requires in order to charge Mr. Hee with these crimes. *See United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983).

Under the law, a loan is valid for tax purposes if, at the time the loan was made, the taxpayer intended to repay the loan. The evidence will show that the amounts were booked as a loan on the recommendation of Mr. Hee's accountants and that Mr. Hee intended to repay the balance of his shareholder loan account.

● **Expenses for Personal Massages**

The government has identified as a specific criminal tax item payments of $92,000 for Mr. Hee's personal massages over a ten year period. These payments were characterized as "consulting fees" and deducted as business expenses. The government claims that this $92,000 should have been reported as dividend income by Mr. Hee. Regardless of the merits of this tax reporting position, the evidence will show that Mr. Hee was acting in good faith in having WEI pay for these expenses.

● **Miscellaneous Business Expenses**

The government has identified as criminal tax specific items various credit card charges totaling $121,878.87 made by Mr. Hee over an eleven (11) year period. According to the government, WEI falsely characterized these charges as

miscellaneous business expenses.    It is worth pointing out that the $121,878.87 of

specific items identified by the government represents approximately 3% of a total

of $4,296,506.74 of similar credit card items reimbursed to Mr. Hee during the

same period.    If the government puts any company's business expenses under such

a microscope, it should not be too hard to identify 3% as wrongly characterized,

even in a typical civil IRS audit.

In any event, the evidence will show that these expenses were submitted for

reimbursement by WEI in good faith.

## ● **Cash Withdrawals Made by Mr. Hee Which Were Booked as Travel and Office Expenses**

The government has identified as criminal tax specific items cash

withdrawals of $28,216.50 made by Mr. Hee over an eleven (11) year period.

According to the government, WEI falsely characterized these withdrawals travel

and office expenses.    The evidence will show that Mr. Hee used this cash for

travel and office expenses relating to WEI.

## ● **Wages Paid to Mr. Hee's Three Children**

The government has identified as criminal tax specific items various

payments made by WEI to Mr. Hee's three children totaling $722,550.39 over an

eight year period.    According to the government, WEI falsely characterized these

charges as "wages," when in truth and fact, the children did little or no work for

WEI.   The evidence will show that the three children were hired by WEI, they received Forms W-2 from WEI, and they reported these wages on their individual income tax returns.   The evidence will show that these wages were paid in good faith and that Mr. Hee's accountants were fully aware of the payment of these salaries at a time when the children were full time college students.

● **Wages Paid to Mr. Hee's Wife**

The government has identified as criminal tax specific items various payments made by WEI to Mr. Hee's wife totaling $590,201.56 over an eight year period.   According to the government, WEI falsely characterized these charges as "wages," when in truth and fact, the wife did little or no work for WEI.   The evidence will show that the wife was hired by WEI, she received Forms W-2 from WEI, and she and Mr. Hee reported these wages on their individual joint income tax returns.   The evidence will show that these wages were paid in good faith and that Mr. Hee's accountants were fully aware of the salary paid to Ms. Hee.

● **Payments of Health Care and Retirement Benefits**

The government has identified as criminal tax specific items various payments made by WEI to Mr. Hee's wife and three children totaling $443,103.64 over an eight year period.   According to the government, WEI falsely characterized these charges as "health care and retirement benefits," when in truth and fact, the wife and children did little or no work for WEI.   The evidence will

11

show that the wife and three children received these benefits as part of their

compensation from WEI like any other WEI employee.   The evidence will show

that Mr. Hee's accountants were fully aware of these benefits, which were paid to

all company employees.

● **Payments for the Santa Clara House**

The government complains that Mr. Hee caused WEI to purchase a house in

Santa Clara, California for $1,313,261.34, alleging that WEI characterized it as a

"corporate retreat/investment property."   After removing its initial allegations

regarding the tax consequences of this property from the indictment, the

government has recently disclosed a new theory regarding the tax

consequences—that the property had a monthly fair rental value of $4,500, which

should have been reported as dividend income on Mr. Hee's return.   (Doc. No.

103, Gov. Opp. 5.)   Although the government does not cite any authority for its

revised position on the tax consequences, what is clear is that this is a highly

technical tax issue, where even the government has changed its position on what

the law requires.[10]

_____

[10] The government initially alleged that the full $1.3 million purchase price of the
Santa Clara house should have been reported as income to Mr. Hee.   After Mr.
Hee filed a motion to strike that allegation from the First Superseding Indictment,
the government did not oppose that portion of Defendant's motion and did not
include that allegation in the Second Superseding Indictment.   The government is
now alleging in its opposition to Defendant's motion in limine relating to this issue

## III.   ARGUMENT AND AUTHORITIES

**A.**   **Elements of the Charges Alleged Against Mr. Hee**

(1)   **Violation of 26 U.S.C. Section 7212(a) - Omnibus Clause**

Count one (1) of the Second Superseding Indictment charges Mr. Hee with willfully violating 26 U.S.C. § 7212(a).   That statute makes it a crime for anyone to corruptly obstruct or impede, or endeavor to obstruct or impede, the due administration of the internal revenue laws.   In order to convict Mr. Hee of this charge, the government must prove each of the following elements beyond a reasonable doubt:

- First, the defendant endeavored to obstruct or impede the Internal Revenue Service's lawful functions to assess and collect income taxes, and investigate possible criminal violations of the internal revenue laws;

- Second, the defendant's effort had a reasonable tendency to obstruct or impede the due administration of the internal revenue laws; and

- Third, the defendant acted knowingly and corruptly, that is, with the intention to obtain an unlawful benefit for himself or someone else.

