```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                       FOR THE DISTRICT OF HAWAII

 3                                    )
     UNITED STATES OF AMERICA,         )  CR 14-00826 SOM
 4                                     )
               Plaintiff,              )  Honolulu, Hawaii
 5        vs.                          )  July 10, 2015
                                       )  9:00 A.M.
 6   ALBERT S. N. HEE,                 )
                                       )
 7             Defendant.              )
                                       )
 8   _____)

 9              TRANSCRIPT OF JURY TRIAL (DAY 11)
             BEFORE THE HONORABLE SUSAN OKI MOLLWAY
10                 UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Government:         LAWRENCE L. TONG
                                 Office of the U.S. Attorney
13                               PJKK Federal Bldg.
                                 300 Ala Moana Blvd. Ste. 6100
14                               Honolulu, HI 96850

15                               QUINN P. HARRINGTON
                                 U.S. Dept. of Justice
16                               Tax Division
                                 601 D St., N.W. Room 7029
17                               Washington, DC 20004

18   For the Defendant:          STEVEN TOSCHER
                                 KURT K. KAWAFUCHI
19                               LACEY STRACHAN
                                 Hochman salkin Rettig Toscher
20                                  & Perez
                                 9150 Wilshire Blvd., Ste. 300
21                               Beverly Hills, CA 90212

22   Official Court Reporter:    Debra Kekuna Chun, RPR, CRR
                                 United States District Court
23                               300 Ala Moana Blvd. Ste. C285
                                 Honolulu, HI 96850
24                               (808) 541-2061

25   Proceedings recorded by mechanical stenography, transcript
     produced with computer-aided transcription (CAT).
```

```
 1   FRIDAY, JULY 10, 2015                    9:00 O'CLOCK A.M.
 2              THE CLERK:  Criminal 14-826 SOM, United States of
 3   America versus Albert Hee.  This case has been called for
 4   Further Jury Trial.
 5              Counsel, please make your appearances for the record.
 6              MR. TONG:  Good morning, Your Honor.  Larry Tong and
 7   Quinn Harrington for the United States.  With us are Christina
 8   Sorely and Greg Miki of the IRS.  Good morning.
 9              THE COURT:  Good morning.
10              MR. TOSCHER:  Good morning, Your Honor.  Good
11   morning, ladies and gentlemen.  Steven Toscher for defendant
12   Albert Hee, who is present with me in court together with Lacey
13   Strachan and Kurt Kawafuchi.  Good morning.
14              THE COURT:  Good morning.  You can be seated.
15              Welcome back, ladies and gentlemen.  We have a very
16   short closing argument -- rebuttal closing by Mr. Tong.
17              MR. TONG:  Thank you, Your Honor.
18              May it please the Court.  Counsel.  Good morning,
19   ladies and gentlemen.  I will keep this short.
20              Criminal trials can be pretty interesting because
21   often they reveal different sides of a person's character.
22   People can be like mirrors on the wall.  One side is bright and
23   shiny, polished, something that you present to the world, to
24   your friends, to even priests so that they can admire you.  And
25   if you flip the mirror, hidden on the other side where nobody
```

1    sees is a dark, dusty side that is designed to remain private.

2    And that's the side that criminal trials often focus on.

3    That's the side that you've seen a lot about in this particular

4    case.

5             There's a famous saying that says "Character is

6    revealed by what you do when no one is looking," and we focused

7    in this case on what happened when no one was looking, what

8    happened during those 45-minute meetings once a month when the

9    defendant, this busy executive, went through the long list of

10   charges on his credit card statement with Nancy Henderson and

11   directed her on what was personal that he would pay for with

12   his own funds and what was business that would be subsidized

13   with business funds and American taxpayers.  And what did he do

14   during those meetings once a month?  He lied.  He lied about

15   what expenses were for.  He told her to mischaracterize them as

16   business expenses that would be subsidized and paid for by his

17   company.  He lied.

18            Probably the simplest example of that is the trip to

19   France and Switzerland.  Remember we showed you all the

20   exhibits about how the family went to France?  They did a

21   one-day visit at the factory, and then they went to Switzerland

22   to go skiing?  And what did he do when he categorized those

23   charges?  Take a look at Exhibit 4-9, page 2504.

24            "Nancy, according to schedule, personal travel should

25   be charged to CCI."

