FLORENCE T. NAKAKUNI #2286
United States Attorney
District of Hawaii

LAWRENCE L. TONG #3040
Chief, Fraud & Financial Crimes Section
QUINN P. HARRINGTON
Trial Attorney – Tax Division
Office of the United States Attorney
Prince Kuhio Federal Building
300 Ala Moana Blvd Ste 6100
Honolulu, HI 96850
(808) 541-2850
Email: Larry.Tong@usdoj.gov
Email: Quinn.P.Harrington@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 14-00826 SOM |
| | ) |
| Plaintiff, | ) GOVERNMENT'S RESPONSE TO |
| | ) DEFENDANT ALBERT HEE'S |
| vs. | ) MOTION FOR NEW TRIAL; |
| | ) CERTIFICATE OF SERVICE |
| ALBERT S.N. HEE, | ) |
| | ) Hearing: October 5, 2015 at 9:00 a.m. |
| Defendant. | ) before Chief Judge Susan Oki Mollway |
| | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT ALBERT HEE'S MOTION FOR NEW TRIAL

Defendant seeks a new trial based on two grounds.  First, defendant alleges a

*Tweel* violation, repeating arguments previously rejected by this Court in a pretrial

motion. Having gone through a three week trial, defendant still cannot show any affirmative misrepresentations during the civil audit, or any improper coordination between the civil and criminal branches of the IRS. Nor has defendant identified a single piece of evidence which should have been excluded as a result of any such alleged improprieties. As defendant offers nothing new, or any reason why the Court should overturn its earlier ruling, his argument is unavailing.

Second, defendant claims the Court abused its discretion by preventing witnesses from repeating his hearsay statements about their role in defendant's companies. The Court's evidentiary rulings were well within its discretion, and resulted in no prejudice. Defendant's wife and children were allowed to testify fully about what they did for the company. Defendant in turn was allowed to explain why he thought it was reasonable to pay his wife and children, even though they did no work. The Court permitted defendant to develop his defense, and no new trial is warranted.

1.  <u>Relevant Background</u>

Before trial, on March 23, 2015, defendant filed a motion to dismiss this case based on his allegation of "institutional bad faith by the government" in the civil audit. Dkt. # 50, p. 1. Defendant alleged that the Internal Revenue Manual "is evidence of a calculated effort by the IRS to instruct its agents how to deceive taxpayers." Doc. # 50-1, p. 13. In the alternative, defendant asked for an

evidentiary hearing. The Court denied that motion, noting that the IRS did not continue to collect evidence from defendant or his companies after the decision to write the fraud referral was made. Doc. # 81, p. 16.[1]

After receiving the government's exhibit list, defendant did not move to suppress any of the government's trial exhibits. Nor did defendant object at trial to the admission of any of those exhibits on grounds that they had been obtained as a result of a *Tweel* violation.

At trial, the government objected to questions asked of some witnesses about their understanding of their role in defendant's company.  The questions were designed to elicit hearsay statements made by defendant about why those witnesses were being paid.  The Court sustained many of the objections on hearsay grounds, and did not allow the witnesses to repeat defendant's out of court explanations. The Court allowed the witnesses to testify fully about what they did for defendant's company.  Defendant was also allowed to explain his vision for the company, the need for his children to carry it forward, and why he thought it was reasonable to pay the children even while they were attending school or working on the mainland.  Defendant offered some corroborative testimony from Torkel Patterson about what his wife and children did, why it was important to the

---

[1] The government incorporates all of the arguments set forth in its April 3, 2015 memorandum filed in response to defendant's motion to dismiss. Doc. #60 and attachments.

children's professional development, and how it benefited the company. At least one defense expert was also allowed to testify about the importance of succession planning in closely held corporations, and to opine that the payments made to defendant's family were reasonable. Defendant thus was permitted to present ample evidence supporting his theory of defense. The only thing that the Court precluded was the repetition of defendant's out of court statements of the reasons why he put the children on payroll, something the defendant ultimately testified about. Defendant cannot show that the Court's rulings were an abuse of discretion, much less that they resulted in any prejudice.