Section 7212(a) is a specific intent crime that requires the defendant to act

---

that the property had a monthly fair rental value of $4,500, which should have been imputed as dividend income to Mr. Hee.   (See Doc. No. 103.)

knowingly and corruptly.   To act "corruptly" means to act with the intent to secure an unlawful advantage or benefit either for oneself or for another.   A defendant must know that the advantage or benefit is unlawful.   If the defendant believes in good faith that he is acting within the law or that his actions comply with the law, he cannot be said to have acted corruptly.   Pattern Criminal Jury Instructions of the Seventh Circuit, "26 U.S.C. § 7212 Corruptly Endeavoring to Obstruct or Impede Due Administration of Internal Revenue Laws – Elements" (2012 ed.) (citing *United States v. Valenti*, 121 F.3d 327 (7th Cir. 1997)); *see also United States v. Workinger*, 90 F.3d 1409, 1414 (9th Cir. 1996) (defining "corruptly" within the context of § 7212(a)).

///

///

///

14

(2)     **Subscribing to a False Income Tax Return**

Mr. Hee is charged in Counts 2 through 7 of the Second Superseding Indictment with subscribing to a false income tax return in violation of IRC section 7206(1).

In order to establish a violation of IRC section 7206(1), the government must prove each of the following elements beyond a reasonable doubt:

- First, the defendant made and signed a return, statement, or other document that he or she knew was false as to a material matter;

- Second, the return, statement, or other document contained a written declaration that it was made under the penalties of perjury; and

- Third, in filing the false tax return, the defendant acted willfully.

IRC § 7206(1); *United States v. Bishop*, 412 U.S. 346, 350 (1973); *United States v. Pirro*, 212 F.3d 86, 89 (2d Cir. 2000); Ninth Circuit Model Criminal Jury Instruction 9.39 (2010 ed.).

As with the 7212(a) charge, these charges also are specific intent crimes, which require the government to prove beyond a reasonable doubt that Mr. Hee acted knowingly and willfully.   Willfulness is defined as a "voluntary, intentional violation of a known legal duty."   *Cheek v. United States*, 498 U.S. 192, 201 (1991); *see also United States v. Marabelles*, 724 F.2d 1374, 1379-80 (9th Cir.

15

1984) ("Willfulness requires a showing of specific wrongful intent to avoid a known legal duty.").

Willfulness is negated by a showing that a defendant acted in good faith. *See United States v. Wilson*, 887 F.2d 69, 77 (5th Cir. 1989).   If a defendant was ignorant of the law, had a good faith misunderstanding of the law, or relied in good faith on the advice of a qualified tax professional, the element of willfulness is not satisfied.   *See United States v. Trevino*, 419 F.3d 896, 901 (9th Cir. 2005); *United States v. Bishop*, 291 F.3d 1100, 1106 (9th Cir. 2002) ("Good faith reliance on a qualified accountant has long been a defense to willfulness in cases of tax fraud and evasion."); Ninth Circuit Manual of Model Criminal Jury Instructions no. 9.42 (2010 ed.).

## B.   The Government Will Be Unable to Prove These Charges Beyond a Reasonable Doubt

As set forth above, the allegations the government has made in this case may be appropriate for a civil tax dispute, but should never have formed the foundation of criminal charges.   Leaving aside the technical tax issues that are raised by the government's allegations and the question of whether the government's positions would be sustainable in a civil case, the intent element of these charges cannot be proven here.   The government is challenging a series of payments during an eleven-year period that it has accumulated through lengthy civil tax audits and

investigation.   The evidence will show that the tax reporting positions taken on the tax returns were taken in good faith and without the intent to violate the tax laws.

## IV.   CONCLUSION

This trial brief summarizes what Mr. Hee believes will be the significant disputed issues of fact and law at trial.   Mr. Hee has addressed other foreseeable procedural and evidentiary issues in separate motions, including motions *in limine*, that are currently before the Court.   Should additional legal issues arise that have not been fully addressed in this brief, Mr. Hee respectfully requests leave to file supplemental briefs.


DATED:    June 5, 2015                STEVEN TOSCHER, ESQ.
                                      KURT KAWAFUCHI, ESQ.
                                      EDWARD M. ROBBINS, JR., ESQ.

                                      HOCHMAN, SALKIN, RETTIG,
                                      TOSCHER & PEREZ, P.C.


                                      By:    /s/ Steven Toscher
                                      STEVEN TOSCHER., ESQ.

                                      Attorneys for Defendant,
                                      ALBERT S. N. HEE

6433146_1