1                He lied.  Why would he do that?  Because he knew that
2    by characterizing this personal travel as a business travel
3    expense, the company would pay.  If the company paid, the
4    company's taxes went down.  If the company paid, he didn't have
5    to use his own funds, and, ultimately, he didn't report the
6    value of expenses like this on his personal income tax returns.
7                Now, Mr. Toscher yesterday said, "Well, he's too
8    busy.  Sure, I think that one was a mistake, the Switzerland
9    charge.  He's too busy.  He can't keep track of everything."
10               Well, as you go through the Exhibit 4 series, look at
11   how many of these little manini charges at Zippy's, at Aaron's
12   Dive Shop, at restaurants get all written off as if they were
13   business charges.  Every time he eats with his family, it
14   becomes ownership training.  Every time he eats with his dad,
15   it becomes incidental, necessary to the expenses of the
16   business.  Is he too busy, or is he cheating?  We submit he was
17   cheating.
18               Mr. Toscher also talked about he didn't care enough
19   or think enough about the $1300 he would save a month in his
20   children's housing expenses when he bought the Santa Clara
21   house.  Ask yourself, does that ring true?  This is a man who
22   goes through every charge, itemizes every charge for $20, $30,
23   and finds a business reason for it.
24               Mr. Toscher yesterday told you this is all a
25   misunderstanding of the law.  Well, look at that exhibit that

1  was behind me a moment ago.  Is that a misunderstanding?  He
2  understood that it was personal travel, and he deliberately
3  characterized it as something that was business.
4  Misunderstanding or willful?  We submit the latter.
5            Another example of good faith.  What about the
6  educational expenses when he first told Nancy Henderson, "Pay
7  my daughter Ho'o's MIT expenses."  Remember what he said?  He
8  said, "The reason we can do that is because we paid for Judy
9  Ushio's educational expenses."  You know that's not true.  And
10 if you conclude that that was not true, ask yourself why would
11 he tell Nancy Henderson that?  Is it because he misunderstood
12 the law, or is it because he knew full well he couldn't use his
13 company to pay those expenses and tired to find some deceitful,
14 false, face-saving way of saying "This is why we can do it."
15 When in truth and in fact, as you know from the stand, he has
16 an arrogance about that.  He just said "I feel that my company
17 should be able to educate my three people just like the
18 government educated me."  Well, he is not the American
19 government.  This is not West Point or Annapolis.  This is a
20 private company, a company subsidized by the American taxpayer.
21 Is that a mistake on his part?  Why did he lie about Judy
22 Ushio?  Because he knew it was wrong.
23           Mr. Toscher yesterday made the argument that the
24 accountants knew everything, that there was no concealment,
25 that any mistakes that the government has shown to you were the

1    fault of the accountants.  You heard that when the accountants
2    got the information from the defendant, all the expenses were
3    categorized.  They were broken down into these different
4    groupings according to business purposes, like travel, office
5    expense, and the like.  You saw on the credit cards that all of
6    that was done before anything even went into the books.
7              Now, the accountants rely upon the information given
8    to them by the defendant.  What kind of information was
9    concealed?  He never told them that Diane Doll was a personal
10   masseuse.  Never.  That only came out the first time when the
11   IRS started an audit.  Never told the accountants that.
12             He never told the accountants what the children
13   supposedly were doing in order to earn those big salaries that
14   we showed you.  Never.  Even though the accountants said they
15   have to work.
16             By the way, he never gave the accountants the credit
17   card statements month by month, which showed clearly that the
18   personal expenses incurred were being booked and deducted as if
19   they were business expenses.  In fact, he told them the exact
20   opposite.
21             Let's take a look at Exhibit 12-3, which comes from
22   the records of KMH.  Remember, they're the accounting firm that
23   came in late in the game, 2009, to prepare the Waimana
24   consolidated tax return.
25             This first page is an e-mail from Danielle Yanagihara

1    to Sang Song Sumida, who is an accountant with Sandwich Isles.

2    And you'll see that the e-mail says "These are open items for

3    the consolidated tax return."

4            And if you go to the next page, which is page 83,

5    you'll see that the question is asked:  "Are the personal

6    expenses of the shareholders/employees -- he's the only

7    shareholder -- "included as business expenses?  If yes, give us

8    a schedule."  And look at the response.  "Per Janeen -- you

9    heard she was one of the executives in the company -- "personal

10   expenses are not being run through."