    2.    <u>Legal Standard</u>

Under Rule 33(a) of the Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Defendant has the burden of justifying the necessity of a new trial, *see United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989), and a "motion for new trial is directed to the discretion of the judge." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981); *accord United States v. Mack*, 362 F.3d 597, 600 (9th Cir. 2004) (reviewing the denial of a motion for new trial under Rule 33(a) under an abuse of discretion standard).

### 3. Defendant Has Not Established that Any Trial Evidence Is Excludable

There is no constitutional bar against parallel civil and criminal investigations as long as the government does not act in bad faith. *United States v. Stringer*, 535 F.3d 929, 936 (9th Cir. 2008). To suppress any evidence obtained through a civil IRS audit, the defendant must present "'clear and convincing evidence that the agents affirmatively misled [the taxpayer] as to the true nature of their investigation.'" *United States v. Bridges*, 344 F.3d 1010, 1020 (9th Cir. 2003) (quoting *United States v. Peters*, 153 F.3d 445, 451 (7th Cir. 1998)). *See also United States v. Robson*, 477 F.2d 13, 17-18 (9th Cir. 1973) ("[T]he failure of an IRS agent . . . to warn a taxpayer that an audit may have potential criminal ramifications does not render the search unreasonable.").

Defendant spends a large portion of his motion discussing various provisions of the Internal Revenue Manual ("IRM"), but the provisions of the IRM do not create additional substantive rights for a defendant. "The Internal Revenue Manual does not have the force of law and does not confer rights on taxpayers." *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006). Those circuits, other than the Ninth Circuit, that have drawn from the IRM's language about "firm indications of fraud" have noted that "courts must remember that the 'firm indications of fraud' rule is but a tool for courts to utilize in determining whether the revenue agents made an *affirmative misrepresentation* to a defendant or her representatives

5

concerning the nature of their investigation." *United States v. Peters*, 153 F.3d 445, 453 (7th Cir. 1998) (emphasis in original). The legal standard in the Ninth Circuit, and elsewhere, is whether the IRS made an affirmative misrepresentation and, if so, whether any evidence collected after such a statement must be suppressed.

      a.    *There Were No Affirmative Misrepresentations*

Defendant has not identified any affirmative misrepresentations by the IRS. The only specific statement upon which defendant relies is a series of miscommunications in August 2009 between defendant's accountants over whether the revenue agent used the word "fraud." *See* Doc. 198-1, p. 28 (under heading "The IRS Affirmatively Misled the POAs"). Defendant relied on this same series of conversations in his previous motion. *See* Doc. # 50-1, p. 10; Doc. # 81, p. 5. Taking the declarations submitted as true, the revenue agent told Ms. Yanagihara that some of defendant's conduct "could have been 'intentional.'" Doc. #198-5, ¶ 8. Ms. Yanagihara told this to Alan Yee who then asked an IRS manager whether the revenue agent "said the taxpayer had committed fraud." Doc. # 198-6, ¶10. In that conversation, Alan Yee apparently agreed that the word "fraud" was not used by the IRS but understood that "things did not look good" and that the matter was still a civil audit as of mid-August, 2009. Doc. # 198-6, ¶¶ 11-12. As noted in the Court's prior order, on September 30, 2009, a little over a month later, the revenue agent was instructed by the fraud technical advisor to prepare the fraud

6

referral and ceased the civil investigation into defendant and his companies. Doc. # 81, p. 6.

Nothing in the web of conversations between Mr. Yee, his subordinates, and the IRS establishes an affirmative representation by the IRS. The revenue agent's statement that "things did not look good" was accurate, as was the statement that the investigation was still civil in nature as of mid-August 2009. The revenue agent did not begin preparation of the fraud referral report until September 30, 2009. As noted in previously filed declarations, IRS civil did not receive instructions or otherwise interact with IRS criminal until after the referral was made on October 22, 2009. Doc. # 60-1; Doc. # 60-3. Defendant's various assumptions about the internal motivations of the revenue agent are not sufficient to establish that defendant or his various accountants and attorneys were misled or that the IRS made affirmative misrepresentations

      b.    *Defendant Does Not Identify Any Evidence to Suppress*

Perhaps more importantly, defendant has not identified any evidence that should have been suppressed. This is especially important in the context of a motion for a new trial. By failing to identify any trial exhibits or any testimony to suppress, there is no showing that any part of the trial was improper or that there is any other basis for ordering a new trial.