11           Is that concealment?  Of course, it's concealment.

12   You sat through three weeks of testimony and saw how the

13   personal expenses were being run through the company.  And when

14   the accountants, who didn't have the records that you've seen,

15   asked are the expenses being run through the company, the

16   company said no.

17           What about the next year?  KMH did another tax

18   return.  Let's look at Exhibit 12-4, and this is KMH's records

19   at page 67.  This is another inquiry concerning a tax return

20   for, if you look at the subject line, 2011.

21           The response from the accountants, the in-house

22   people:  "To our best knowledge personal expenses of

23   shareholders/employees were not included as business expenses

24   on the financials."

25           Is that concealment?  Of course, it is.  Is that

1    good-faith misunderstanding, or is that deliberate, willful,
2    misconduct?  We suggest the later.
3            Now, during the trial and during Mr. Toscher's
4    closing argument, he tried to make much about how the defendant
5    had a mission, and everything was geared towards that mission.
6    The mission of providing telecommunication services to the
7    native Hawaiian community is a very great one.  We're not
8    disputing that.  But I ask you to ask yourself, what does the
9    mission have to do with the deduction of personal expenses as
10   if they were legitimate business expenses?  There's no
11   connection whatsoever.
12           We submit to you that what really ties it all
13   together is that it was all part of a dream and a scheme, just
14   as he was quoted in a magazine article.  The defendant dreamed
15   of a way to make his company profitable.  The defendant dreamed
16   of a way to use that company to pay his expenses.  The
17   defendant schemed and he schemed and he schemed to find ways to
18   milk it, to use his company as his personal checkbook to pay
19   for all of his expenses, ranging from personal travel, which
20   you saw he knew for 100 percent was personal and said make it
21   business, to payments on behalf of his children, to payments to
22   his wife, even though she was a homemaker at the time, to
23   payments for his college-age children who were on the mainland,
24   which, by the way, were not even revealed to the head of the
25   personnel department.  He dreamed of a way to use his company

1    to pay his expenses and to have the American taxpayer, who pays
2    their fair share, subsidize them.
3           A few comments on the charges.  We went over the
4    charges yesterday.  Count 1 is, basically, the count that
5    alleges that for about a 10-year period he corruptly endeavored
6    to impede the IRS in its calculation, assessment, and
7    collection of taxes.
8           Now, we have shown multiple different ways in which
9    he did that.  We have multiple categories of income that he,
10   basically, characterized as business deductions and didn't
11   report as personal income.  They include all of the things we
12   discussed:  Credit card receipts, the personal massages that he
13   received, the loan to shareholder, which he didn't intend to
14   repay and didn't repay until he was under the threat of the IRS
15   audit.  There's a variety of different expenses.
16          In order to find the defendant guilty of Count 1, you
17   do not have to find and agree on each of those particular
18   categories.  You just have to find that there was a corrupt
19   endeavor, something that he tried to do corruptly with the
20   intent of securing an unlawful financial benefit.  So I suggest
21   to you when you deliberate, the two that jump out immediately
22   are the credit cards and the massages, and you can start with
23   those.
24          With regard to Counts 2 through 7, each of those
25   relates to a personal income tax return filed by the defendant

1    and his wife.  His wife's not on trial.  She was a witness.
2    There is no allegation that she engaged in misconduct.  And by
3    the way, there's no allegation that the defendant -- his
4    children engaged in misconduct.  We agree they're bright
5    people.  We agree it was awkward for everyone to call them as
6    witnesses.  But he made them witnesses, not us.  He put them in
7    the middle of the controversy, not us.
8              With regard to Counts 2 through 7, you need to look
9    at each year and decide was there income that was not reported
10   and did he act knowingly and willfully, basically, in violation
11   of his known legal duty to report all income.  And we again
12   showed you various categories of income that should have been
13   reported and were not on his tax returns, and you only have to
14   agree that there was income not reported and that it was done
15   willfully by the defendant.
16             And by the way, I didn't tell you yesterday.  If you
17   want to look at the tax returns, they're in the Exhibit 1
18   series.  You may recall Kris Morgan of the IRS introduced them.
19   There's, I think, 15 or 18 of them.  My number may be quite
20   off, but you can correspond with the verdict form on the
21   particular tax return in question.
22             When it's all said and done, we trust as -- we trust
23   in the system.  We trust in you.  We ask that you go through
24   the evidence.  Reach into your tool kit and pull out the one
25   that says common sense.  And without having to do a lot of