The only specifics provided by defendant are vague references to faxes sent by KMH in August of 2009. Doc. # 198-1, p. 32. Of course, as defendant is aware, those documents were not exhibits used trial. As noted in numerous motions and hearings before trial, defendant's counsel, namely Kurt Kawafuchi, represented defendant and his companies since at least 2010. Doc. # 28-1, p. 2. In doing so, Mr. Kawafuchi accepted service of subpoenas for business records and produced responses to those subpoenas. Doc. # 28-1, p. 2. As defendant and his counsel are aware, nearly every exhibit at trial was produced by defense counsel during the investigation.[2] Specifically, all of the records of defendant's companies, including the credit card receipts and memorandums written by defendant providing false business purposes for his family trips, were produced by defense counsel during the grand jury investigation.

Perhaps for this reason, defendant did not file a motion to suppress any of the government's trial exhibits before trial in accordance with Fed. R. Crim. P. 12(b)(3). Similarly, during trial, defendant did not move to exclude any exhibits on the grounds raised in the present motion. Now, defendant again fails to identify any exhibits that should have been suppressed.

---

[2] The only exhibit from the civil audit used at trial was Trial Exhibit 8-2, a 2002 Form 1099 issued by defendant's company to his personal masseuse Diane Doll. *See* Doc. #64-4, p. 8 (identifying IRS_CRYS as "Revenue Agent Crystal C records"). Defendant did not contest that defendant caused his business to pay Diane Doll for his personal massages.

8

By failing to do so, defendant has made no showing that any exhibits were improperly admitted or that any evidence improperly tainted the trial. Defendant's effort to throw out a jury's verdict based on unfounded speculation and unspecific allegations of improper evidence does not serve the interests of justice. As such, a new trial is not warranted.

    c.    *An Evidentiary Hearing Is Unnecessary*

Finally as alternative relief, defendant requests an evidentiary hearing. This Court previously noted that defendant's first motion "simply fail[ed] to allege 'facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.'" Doc. #81 at 15 (quoting *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000)). Defendant has done no more here. Moreover, his request for a post-trial evidentiary hearing is remarkable, given that he had three weeks of testimony to develop some theory about why the IRS committed misconduct.  Indeed, defendant called numerous accountants who testified about their dealings with the IRS.  Defendant nonetheless still cannot show that any affirmative misrepresentations were made, identified any evidence obtained as a result of improper conduct, or pointed to any disputed facts that need to be resolved.

### 4. The Court's Evidentiary Rulings Were Proper And Non-Prejudicial

To justify a new trial based on evidentiary errors, a defendant must show that the claimed error resulted in a miscarriage of justice by proving that the error was substantial, not harmless, and affected the defendant's substantial rights. *See United States v. Walker*, 899 F. Supp. 14, 15 (D.D.C. 1995); *United States v. Young*, No. 3:08-CR-0120-LRH-VPC, 2011 WL 3585511, at *6 (D. Nev. Aug. 15, 2011). Evidentiary rulings are reviewed under an abuse of discretion standard. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

Defendant argues that witnesses should have been allowed to testify to defendant's out-of-court statements to prove defendant's good faith belief and misunderstanding of the tax laws. Defendant's posture in this motion contradicts his proffer of the evidence at trial. Defendant made it clear that he sought admission of the statements to prove the *witness's* state of mind, not the defendant's state of mind: "But just for the record, Your Honor, it's offered for [Adrianne Hee's] understanding and state of mind." Doc. # 198-16, p. 5-6.

Defendant now argues that the testimony should have been admissible because it was not offered for the truth of the matter asserted. Defendant argues that the Court should have admitted Mr. Hee's out-of-court statements that "Mr. Hee was paying these salaries to his wife and children because of their roles at Waimana" to prove defendant's good faith belief. Doc. # 198-1, p. 39.