1   fancy yoga moves, I think you're going to see exactly what this
2   is.  It's a scheme to obstruct, a scheme to impede, deliberate,
3   willful, and corrupt conduct on the part of the defendant, and
4   we ask that you find him guilty of all counts.  Thank you very
5   much.
6           THE COURT:  Okay.  It's going to be the jurors' turn
7   now to take over the case.  And I wanted to tell you a couple
8   things.
9           One, while you're in the deliberation room, you
10  cannot have your cell phones on you.  So I know you left them
11  this morning in the juror lounge, and that will be the case for
12  any day in which you are deliberating.
13          If you do not complete your deliberations today, then
14  I ask you to return on Monday to continue your deliberations,
15  starting at least by nine o'clock.  You can go on a regular
16  schedule, 9:00 to 4:00, until you do reach a verdict.  Your
17  lunch will be paid for by the court while you're deliberating.
18  You do not have to come into the courtroom to start every
19  morning.  You will be collected and taken from the juror lounge
20  to the deliberation room.
21          Okay.  Now, I know you guys have all made friends
22  among yourselves, but three of you are in our alternate pool:
23  Miss Browne, Mr. Geron, Mr. Weida.  And so since the 12 of them
24  are still here and look pretty healthy, I have to excuse the
25  alternates.

```
 1              However, it is a conditional discharge.  I'm asking
 2   that you continue to not discuss the case with anyone else.
 3   That you continue to avoid reading about this, hearing about
 4   it, paying attention to news reports about it.  Don't do
 5   research on it.  And that's because, if anything should happen
 6   to any of the 12 jurors to prevent a juror from completing
 7   deliberations, then we will need to call you folks in order to
 8   come back and replace.  That would be Miss Browne would be the
 9   first one to be called.  And the jurors would have to start all
10   over with their deliberations so that the new juror would not
11   miss -- would not have missed anything.
12              So at this time I'm going to hand to the alternates
13   these really, really valuable documents.  You can't buy these
14   documents.  You have to earn them.  This is a certificate.  I'm
15   sorry I can't give you something better, but it's a very
16   sincere certificate of appreciation.  And I thank you for the
17   attention that you've given this case, and I ask you to go to
18   the juror lounge.
19              You should leave your notebooks behind on your
20   chairs.  We'll keep those for you.  I also suggest you leave
21   those jury instructions behind you because, if you are called
22   back, we'll give those back to you at that time.  Okay?
23              So all rise for the alternates, and you can go to the
24   juror lounge.
25              (Alternate jurors excused.)
```

```
 1              THE COURT:  Okay.  Then I need the jurors to get back
 2   into their seats for just a second.
 3              Okay.  You can be seated.
 4              And let me ask the court security officer who will
 5   take charge of the jurors to step forward.
 6              Could I have you state your name, please.
 7              MR. WONG:  Toby Wong.
 8              THE COURT:  And I'm going to have you sworn.
 9              THE CLERK:  Please raise your right hand.
10        (Bailiff sworn to take charge of the jury.)
11              THE CLERK:  Thank you.
12              THE COURT:  Okay.  Ladies and gentlemen, can you
13   gather up all of your things and follow this officer.
14        (Jury excused.)
15              THE COURT:  Okay.  Can everyone be seated just for a
16   minute.
17              Counsel, you need to give your contact information to
18   the courtroom manager.  My normal procedure, if we get a
19   question from the jury, is to send it to you, if it's a written
20   question, electronically, and then we'll have a telephone
21   conference call.  This is if the defendant's presence will be
22   waived to resolve questions from the jury.  If the defendant
23   wants to be present, then we would convene in the courtroom.
24              So let me check with Mr. Toscher.
25              MR. TOSCHER:  E-mail communication and telephone
```

```
 1   conference will be fine, Your Honor.
 2              THE COURT:  So his presence would be waived.
 3              MR. TOSCHER:  Yes, Your Honor.
 4              THE COURT:  Then what would happen is we'll have a
 5   telephone conference to see if we can resolve the response to
 6   the question.  We'll put the result of the conference on the
 7   record.  I will then type up the written response and send it
 8   in to the jurors.  If it is something that requires the jurors
 9   to be returned to the courtroom, then we'll all reconvene.
10              I don't know if the jurors will complete their