10

The Ninth Circuit has limited such testimony: "[T]he limiting language of Rule 803(3) bars "'statements as to why [the declarant] held the particular state of mind, or what he might have believed that would have induced the state of mind.'" *Wagner v. County of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013) (quoting *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987)). *See also United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980) (quoted and adopted by Ninth Circuit in *Emmert*). Defendant attempted to elicit defendant's out-of-court statements that formed the *basis* of his purported belief. Defendant sought out-of-court statements about the operation of the business and the plan of the business. Such out-of-court statements were inadmissible. *Cf. Wagner*, 747 F.3d at 1052.

Defendant also contends that witnesses should have been allowed to testify about their roles and responsibilities at the companies. But the Court allowed witnesses to give such testimony. For example, when defense counsel asked Adrianne Hee to explain what "types of Waimana or SIC business activities you were engaged in," she responded without objection, explaining that she went to a few meetings. Doc. # 198-16, p. 6. When recalled in the defense case, Ms. Hee further testified in detail about trips she took with her father to attend meetings while she was a student. (July 1, 2015 PM, Testimony of A. Hee, 50:19-61:11).

Other witnesses provided similar testimony about their role and activities within the company. Wendy Hee discussed in depth her duties and role at

11

defendant's companies and what she did on the trips to France and Tahiti. (July 7, 2015 PM, Testimony of W. Hee, 40:9-21; 49:13-51:5; 54:9-64:7). Breanne Hee similarly discussed her duties and the trips to France, Tahiti, and Disneyworld. Specifically, Breanne Hee testified that when she was attending Santa Clara and receiving a salary, she was "learning about the company so when I come back and work there it was also being educated and having discussions with my father" and that she "attended several meetings" and "sat in on some of the conference calls he had if I was home." (July 8, 2015 AM, Testimony of B. Hee, 46:1-7). Charlton Hee discussed his responsibilities while defendant's company paid him a salary during his attendance at Santa Clara. (June 26, 2015 AM, Testimony of Charlton Hee, 33:11-36:15).  Robert Kihune also testified about the children's participation in management meetings at which the company's operations were discussed.

    Put simply, the jury heard ample testimony from defendant's wife and family members about their work for defendant and his companies. Finally, defendant claims that the Court's evidentiary rulings burdened his Fifth Amendment not to testify. The Fifth Amendment does not render the rules of hearsay inapplicable, and the authority upon which defendant relies concerns jury instructions.

5.   Conclusion

Defendant is understandably upset that the jury discredited his explanations and found him guilty.  But there was no *Tweel* violation resulting in the use of evidence improperly obtained by the IRS.  Nor did the Court abuse its discretion in the handling of evidence, or cause any prejudice to defendant's theory of defense.  The interests of justice would not be served by disregarding the jury's verdict. The government requests that the Court deny Defendant's motion.

DATED:  September 14th, 2015, Washington, D.C.

           FLORENCE T. NAKAKUNI
           United States Attorney
           District of Hawaii


           /s/ Quinn P. Harrington
           LAWRENCE L. TONG
           Chief, Fraud & Financial Crimes Section
           QUINN P. HARRINGTON
           Trial Attorney - Tax Division

           Attorneys for Plaintiff
           UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the dates and by the methods of service noted below, the true and correct copy of the foregoing was served on the following at his last known address:

Served electronically through CM/ECF:

| | |
|---|---|
| STEVEN TOSCHER, ESQ.<br>toscher@taxlitigator.com | MICHAEL PURPURA, ESQ.<br>mpurpura@carlsmith.com |
| EDWARD M. ROBBINS JR., ESQ.<br>Edr@taxlitigator.com | ERIKA L. T. AMATORE, ESQ.<br>elewis@carlsmith.com |
| KURT KAWAFUCHI, ESQ.<br>kawafuchi@taxlitigator.com | ADDISON D. BONNER, ESQ.<br>adb@hosodalaw.com |
| LACEY STRACHAN, ESQ.<br>strachan@taxlitigator.com | LYLE S. HOSODA, ESQ.<br>lsh@hosodalaw.com |

Attorneys for Defendant
ALBERT HEE

DATED: September 14, 2015, in Washington, D.C.

/s/ Quinn P. Harrington
Trial Attorney
U.S. Department of Justice
Tax Division

14