11   deliberations today.  If they do not, then if they have
12   questions deliberating on Monday, we can follow the same
13   procedure.
14              If they return a verdict on Monday, Tuesday, or
15   Wednesday, then I need to check on whether Judge Kay will be
16   available to receive the verdict.  I would try to schedule that
17   for a time when I can also be on the telephone, but the judge
18   in person would be Judge Kay.  I think he is the only judge in
19   this building who may be here next week.  He's actually out
20   this week; so I need to contact him at the end of today, if we
21   don't get a verdict, to ensure that he can do this.
22              If he's not available to do it, then in the event a
23   verdict is returned Monday, Tuesday, or Wednesday, my plan
24   would be to seal the verdict, I can be back Thursday morning,
25   and we can convene in the courtroom to receive the verdict.  I
```

```
 1   doubt that's necessary.  I'm pretty sure Judge Kay can do this.
 2   But as I say, he's not available right now this week, and so I
 3   need to check with him on that, if, as the day goes on, that
 4   looks likely to be necessary.
 5             Okay.  Does either side need me to take any matter
 6   up?
 7             MR. TONG:  No, Your Honor.  Thank you.
 8             MR. TOSCHER:  Nothing, Your Honor.  Thank you.
 9             THE COURT:  Then I would like to thank the attorneys
10   in this case for all the help that they gave me.  Staff of the
11   attorneys I know also has been working really hard on both
12   sides.  I appreciate the help you gave me and the
13   professionalism that was shown.
14             And you may not feel this way, but for me, if any of
15   the attorneys has to come back for another trial, that would be
16   my pleasure to work with the attorneys again.  So thank you
17   very much.
18             MR. TOSCHER:  Thank you, Your Honor.  And the feeling
19   is the same.
20             THE COURT:  Thank you.  I would look forward -- your
21   client, it would be a different client, and the new client may
22   not want to be in trial, but I would consider it a privilege.
23   So thank you.
24             MR. TOSCHER:  Thank you, Your Honor.
25        (Court recessed at 9:30 A.M., until 2:00 P.M.)
```

```
 1          (Telephone conference call in chambers:)
 2          (Discussion off the record.)
 3          THE CLERK:  Criminal 14-826 SOM, United States of
 4   America versus Albert Hee.  This case has been called to
 5   Address Note From The Jury Number 2.
 6          Counsel, please make your appearances for the record.
 7          MR. TONG:  Good afternoon, Your Honor.  Larry Tong
 8   and Quinn Harrington for the United States.
 9          MR. TOSCHER:  Good afternoon, Your Honor.  Steven
10   Toscher, Kurt Kawafuchi, and Lacey Strachan for defendant
11   Albert Hee, whose presence is waived.
12          THE COURT:  Okay.  So we have discussed off the
13   record Note From The Jury Number 2, and we have agreed upon a
14   written response, which will read as follows:  "Counts 2 to 7
15   concern Albert S. N. Hee's Form 1040 U.S. Individual Income Tax
16   Return for each of the years indicated."
17          And I will send that into the jurors, and then I will
18   send you a written copy.  Okay?
19          MR. TONG:  Thank you, Your Honor.  The government has
20   no objection.
21          MR. TOSCHER:  Same with the defense, Your Honor.
22   Thank you.
23          THE COURT:  And also I will confirm that I did speak
24   with my colleague Judge Kay, who will be available to be
25   physically on the bench to receive a verdict if a verdict comes
```

```
 1   in next week Monday, Tuesday, or Wednesday.  I will call in and
 2   be participating by phone in that event.  If -- although, I
 3   can't imagine this to be the case -- but if the jurors for some
 4   reason haven't returned a verdict by Wednesday, I'll be back
 5   Thursday; so we could just do the normal thing then.  Okay?
 6            MR. TONG:  Works for us.  Thank you, Your Honor.
 7            THE COURT:  Okay.  Thank you.
 8            MR. TOSCHER:  Thank you, Your Honor.
 9       (Court recessed at 2:07 P.M.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    COURT REPORTER'S CERTIFICATE

 2           I, Debra Kekuna Chun, Official Court Reporter, United

 3   States District Court, District of Hawaii, do hereby certify

 4   that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 5   true, and correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the regulations

 8   of the Judicial Conference of the United States.

 9           DATED at Honolulu, Hawaii, August 14, 2015.

10

11                                    /s/ Debra Chun
                                     _____

12                                    DEBRA KEKUNA CHUN

13                                    RPR, CRR

14

15

16

17

18

19

20

21

22

23

24

25
```