IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 14-00826 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING (1) MOTION TO |
| | ) | DISMISS FOR GRAND JURY ABUSE |
| vs. | ) | AND TO UNSEAL GRAND JURY |
| | ) | TRANSCRIPTS AND MATERIALS, (2) |
| | ) | MOTION FOR JUDGMENT OF |
| ALBERT HEE, | ) | ACQUITTAL, (3) RENEWED MOTION |
| | ) | TO DISMISS, AND (4) MOTION FOR |
| Defendant. | ) | NEW TRIAL |
| | ) | |

**ORDER DENYING (1) MOTION TO DISMISS FOR GRAND JURY ABUSE AND TO UNSEAL GRAND JURY TRANSCRIPTS AND MATERIALS, (2) MOTION FOR JUDGMENT OF ACQUITTAL, (3) RENEWED MOTION TO DISMISS, AND (4) MOTION FOR NEW TRIAL**

**I.      INTRODUCTION.**

After an eleven-day trial, the jury convicted Defendant Albert Hee of having corruptly interfered with the administration of Internal Revenue Service laws in violation of 26 U.S.C. § 7212(a) and of six counts of having filed false tax returns in violation of 26 U.S.C. § 7206(1).

The evidence at trial established that Hee had characterized millions of dollars in personal expenses as business expenses incurred by his company, Waimana Enterprises, Inc.

In the middle of trial, on July 6, 2015, Hee filed a Motion to Dismiss for Grand Jury Abuse and to Unseal Grand Jury Transcripts and Materials, arguing that the indictment should be

dismissed, and his conviction overturned, because the Government had allegedly given three erroneous instructions to the grand jury.  Hee also asked for more grand jury transcripts and materials, saying that the alleged errors he had discovered suggested the existence of other errors in grand jury proceedings.  See ECF No. 150.  That motion is denied.  Hee's conviction, which required proof beyond a reasonable doubt, renders it unnecessary to examine whether the indictment, which required only probable cause, issued properly.  Even if the court were to review the alleged grand jury abuse under the standard applicable when a verdict has not yet been reached, Hee's motion would still fail.  Hee does not show that the alleged errors substantially influenced the grand jury's decision to indict, or that there is grave doubt that the decision to indict was free from the substantial influence of the alleged errors.  Moreover, Hee fails to establish that he is entitled to additional grand jury materials.

On August 26, 2015, Hee filed a Motion for Judgment of Acquittal, arguing that there was insufficient evidence to establish criminal intent.  See ECF No. 199.  Because the jury could have inferred that intent from the evidence, the Motion for Judgement of Acquittal is denied.

Also before the court is Hee's Renewed Motion to Dismiss Case With Prejudice, filed on July 13, 2015, while the

2

jury was deliberating, and Hee's Motion for New Trial, filed on
August 26, 2015, after the verdict was returned.  See ECF Nos.
166, 198.  Both motions argue that an IRS agent improperly
conducted a secret criminal investigation under the guise of a
civil audit.  In pretrial proceedings, this court declined to
dismiss the charges based on this very argument.  See ECF No. 81.
To the extent Hee seeks reconsideration of the court's earlier
order, the motions are denied.  To the extent Hee seeks a new
trial based on evidentiary rulings at trial, Hee fails to show a
new trial is required in the interest of justice.

II.      **HEE'S MOTION TO DISMISS FOR GRAND JURY ABUSE AND TO
         UNSEAL GRAND JURY TRANSCRIPTS AND MATERIALS IS DENIED.**

         Hee argues that the charges should be dismissed because
the Government allegedly provided the grand jury with erroneous
instructions regarding three issues:  1) the tax treatment of a
Board of Water Supply lease; 2) the handling of the cost of a
Santa Clara residence; and 3) the validity of a "loan to
shareholder" not evidenced by a promissory note.  See ECF No.
150-1, PageID #s 1355-56.

         Hee also seeks additional grand jury transcripts and
materials because the allegedly erroneous instructions "strongly
suggest[] additional unknown erroneous instructions, currently
hidden by the Grand Jury secrecy rules."  Id., PageID # 1356.

Three indictments were filed in this case.  The first indictment, filed on September 17, 2014, charged Hee with one count of willfully filing a false tax return in violation of 26 U.S.C. § 7206.  See ECF No. 1.

The Superseding Indictment, filed on December 17, 2014, added five more counts for the filing of false tax returns, and one count alleging corrupt interference with the administration of Internal Revenue Service laws in violation of 26 U.S.C. § 7212(a).  See ECF No. 14.  The Superseding Indictment also introduced allegations that Hee had failed to properly report Waimana Enterprises, Inc.'s payment of the purchase price of a Santa Clara home as personal income, and that he had falsely declared $718,559.09 of payments by Waimana, which is owned entirely by Hee, for his children's college tuition and expenses as "loans to shareholder."  Id., PageID # 48.  Hee filed a motion to strike these allegations, but the court denied that motion in pretrial proceedings.  See ECF No. 81.

In the Second Superseding Indictment, filed on March 25, 2015, the Government omitted the allegation that the entire purchase price of the Santa Clara house should be deemed income to Hee.  See ECF No. 56.  Instead, the indictment alleged that Hee's use of Waimana to purchase the house was part of Hee's interference with the IRS's computation of his income and tax liability.  See id., PageID # 393.  Although Hee identified the

house as an investment by Waimana, the trial evidence established that Hee's son and daughter lived in the house while attending the University of Santa Clara, which was within skateboarding distance of the house.  Hee's children rented out rooms in the house to classmates without depositing the rent proceeds in Waimana's account.

The Second Superseding Indictment included new allegations that Hee had caused Waimana to claim false business expenses in connection with a Board of Water Supply lease.  See id., PageID #s 393-94.  Hee filed a motion to strike the Board of Water Supply allegations.  See ECF No. 65.  This motion was denied.  See ECF No. 81.  Notwithstanding the denial, the Government announced right before trial commenced that it would not pursue the Board of Water Supply allegations.  See ECF No. 135.  The college tuition and expenses allegations remained unchanged.

Hee's trial commenced on June 23, 2015.  See ECF Nos. 178-82, 189-95.  On July 6, 2015, as the trial was nearing conclusion, Hee submitted his motion concerning grand jury issues.  ECF No. 150.  The court discussed with the attorneys the scheduling of briefing and a hearing on the motion.  See ECF No. 191.  Attorneys for the Government and for Hee noted that the motion could be heard following trial, and Hee's attorney expressly stated that the trial did not need to be interrupted

for a decision on the motion.  Id., PageID # 2830.  Briefing and

a hearing were therefore scheduled for dates following the

completion of the trial.  Id., PageID # 2831.  With the motion

awaiting further briefing, the petit jury returned a verdict of

guilty beyond a reasonable doubt on all counts.  See ECF No. 196.

### A.   This Court Denies the Motion in Light of Hee's Conviction.

Hee's motion is controlled by United States v.

Mechanik, 475 U.S. 66 (1986), and United States v. Navarro, 608

F.3d 529 (9th Cir. 2010).

In Mechanik, the Court held that any error in a grand

jury proceeding was rendered harmless by the petit jury's verdict

of guilty.  475 U.S. at 67.  The Court noted, "[T]he petit jury's

verdict of guilty beyond a reasonable doubt demonstrates a

fortiori that there was probable cause to charge the defendants

with the offenses for which they were convicted."  Id.

The Ninth Circuit applied the Mechanik standard to the

very situation at issue here.  In Navarro, the Ninth Circuit said

that when "the error is brought to the district court's attention

before the verdict, but the court did not rule on the motion to

dismiss until after the jury returned a verdict . . . the

conviction establishes that the error was harmless."  608 F.3d at

539; accord United States v. Hunter, 445 F. App'x 998, 1003 (9th

Cir. 2011) ("Even if error in the grand jury proceedings (other

than the structural errors [of race and gender discrimination])

6

was brought to the attention of the district court prior to
trial, where the motion was denied and a guilty verdict was
returned, the error is rendered harmless by the verdict."
(brackets in the original)); United States v. Harmon, No.
08-CR-00938-LHK, 2014 WL 2465504, at *2 (N.D. Cal. May 30, 2014)
("A grand jury is convened in order to determine whether probable
cause exists to force a criminal defendant to suffer the hardship
of a criminal trial.  Because a trial jury is tasked with
determining actual guilt, once a trial jury has found guilt
beyond a reasonable doubt, it is presumed that any error during
the grand jury proceedings was harmless beyond a reasonable
doubt.").

A conviction does not, however, preclude dismissal of
an indictment if there has been a "structural error" in
proceedings.  Navarro, 608 F.3d at 540.  Race or sex
discrimination in jury selection, for example, constitutes a
structural error requiring dismissal of an indictment even after
conviction.  See id. at 539 (citing Ballard v. United States, 329
U.S. 187, 193 (1946), and United States v. Vasquez-Landaver, 527
F.3d 798, 802 (9th Cir. 2008)).

Although Hee brought his motion prior to conviction,
the petit jury's verdict of guilty renders immaterial any alleged
error in grand jury proceedings under Mechanik and Navarro.  Nor

is the court persuaded that any of the errors alleged by Hee was
structural.

Hee contends that the procedural history of this case
precludes application of Mechanik.  Noting that he brought the
motion prior to conviction, Hee characterizes the court as having
chosen to decide the motion post-trial based on the Government's
representation that, "if the Defendant is convicted, 'the Court
can consider the motion as a standalone request for relief
independent of anything that the jury had done.'"  ECF No. 207,
PageID # 3801.  According to Hee, this statement by the
Government requires this court to reject the Mechanik standard in
favor of the Bank of Nova Scotia standard, which applies to a
motion to dismiss the indictment when a verdict has not yet been
reached.  See id., PageID # 3802.

In Navarro, the Ninth Circuit noted that when a motion
to dismiss the indictment for grand jury abuse is decided before
the jury renders a guilty verdict, "the district judge should
apply the Bank of Nova Scotia standard" when reviewing a motion
to dismiss the indictment.  608 F.3d at 539.  Bank of Nova Scotia
v. United States, 487 U.S. 250 (1988), provides that dismissal of
the indictment "is appropriate only if it is established that the
violation substantially influenced the grand jury's decision to
indict or if there is grave doubt that the decision to indict was

free from the substantial influence of such violations."
Navarro, 608 F.3d at 539.

Hee suggests that the Government, the court, or both,
agreed that the motion would not be decided under the Mechanik
standard even if the jury rendered a guilty verdict.  ECF No.
207, PageID # 3802.  The record is not as clear as Hee claims.
Upon receiving Hee's motion, the court raised the issue of the
briefing schedule with both sides.  See ECF No. 207.  The court
assumed that Hee would not rest his case until the motion was
decided and expressed concern about the interruption of the
trial.  See ECF No. 191, PageID #s 2825-27.  The Government
proposed that Hee's motion could be decided without regard to any
verdict to avoid disrupting the trial.  Id., PageID # 2828.

This court is uncertain that the Government's statement
was intended to render Mechanik and Navarro inapplicable to
alleged errors in grand jury proceedings.  Possibly, the
Government was instead referring to the portion of Hee's motion
seeking additional grand jury materials, which, if ordered
produced post-verdict, could still have led to dismissal if they
revealed structural errors.  This latter possibility would be
consistent with Hee's counsel's statements that "we do want the
transcripts," but that Hee's mid-trial motion would not affect
the presentation of the defense case, that Hee was not asking to

9

stop the trial, and that the defense was going on "independent tracks." ECF No. 191, PageID # 2830.

The court cannot discern whether either party had the Mechanik issue expressly in mind in the midst of trial. For all this court knows, the Government and Hee may have been unfamiliar with the effect of a conviction on Hee's motion and may not have been addressing a waiver of Mechanik. Certainly the court, unaware of Mechanik or Navarro during Hee's trial, was not, in setting a post-trial hearing on Hee's motion, intending to suspend the applicability of Mechanik and Navarro. Under these circumstances, this court applies Mechanik and Navarro here.

Hee argues that, even if there was no agreement to disregard the verdict, there was a structural error such that his conviction does not preclude dismissal. ECF No. 207, PageID #s 3807-08. Hee's position is that "erroneous instructions to the grand jury on the substantive law result in a similar type of fundamental error" to racial discrimination. ECF No. 207, PageID #s 3807-08. In Mechanik, however, the Court noted that the "considerations [for reversing a conviction based on structural error] have little force outside the context of racial discrimination in the composition of the grand jury." Mechanik, 475 U.S. at 70 n.1. Hee does not explain why allegedly erroneous instructions as to substantive tax law are equivalent to race

10

discrimination in the composition of a grand jury.  He simply asserts that both are "fundamental errors."

Hee attempts to distinguish Navarro, as well as the Ninth Circuit's earlier decision in Guam v. Muna, 999 F.2d 397 (9th Cir. 1993), noting that both cases "related to the omission of evidence presented to the jury."  ECF No. 207, PageID # 3805. In fact, Navarro involved the alleged giving of an erroneous instruction to the grand jury.  See 608 F.3d at 536.  While Hee notes that the instruction complained of here relates to an error regarding the substantive law, unlike the instruction in Navarro relating to a prosecutor's duty, ECF No. 207, PageID # 3805, that distinction does not affect the court's analysis absent a structural error.

Hee's invocation of constitutional terms of art is unavailing in establishing structural error.  As noted in Navarro, "That the grand jury is a constitutionally required part of the structure of federal criminal justice does not bear on whether the error is 'structural,' since 'structural error' is a term of art for error requiring reversal regardless of whether it is prejudicial or harmless, not for error in some way affecting the structure of criminal proceedings."  Id. at 538.  That is, "all harmless errors including constitutional errors must be disregarded on appeal," unless the errors are structural.  Id. (citing Neder v. United States, 527 U.S. 1 (1999)).  Because Hee

11

does not establish that the alleged errors are structural, his conviction precludes dismissal.

### B.   Even Applying the Bank of Nova Scotia Standard, the Court Denies Hee's Motion.

Recognizing the lack of absolute clarity on the issue of whether the Government offered to suspend Mechanik and Navarro, this court turns to whether, if the court applied the Bank of Nova Scotia standard, Hee's motion would succeed.  This court concludes that the errors Hee alleges would not be grounds to dismiss the charges under Bank of Nova Scotia.

Bank of Nova Scotia provides that "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations."  487 U.S. at 255 (quoting Mechanik, 475 U.S. at 78 (O'Connor, J., concurring)); see also United States v. Harmon, No. 08-CR-00938-LHK, 2014 WL 2465504, at *2 (N.D. Cal. May 30, 2014).

Under Navarro, an erroneous instruction to the grand jury is harmless if it does not reach the petit jury.  608 F.3d at 539 (holding that the erroneous instruction to the jury was harmless because "[t]he petit jury never heard the erroneous instruction and could not have been affected by it").  Two of the three matters Hee complains about could not have affected the petit jury.

12

As the Government notes, the Second Superseding
Indictment eliminated the assertion that the purchase price of
the Santa Clara property should have been deemed income on Hee's
individual tax return.  See ECF No. 13, ECF No. 55; ECF No. 202,
PageID #s 3753-54.  Nor did the Government pursue at trial the
allegation in the Second Superseding Indictment that the tax
treatment of the lease for the abandoned water mains was
improper.  Hee concedes that the Government did not pursue these
allegations, and that the petit jury never saw any indictment
with these allegations.  See ECF No. 150-1, PageID #s 1353-54;
ECF Nos. 178-82, 189-96.  No alleged error with regard to these
two matters can support dismissal.

With regard to the third purported error, Hee contends
that the grand jury was improperly instructed that a "loan to
shareholder" could only be deemed valid if evidenced by a
promissory note.  ECF No. 150-1, PageID # 1354.  Notably,
however, the supposed misstatement was made by a grand juror, not
by the Government.  The grand juror said to Hee's accountant,
"And to date, there's still no--no documentation about the
personal loan that sounds like it's legally required--."  ECF No.
150-1, PageID # 1354.  Hee argues that "a grand juror's
understanding of the relevant law should be presumed to be
attributed to the prosecutor."  ECF No. 207, PageID # 3807.
Hee's argument is unpersuasive.

First, a prosecutor's failure to correct a grand
juror's mistaken understanding of the law does not, by itself,
entitle a defendant to dismissal of an indictment.  See, e.g.,
United States v. Orjuela, 809 F. Supp. 193, 199-200 (E.D.N.Y.
1992) (denying defendant's motion to dismiss his indictment post-
conviction based on prosecutor's failure to reconvene grand jury
to correct misleading and inaccurate information that supported
indictment).  Cf. United States v. Page, 808 F.2d 723, 727 (10th
Cir. 1987) (declining "the extraordinary remedy of dismissal of
the indictment" because "the prosecutor's failure to correct
[erroneous witness] testimony was, at worst, an oversight").
Bank of Nova Scotia makes clear the need for a defendant to show
prejudice.  An alleged error must have "substantially influenced
the grand jury's decision to indict" or must create "'grave
doubt' that the decision to indict was free from substantial
influence of such violations."  487 U.S. at 255.  Hee fails to
make either showing.

In fact, the record suggests that the decision to
indict was not substantially influenced by the above grand juror
statement.  The above statement was followed by another grand
juror question, "So what's the threshold, then, that would
approach it to say, hey, you--you're potentially doing something
illegal here and--."  ECF No. 150-3, PageID # 1383.  The witness
responded, "No.  But essentially, it would be what is the

consequence of not having the loan documentation?  Not having the

loan documentation, we said essentially, if the Internal Revenue

Service were to come in, they may disallow the loan payments, and

they may have you record it as income."  ECF No. 150-3, PageID #

1383.  Prior to Hee's indictment, the witness appears to have

thus corrected any misunderstanding the grand juror may have had

that a loan is illegal without a promissory note.

Hee does not show the prejudice required by Bank of

Nova Scotia.  Accordingly, even under Bank of Nova Scotia, Hee's

motion fails.

### C.   Hee Is Not Entitled to Disclosure of Grand Jury Transcripts.

Hee seeks disclosure of additional grand jury

transcripts on the ground that the matters he complains about

"strongly suggest[] additional unknown erroneous instructions,

currently hidden by the Grand Jury secrecy rules."  ECF No. 150-

1, PageID # 1356.

Grand jury proceedings are presumptively secret.  See

Fed. R. Crim. P. 6(e).  While Rule 6(e)(3)(E)(ii) of the Federal

Rules of Criminal Procedure authorizes disclosure of a grand jury

matter "at the request of a defendant who shows that a ground may

exist to dismiss the indictment because of a matter that occurred

before the grand jury," the Ninth Circuit has cautioned against

allowing "across the board fishing expeditions."  United States

v. Kim, 577 F.2d 473, 478 (9th Cir. 1978).

"A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a particularized need exists which outweighs the policy of secrecy." United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (internal quotation marks and alteration omitted). Particularized need must be based on more than mere speculation, and the burden is on the defendant to show that disclosure of grand jury transcripts is appropriate. See id. (citing Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959)).

To obtain discovery of grand jury transcripts based on prosecutorial misconduct, Hee must also show that the alleged instances of misconduct would compel dismissal of the indictment. See United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985) (rejecting a claim that a defendant showed particularized need when "[t]he claimed misconduct would not have compelled the dismissal of the first superseding indictment"). As discussed above, the matters Hee points to do not compel dismissal of the indictment. Hee's reliance on these matters in seeking "additional unknown erroneous instructions" is exactly the type of fishing expedition that the Ninth Circuit has cautioned against. Hee is not entitled to additional grand jury transcripts.

16

Hee's Motion to Dismiss for Grand Jury Abuse and to Unseal Grand Jury Transcripts and Materials is denied.

### III.   HEE'S MOTION FOR JUDGMENT OF ACQUITTAL IS DENIED.

On August 26, 2015, Hee timely filed a Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  See ECF Nos. 176, 199.  Hee argues that there was insufficient evidence to establish the requisite criminal intent for his crimes.  The court denies the motion.

Rule 29(a) of the Federal Rules of Criminal Procedure provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  In ruling on a motion for judgment of acquittal under Rule 29(a), this court views the evidence in the light most favorable to the Government, deciding whether a rational jury could have found "the essential elements of the offenses charged beyond a reasonable doubt."  United States v. Rosales, 516 F.3d 749, 751-52 (9th Cir. 2008).

Count 1 of the Second Superseding Indictment charged Hee with a violation of 26 U.S.C. § 7212(a).  See ECF No. 55, PageID #s 374, 381.  Section 7212(a) states:

> Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication)

17

obstructs or impedes, or endeavors to
obstruct or impede, the due administration of
this title, shall, upon conviction thereof,
be fined not more than $5,000, or imprisoned
not more than 3 years, or both, except that
if the offense is committed only by threats
of force, the person convicted thereof shall
be fined not more than $3,000, or imprisoned
not more than 1 year, or both.  The term
"threats of force", as used in this
subsection, means threats of bodily harm to
the officer or employee of the United States
or to a member of his family.

The jury was instructed that, to convict Hee of the

offense charged in Count 1,

the government must prove each of the three
following elements beyond a reasonable doubt:

First, the defendant endeavored to
obstruct or impede the Internal Revenue
Service's lawful functions to assess and
collect income taxes, and investigate
possible criminal violations of the internal
revenue laws; and

Second, the defendant's effort had a
reasonable tendency to obstruct or impede the
due administration of the internal revenue
laws; and

Third, the defendant acted knowingly and
corruptly.

"Corruptly" means to act with the intent
to obtain an unlawful benefit for himself or
someone else.

ECF No. 158, PageID # 1418 (copy of instruction given to jurors);

ECF No. 194, PageID #s 3375-76 (transcript of instruction read to

jurors by court).

The jury was further instructed:

18

> Whenever in any of these instructions on the law, reference is made to a requirement that the government prove that the defendant acted knowingly, an act was done knowingly if the defendant was aware of the act and did not act through ignorance, mistake, or accident. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

ECF No. 158, PageID # 1421 (copy of instruction given to jurors);

ECF No. 194, PageID #s 3376 (transcript of instruction read to jurors by court).

Counts 2 through 7 of the Second Superseding Indictment charged Hee with filing false tax returns in violation of 26 U.S.C. § 7206(1), which states,

> Any person who--
>
> (1) Declaration under penalties of perjury.--Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter
>
> . . .
>
> shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

ECF No. 55, PageID #s 382-86.

With respect to Counts 2 through 7, the jury was instructed that, to find Hee guilty of those counts,

19

the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant made and signed a tax return for the year charged that he knew contained false information as to a material matter;

Second, the return contained a written declaration that it was being signed subject to the penalties of perjury; and

Third, in filing the false tax return, the defendant acted willfully.

A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service.

ECF No. 158, PageID # 1422 (copy of instruction given to jurors);

ECF No. 194, PageID #s 3376-77 (transcript of instruction read to jurors by court).

The jury was further instructed:

In order to prove that the defendant acted "willfully," the government must prove beyond a reasonable doubt that the defendant knew federal tax law imposed a duty on him, and the defendant intentionally and voluntarily violated that duty.

Conduct that is only accidental, inadvertent, mistaken, or negligent does not constitute willful conduct.

ECF No. 158, PageID # 1423 (copy of instruction given to jurors);

ECF No. 194, PageID #s 3377 (transcript of instruction read to jurors by court).

The court told the jury that, "in reaching your decision as to the facts--it is your sworn duty to follow the law

20

I [have defined] for you."  ECF No. 158, PageID # 1405 (copy of
instruction given to jurors); ECF No. 194, PageID # 3369
(transcript of instruction read to jurors by court).  The jury
was also instructed that the evidence it considered "may be
direct or circumstantial."  ECF No. 158, PageID # 1411 (copy of
instruction given to jurors); ECF No. 194, PageID # 3372
(transcript of instruction read to jurors by court).

In his Rule 29 motion, Hee argues that the Government
failed to prove the criminal intent necessary for the
convictions.  With respect to Count 1, Hee claims that the
evidence was insufficient to demonstrate that he acted knowingly
and corruptly.  Hee says that, if he acted in good faith,
honestly believing that he complied with the law, he lacked the
requisite criminal intent.  See ECF No. 199-1, PageID #s 3717-18.
With respect to Counts 2 through 7, Hee challenges the
sufficiency of the evidence to prove he acted willfully, saying
the Government failed to prove that he acted intentionally and
voluntarily.  Id., PageID # 3718.

Hee argues that the "record is devoid of any evidence
of specific intent."  ECF No. 199-1, PageID # 3720.  After
recognizing the substantial evidence introduced at trial, Hee
claims that, because the Government failed to introduce specific
evidence that Hee knew what he did was illegal, and because the
only evidence submitted on the issue was his own testimony

21

denying the requisite criminal intent, he should have been acquitted.  But the Government was not required to introduce direct evidence of Hee's intent.  Instead, that intent could be proven through indirect or circumstantial evidence.  As the Ninth Circuit noted in United States v. Marabelles, 724 F.2d 1374, 1379 (9th Cir. 1984), "direct proof of a taxpayer's intent to evade taxes is rarely available."  "[W]illfulness may be inferred by the trier of fact from all the facts and circumstances."  Id.; see also United States v. Dearing, 504 F.3d 897, 901 (9th Cir. 2007 ("'[D]irect proof' of one's specific wrongful intent is 'rarely available.'  But willfulness may be inferred from circumstantial evidence of fraudulent intent.").  The jury had more than enough evidence from which it could have concluded that Hee had the requisite criminal intent to support a guilty verdict.

At trial, Hee admitted that payments were made by his company or benefits were received by him or his family.  He testified that he knew of his obligation to file tax returns reporting the income he had received.  Although Hee purported to explain his conduct and his alleged belief that what he did was legal, the jury was not required to take Hee at his word or to accept his explanations.  The jury was free to find Hee not credible.

For example, Hee testified that, over a ten-year
period, Waimana paid Diane Doll, a masseuse, for his massages.
Hee testified that he believed there was a business purpose
justifying those payments, namely that he had health issues that
the massages helped to alleviate, allowing him to function more
effectively as CEO of Waimana.  Hee testified that he did not
believe that he was required to report Waimana's payments for the
massages on his personal income tax returns.  ECF No. 193, PageID
#s 3214-16.  But the jury was not required to accept that
explanation.  The jury had evidence that the masseuse's charges
were listed as health "consulting" fees on Waimana's books.  The
jury could have properly determined that the payments for Hee's
massages could not properly be characterized as Waimana's
legitimate business expenses and that the "consulting"
characterization was evidence that Hee was aware of that.

Hee testified that his wife, one of his daughters, and
the daughter's boyfriend traveled to France and Switzerland
without Hee.  The trip was justified as a Waimana business
expense because the trip included a visit to a factory in France.
Hee admitted that the trip occurred during his daughter's Spring
Break, and that the boyfriend was not working for Hee's company
at the time.  ECF No. 193, PageID #s 3236-39.  The jury had
before it evidence of documentation of business travel required
of individuals who were not Hee's family members.  A reasonable

23

jury would have been justified in determining that the European trip did not involve a legitimate business purpose and was instead a personal vacation that Hee intentionally mischaracterized as a business trip.

Hee also testified about an eight-day trip to Tahiti that his wife, elder daughter, and son took without Hee. The trip was charged to one of Hee's companies. The trip was Hee's daughter's idea, and Hee told her, "Well, there's a cable landing out there that you should go inspect." Hee admitted that his family did not make plans to see the landing prior to going to Tahiti, and that they could not find it once there. ECF No. 193, PageID #s 3242-46.

Hee also testified at trial about a trip to Disney World by his children, his son-in-law, and the friend of one of his children. Hee did not himself take the trip, which was charged to Waimana. The charges included lodging and park tickets. Hee said the purpose of the trip was to see how federal funds had been used to develop Disney World. While there, the group visited an exhibit sponsored by Raytheon, a company that Waimana did business with. See, e.g., Testimony of Adrianne Hee, ECF No. 181, PageID # 2170 ("We visited a number of parks. One of them had a[n] exhibit that was put on by Raytheon."). Hee noted that, because his children were going to become the owners

of Waimana, the trip would assist them in understanding how
federal funding could be used.  ECF No. 193, PageID #s 3249-58.

Hee similarly characterized a four-day family stay at
the luxury Mauna Lani resort on the Big Island as a Waimana
stockholder's meeting, even though Hee was Waimana's only
stockholder, to discuss succession planning.  ECF No. 193, PageID
#s 3269-72, 3276-77; ECF No. 194, PageID #s 3331-32.  The jury
could have reasonably concluded that Hee knew that none of these
family trips was a legitimate business expense, rejecting Hee's
explanations as to why they were labeled as such.

Waimana paid Hee's children's college tuition,
originally calling the payments "educational expenses," but later
characterizing them as "loans to shareholder" after Hee's
accountant told Hee that Hee's children's tuition could not be
characterized as a Waimana expense.  ECF No. 193, PageID #s 3277-
79, 3283.  A reasonable jury could have concluded that Hee had no
intention of paying the "loans" back at the time they were made
and could have determined that Hee was using Waimana to pay what
he knew were his personal expenses.

Hee had Waimana pay the rent for one of his children
while the child attended college.  Id., PageID # 3284.  Later,
Hee authorized Waimana to purchase a house in Santa Clara for
$1.3 million.  Id., PageID #s 3272, 3285.  Once Waimana bought
the house, Hee had two of his children live there rent-free while

25

they were full-time students at the nearby University of Santa
Clara.  Hee's children had roommates who paid rent to them, not
to Waimana.  Id., PageID #s 3138-39.  Hee claimed that he
purchased the house so that he would have a place to stay when he
was checking on investments located seventeen to eighteen miles
away from the house.  Hee stated, "If I was worried about my
children having housing, it never entered into my thought process
or my decision process to buy that house."  Id., PageID # 3287.
Hee also had Waimana buy a Buick Enclave that his children used
while at college.  Id.  Hee testified that he thought it was
better for Waimana to buy a $1.3 million house and a $43,000 SUV,
rather than to have Hee stay in a hotel or rent a car when he
traveled to the area.  Id., PageID # 3287-88.  The jury could
have reasonably concluded that the house and car were not
legitimate business expenses and that Hee knew that.

        While his children were full-time students at college,
Hee had Waimana pay them salaries.  Id., PageID #s 3136, 3288-89.
Hee was told by his accountants that family members had to do
work to be paid.  Id., PageID # 3290.  Hee testified that
Waimana's payment of his children's tuition was allowed because
they were listed by Waimana as employees.  Id., PageID # 3292.
Although Hee claimed that his children would one day take over
the company and therefore needed to learn the ropes, the jury
could have reasonably concluded that Hee was siphoning company

funds to his own family without any legitimate business justification, and that Hee, who required other employees to actually perform services, knew this was improper.

Given the nature of the expenses and Hee's purported explanations, the jury certainly had sufficient circumstantial evidence of Hee's criminal intent to support his convictions. The evidence discussed above is only part of the extensive evidence submitted to the jury from which a reasonable jury could have concluded that Hee had the requisite criminal intent.

Hee next argues that the Government may have created juror confusion when it stated during closing argument, "we have to show that he acted willfully; in other words, that he was violating a legal duty that he knew, which he admitted he knew, to file correct tax returns. We submit that we have done that." ECF No. 194, PageID # 3429. Hee says that the Government's statement is a misstatement of what is required for an act to be "willful," because it omits a reference to the act being "intentional" and "voluntary." But Hee's argument is taken out of context. The court had already instructed the jury on the definition of "willful." Within minutes of the Government's making of the argument Hee complains about, Hee's counsel reminded the jury of that definition. See ECF No. 194, PageID # 3433. The jury is presumed to have followed this court's instruction in finding that Hee acted willfully. See United

27

States v. Heredia, 483 F.3d 913, 923 (9th Cir. 2007) (en banc)

("A jury is presumed to follow the instructions given to it,

Hovey v. Ayers, 458 F.3d 892, 913 (9th Cir. 2006), and we see no

reason to fear that juries will be less able to do so when trying

to sort out a criminal defendant's state of mind than any other

issue.").

IV.        THE COURT DECLINES TO RECONSIDER ITS PRETRIAL DENIAL OF
           HEE'S MOTION TO DISMISS.

           A.    Reconsideration Standard.

           Although the Federal Rules of Criminal Procedure do not

expressly authorize the filing of motions for reconsideration,

circuit courts, including the Ninth Circuit, have held that

motions for reconsideration may be filed in criminal cases.  See

United States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003) ("As

noted by the Second and Ninth Circuits, motions for

reconsideration may be filed in criminal cases"); United States

v. Martin, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000) ("As the

Second Circuit noted . . . , post-judgment motions for

reconsideration may be filed in criminal cases"); United States

v. Mendez, No. CR-07-00011 MMM, 2008 WL 2561962, at *1 (C.D. Cal.

June 25, 2008) (ruling on a motion seeking reconsideration of an

order denying a defendant's request that the government be

directed to provide a list of its potential witnesses at trial);

United States v. Hector, 368 F. Supp. 2d 1060, 1063 (C.D. Cal.

2005), rev'd on other grounds, 474 F.3d 1150 (9th Cir. 2007)

28

(ruling on a reconsideration motion regarding an order denying a motion to suppress).

"[M]otions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings." Mendez, 2008 WL 2561962, at *2 (citing Hector, 368 F. Supp. 2d at 1063, and Fiorelli, 337 F.3d at 286).  In ruling on motions for reconsideration in criminal cases, courts have relied on the standards governing Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure.  See id. (applying the standard governing Rule 60(b)); Hector, 368 F. Supp. 2d at 1063 (analyzing a reconsideration motion as a Rule 59(e) motion). Federal Rule of Criminal Procedure 57(b), "Procedure When There is No Controlling Law," states in relevant part, "A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."

Rule 59(e) of the Federal Rules of Civil Procedure authorizes motions to alter or amend a judgment.  Such motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment."  11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995).  A "district court enjoys considerable discretion in granting or denying" a Rule 59(e) motion.  McDowell v. Calderon, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (quoting Federal Practice and Procedure § 2810.1).  See

29

also Herbst v. Cook, 260 F.3d 1039, 1044 (9th Cir. 2001) ("denial

of a motion for reconsideration is reviewed only for an abuse of

discretion").  A Rule 59(e) motion may be granted on any of four

grounds:  (1) a manifest error of law or fact upon which the

judgment is based; (2) newly discovered or previously unavailable

evidence; (3) manifest injustice; and (4) an intervening change

in controlling law.  McDowell, 197 F.3d at 1255 n.1 (quoting

Federal Practice and Procedure § 2810.1).

         Rule 60(b) of the Federal Rules of Civil Procedure

permits relief from final judgments, orders, or proceedings.

Such a motion may be granted on any one of six grounds:

         (1) mistake, inadvertence, surprise, or
         excusable neglect;

         (2) newly discovered evidence that, with
         reasonable diligence, could not have been
         discovered in time to move for a new trial
         under Rule 59(b);

         (3) fraud (whether previously called
         intrinsic or extrinsic), misrepresentation,
         or misconduct by an opposing party;

         (4) the judgment is void;

         (5) the judgment has been satisfied, released
         or discharged; it is based on an earlier
         judgment that has been reversed or vacated;
         or applying it prospectively is no longer
         equitable; or

         (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Like motions brought under Rule 59(e),

Rule 60(b) motions are committed to the discretion of the trial

30

court.  Barber v. Hawaii, 42 F.3d 1185, 1198 (9th Cir. 1994)
("Motions for relief from judgment pursuant to Federal Rule of
Civil Procedure 60(b) are addressed to the sound discretion of
the district court.").

>           **B.   Reconsideration of This Court's Pretrial Order Is
>                  Not Warranted.**

Hee has filed two motions seeking reconsideration of
the court's pretrial order of April 27, 2015.  Both motions are
supposedly based on new evidence.  Hee calls the first motion a
"Renewed Motion to Dismiss Case With Prejudice."  ECF No. 166.
Hee calls the second motion a "Motion for New Trial."  ECF No.
198.  Both motions repeat the arguments rejected by this court
with respect to Hee's pretrial Motion to Dismiss Case With
Prejudice.  ECF Nos. 50 and 81.

In the Motion for New Trial, Hee says that, on May 15,
2015, approximately one month after the court denied his earlier
motion to dismiss, the Government produced additional documents
to Hee, including the Summary Activity Record of Crystal Carey,
ECF No. 198-13, PageID #s 3632-34, and an e-mail chain dated
August 12, 2009, id., PageID #s 3635-36; ECF No. 166-6, PageID #s
1490-91.  The documents given to Hee in May 2015 had Bates stamp
numbers beginning with "IRS CRY2."  See Decl. of Kurt Kawafuchi
¶¶ 5-6, ECF No. 198-2, PageID # 3559.  Neither of these documents
justifies reconsideration of the court's denial of Hee's earlier
motion to dismiss.

In the court's order of April 27, 2015, the court set
forth the following background:

> According to Form 1120, the "Examiner
> Officer's Activity Record," submitted by IRS
> Revenue Agent Crystal Carey on or about
> February 20, 2008, Carey was assigned and/or
> opened an investigation into Waimana
> Enterprises concerning its 2003 tax return.
> See IRS Form 1120, ECF No. 50-2, PageID #s
> 323-24.  Hee was a principal of that entity.
> See id. (listing Albert Hee as the person to
> whom mail should be addressed).

> On February 21, 2008, Carey called
> Revenue Agent Colin Chigawa to arrange a
> meeting with him because Chigawa was already
> examining the 2003 tax return for Sandwich
> Isles, another company with which Hee was
> involved.  See id., PageID # 324.

> On February 28, 2008, Carey called Hee
> and left a voicemail to schedule a "1040
> audit."  Hee promptly returned the call and
> scheduled an interview for March 26, 2008.
> Id., PageID # 324.  This interview was
> rescheduled to May 7, 2008.  See id., PageID
> # 327.

> Before the meeting scheduled for May 7,
> 2008, Carey noticed that there was a $324,684
> difference between what Sandwich Isles had
> reported as payment to Waimana Enterprises
> for services and what Waimana Enterprises had
> reported as income.  See id., PageID # 328.
> This difference turned out to stem from
> different accounting methods for reflecting
> management fees.  Id.

> On June 13, 2008, Carey began her audit
> of Waimana Enterprises' 2004 tax return.  See
> id., PageID # 330.  Carey continued this
> audit into October 2008, talking with Hee,
> Waimana Enterprises' accountants, and persons
> with powers of attorney for companies related
> to Hee.  See id., PageID #s 324-37.  On
> October 22, 2008, Carey discussed with her

32

manager, Lloyd Kamigaki, "OJI" ("On-the-Job
Instructor") Carole Wong, and the fraud
technical advisor, George Nunziata, the
possibility of referring the case from her
audit division to other personnel for
treatment as either a civil or criminal fraud
case.  The fraud technical advisor said "no,"
indicating that the information Carey
presented did not demonstrate corporate fraud
and that more facts were needed before anyone
could say that Hee might be liable for fraud.
Carey was told to consider examining Hee's
personal tax returns.  See id., PageID #s
337-38.  No fraud referral was made at that
time, and Form 11611, which would have
effected such a referral, was not filed.

On November 5, 2008, Carey visited the
office of David M. Chinaka, who apparently
was Waimana Enterprises' CPA and held a power
of attorney that allowed him to talk on
behalf of Waimana Enterprises with Carey.
Chinaka allegedly told Carey that "Mr. Hee
and he had talked about keeping receipts and
other forms of documentation, and that 'Mr.
Hee was aware of the requirements,' but
choose to 'close deals with handshakes' and
would rather 'play the odds' of being audited
rather than keep records."  See id., PageID
#[] 339.

On February 25, 2009, Form 5345-D was
submitted to request Hee's personal tax
returns for tax years 2002-2007.  See id.,
PageID # 345.

On April 8, 2009, Carey received
permission to audit Hee's personal tax
returns for 2003 through 2006.  Id., PageID
# 347.

On August 12, 2009, Jill Yamasaki was
Carey's acting manager while Lloyd Kamigaki
was away.  Yamasaki told Carey that Yamasaki
had received a call from Alan Yee, a partner
with another CPA firm Waimana Enterprises was
using who also had a power of attorney
allowing him to talk with the IRS.  Yee

33

apparently told Yamasaki that Carey had told Yee that Hee had committed fraud.  Carey disputed that statement, saying that what she had told Yee was that "things look bad, and that we should try to solve as many things at my level as possible."  Shortly thereafter, Yee conceded to Yamasaki that Carey had not referred to "fraud."  <u>See</u> <u>id.</u>, PageID #[] 356.

On September 30, 2009, Carey spoke with George Nunziata, the fraud technical advisor, and agreed to "**write up F2797**."  Form 2797 is a "Referral Report of Potential Criminal Fraud Cases."  <u>See</u> <u>id.</u>, PageID #s 360.  Later that day, Carey called and cancelled a taxpayer meeting with Danielle Yanagihara, who apparently also held a power of attorney for Waimana Enterprises.  Carey then indicated on Form 1120, **"This is best all around—I don't waste their time with questions Colin can answer, and also there is a clearly delineated line between when George said to write the case up for criminal referral and the cut-off of contact between myself and the [taxpayer]."**  <u>Id.</u>, PageID # 361.  Nothing in the record indicates that Carey continued to investigate Hee or Waimana Enterprises after the decision was made on September 30, 2009, to refer the investigation to the criminal investigations fraud unit.

On October 22, 2009, Carey finished Form 2797 and referred the matter to the criminal investigations fraud unit by submitting that form to her manager, who approved it.  <u>See</u> <u>id.</u>, PageID # 361.

On November 4, 2009, Yanagihara left a voicemail for Carey asking about the status of the audits of Waimana Enterprises and Clearcom.  Carey returned the call.  Instead of discussing the status of the audits, Carey told Yanagihara, "Hi Danielle, this is Crystal Carey from the IRS, returning your earlier phone call regarding Waimana

34

> Enterprises and Clearcom.  In regard to time
> frames, my manager has asked me to work on
> another time sensitive matter, and I will
> have to get back in contact with you at a
> later date regarding resolution of the
> Waimana and Clearcom exams." See id., PageID
> # 362.

ECF No. 81, PageID #s 623-27 (emphasis in original).

At the hearing on the original motion to dismiss, Hee conceded that, as of October 22, 2008, when Carey was told by the fraud technical advisor that a fraud case was not viable, Carey did not have sufficient indicia of fraud to warrant a criminal investigation referral.  Hee now says that, based on a sentence in the Summary Activity Record of Crystal Carey, produced to Hee in May 2015, the court should determine that sufficient indicia of fraud existed as of August 5, 2009.  In the summary, Carey wrote, "On August 5, 2009, there is e-mail from Lloyd to Colin/me stating I will be working on info for a referral to the FTA," or fraud technical advisor.  ECF No. 198-13, PageID # 3634.  But Hee had the actual e-mail of August 5, 2009, from Lloyd Kamigaki to Colin Chigawa (with a cc to Crystal Carey) before the court decided the earlier motion to dismiss.  That e-mail, attached as ECF No. 198-15, PageID # 3640, has a Bates stamp number of "IRS CRYS 000002117."  Kawafuchi's declaration indicates that the documents produced in May 2015 all had Bates stamps of "IRS CRYS2."  ECF No. 198-2, PageID # 3559.  Accordingly, the e-

mail dated August 5, 2009 is not new and was not previously unavailable evidence.

Hee cannot use Carey's summary referring to the e-mail of August 5, 2009, to support a "new evidence" argument. The actual e-mail having been available to Hee at the time of the original motion, the summary of the e-mail forms no basis for reconsideration of the court's earlier ruling. See United States v. Lopez-Cruz, 730 F.3d 803, 811-12 (9th Cir. 2013) (recognizing the district court's discretion to reconsider an order and affirming a denial of a motion for reconsideration based on a claim of new evidence that could have readily been presented at the original hearing); United States v. Nace, 561 F.2d 763, 772 (9th Cir. 1977) ("A showing of due diligence is a condition for the granting of a new trial because of newly discovered evidence.").

In any event, the e-mail of August 5, 2009, written by Lloyd Kamigaki, states only that "Crystal will be working on the info for a referral to the FTA." ECF No. 198-15, PageID # 3640. It does not state that Carey had uncovered affirmative acts of fraud; that she was "working on the info" is all it noted. Without more, the e-mail is insufficient to establish that Carey should have suspended her civil investigation or to demonstrate that Carey was secretly conducting criminal discovery using the civil audit process. In fact, the other new evidence, discussed

36

below, that Hee would have this court consider includes an e-mail
dated August 12, 2009, from Kamigaki to Carey, referring to a
"potential fraud referral." ECF No. 198-13, PageID # 3635. Put
in context, the August 2009 e-mails from Kamigaki only establish
that the IRS was considering a fraud referral, not that such a
referral had been decided on or that there were firm indicia of
fraud. As Hee has failed to demonstrate any issue entitling him
to relief, this court was not previously and is not now required
to hold an evidentiary hearing on the matter. See United States
v. Irwin, 612 F.2d 1182, 1187 (9th Cir. 1980).

Hee next relies on an e-mail chain pertaining to the
use of the word "fraud" by Carey on August 12, 2009. As noted
above, the court previously discussed that very matter:

> On August 12, 2009, Jill Yamasaki was Carey's
> acting manager while Lloyd Kamigaki was away.
> Yamasaki told Carey that Yamasaki had
> received a call from Alan Yee, a partner with
> another CPA firm Waimana Enterprises was
> using who also had a power of attorney
> allowing him to talk with the IRS. Yee
> apparently told Yamasaki that Carey had told
> Yee that Hee had committed fraud. Carey
> disputed that statement, saying that what she
> had told Yee was that "things look bad, and
> that we should try to solve as many things at
> my level as possible." Shortly thereafter,
> Yee conceded to Yamasaki that Carey had not
> referred to "fraud." See id. [ECF No. 50-2],
> PageID #[] 356.

ECF No. 81, PageID #s 625-26.

Hee says that his tax advisors were affirmatively
misled by Carey because, when Carey said to Yee that "things look

bad," she actually thought that Hee had committed fraud and was encouraging Yee to continue to help her in the civil process. Hee submits the Declaration of Alan Yee, ECF No. 198-6, on this point.  But Hee provides no explanation as to why that declaration was unavailable to him at the time of the original motion or why Hee waited until after the jury had convicted him to submit it

Hee attempts to analogize his case to United States v. Tweel, 550 F.2d 297 (5th Cir. 1977).  This court previously discussed Tweel in its order of April 27, 2015:

> Tweel was convicted of tax crimes.  The
> evidence at trial established that he had
> "laundered" his income by passing sums on to
> persons who owed little in taxes.  Id. at
> 298.  The IRS investigation into Tweel began
> in May 1969, when an IRS revenue agent
> informed Tweel and his wife that they were
> being audited.  Tweel's accountant contacted
> the revenue agent and asked whether a
> "Special Agent" was involved in the
> investigation.  The revenue agent said, "No,"
> leading the accountant to believe that the
> audit was only a civil audit.  But the
> revenue agent did not disclose that the audit
> was not routine, and was instead requested by
> the Organized Crime and Racketeering Section
> of the Justice Department, which was only
> involved in criminal investigations.  The
> accountant then provided the revenue agent
> with records concerning Tweel.  Id.
>
> On appeal, Tweel argued that his Fourth
> Amendment rights had been violated because
> his accountant had been deceived into
> providing records by the revenue agent's
> deception.  The Fifth Circuit began its
> analysis by noting that it "is a well
> established rule that a consent search is

> unreasonable under the Fourth Amendment if
> the consent was induced by the deceit,
> trickery or misrepresentation of the Internal
> Revenue Agent." Id. at 299.  Although the
> Fifth Circuit noted that a failure by a
> revenue agent to warn a taxpayer that an
> investigation may result in criminal charges
> does not amount to such deceit, trickery, or
> misrepresentation, it determined that the
> revenue agent's conduct in Tweel was a
> "sneaky deliberate deception." Id.  While
> technically correct that no "Special Agent"
> was involved, the revenue agent knew that the
> accountant was asking him whether Tweel was
> the subject of a criminal investigation by
> his question regarding "Special Agent"
> involvement.  The revenue agent's failure to
> disclose that the audit was requested by a
> government group that only did criminal
> investigations was therefore a "silent
> misrepresentation" that misled the accountant
> into providing the revenue agent with
> evidence for a criminal prosecution.
> Accordingly, any "consent" for Fourth
> Amendment purposes was achieved through
> deceit and the Fifth Circuit ruled that any
> evidence obtained as a result should have
> been suppressed.  Id. at 300.

2015 WL 1931988, *3-*4 (D. Haw. Apr. 27, 2015).  As discussed in

the court's previous order, Hee's attempt to analogize his case

to Tweel is unavailing.  Besides being too late, Hee's argument

assumes facts not before this court, namely that Carey secretly

intended to have Hee criminally prosecuted at the very time that

Yee was asking Carey whether she was conducting a criminal

investigation.

Even if the court considered Yee's untimely

declaration, the declaration states only that Yee asked Yamasaki

whether Carey had said that Hee had committed fraud and that

39

Yamasaki responded that Carey had denied using the term "fraud" and instead said she had told Yee that "things did not look good, and that the matter remained a civil audit."  See ECF No. 198-6, PageID # 3571.  The declaration does not go so far as to state, as the motion says, "Yanagihara, Yee, Yamasaki, and Carey all understood that Yee was, in essence, inquiring whether the case had become a criminal investigation."  ECF No. 198-1, PageID # 3547.

In seeking reconsideration, Hee also relies on an e-mail chain that begins with Carey's asking Kamigaki whether Carey could meet with a person named Abby to review answers Clearcom, another entity with which Hee was involved, had provided to the IRS's written initial interview questions.  ECF No. 166-6, PageID # 1490-91.  Kamigaki replied, "Crystal, Yes, have the meeting with Abby.  I think it is something we should do and it may clarify or answer questions that you may have.  At this point, I do not think it will jeopardize the potential fraud referral." Id., PageID # 1490.  Carey responded, "Lloyd, Are you sure?  Alan Yee called Jill [Yamasaki] today and said when I talked on the phone with Danielle Yanghihara [sic] yesterday, that I had accused the TP of fraud.  I hadn't, but I did say that things did not look good."  Id.  Kamigaki then sent Carey an e-mail stating, "Crystal, Do not worry about what the rep may have construed what you may have said as long as you did not accuse them of it.

Document the conversation and leave as that.  If he asks you in the future if it is 'fraud,' tell they [sic] that you are just examining the return for the correct tax liability."  Id., PageID # 1490.

This e-mail chain of August 12, 2009, is consistent with this court's earlier discussion of Carey's use of the word "fraud" on that date.  Carey had denied using the word, "fraud." Although Kamigaki referred to a "potential fraud referral," that does not mean that such a referral should have been made on that date or that the Government was secretly conducting criminal discovery at that time.  Instead, it recognizes that the Government had not decided to make such a referral as of that time.

Hee says that, on May 7, 2008, IRS agent Crystal Carey met with him and filled out a Corporate Interview Questionnaire. See ECF No. 166-2, PageID # 1461.  In Part VI, question number 18, Hee was asked about the $6,000 consulting fee paid to Diane Doll, his masseuse.  The questionnaire states that Hee responded, "You never know where you are going to get information about the competition from."  Id., PageID # 1472.  Hee claims that this is proof that Carey was conducting a secret criminal investigation on that date.  Hee contends that because he disclosed that the money went to Doll, who was his masseuse, he could not have been attempting to mislead Carey.  But whether Hee was attempting to

41

mislead Carey about the character and nature of the payments to Doll does not affect whether Hee should have been referred to the fraud technical advisor for a potential criminal fraud case at that time.

With respect to the remaining arguments raised in the motions seeking reconsideration of the court's order of April 27, 2015, Hee fails to demonstrate that the evidence is newly discovered.  Instead, Hee uses the August 2009 e-mails produced to him after the hearing as a reason to reargue the original motion to dismiss.  That reargument is unpersuasive.  While now submitting declarations to support his argument that the court should reconsider its ruling, Hee does not even suggest that these declarations were previously unavailable to him.  See Lopez-Cruz, 730 F.3d at 811-12; Nace, 561 F.2d at 772.

Hee's reiteration of previous arguments by references to other parts of exhibits submitted in connection with the original motion to dismiss is also unpersuasive.  For example, Hee notes that, in February 2009, Carey wrote in her Examining Officer's Activity Record that the six-year limitation period applicable to Hee's 2002 tax return was expiring.  See ECF No. 50-2, PageID # 345 (Bates stamp IRS CRYS 000001546).  Not only has Hee failed to show that, having had that evidence at the time of the original hearing, he has acted diligently with regard to that evidence, the argument is also unpersuasive.  At best,

42

Carey's statement indicates that Carey was considering a reference to the fraud technical advisor with respect to Hee's 2002 tax return and was aware that any reference had to be made before the limitation period ran.  Carey may have been referring to 26 U.S.C. § 6501(e), which provides for a six-year limitation period for certain tax assessments and proceedings to collect taxes in court.  A recognition of the six-year limitation period is insufficient to establish that Carey had indicia of fraud at that time.

Hee also refers to an entry on May 26, 2009, in Carey's Examining Officer's Activity Record that states:

> In the 5/26/2009 meeting . . . here at the IRS building, between myself, my manager (Lloyd Kamigaki), power of attorney Alan Yee and Deanna Awa (who signed Form 8821), Mr. Yee repeated to me at least four times: "Mr. Hee is frustrated, I wouldn't go alone [to meet with Mr. Hee], please take your manager."  The kindest interpretation is that Mr. Yee thought that Mr. Hee would be better behaved with a manager present, the worst interpretation is that Mr. Yee deemed Mr. Hee to be a threat to me.  POA reports his levels of TP [taxpayer] frustration.  Later, my manager and I discussed whether this had been a threat, and agreed that it had seemed like it.

ECF No. 50-2, PageID #s 352-53.  Again, Hee's submission of this evidence in connection with the original motion negates any reason for this court to address the matter now.  Hee now specifically refers to the entry, arguing that, under section 25.1.2.3(6)(B) of the Internal Revenue Manual, a threat to an IRS

43

agent is an indicator of fraud.  Even if the court considers this

belated argument, it is unpersuasive.

> Under section 25.1.2(1) of the manual:
>
> When indicators (badges) of fraud are
> uncovered, the compliance employee must
> clearly document the potential fraud
> indicators and initiate a discussion with the
> group manager.  If the group manager concurs
> there are indicators of fraud warranting
> fraud development, the compliance employee
> must contact the fraud technical advisor
> (FTA) assigned to that area.

See ECF No. 60-5, PageID # 460.  In other words, Hee appears to

be arguing that Carey and her manager, Kamigaki, should have

contacted the fraud technical advisor upon perceiving what may

have been a threat once they had sufficient indicators of fraud.

As Hee notes in his Motion for New Trial, IRS agents

are not required to refer a matter on a mere suspicion of fraud.

Instead, under the case relied on by Hee, United States v.

Peters, 944 F. Supp. 646, 649 (N.D. Ill. 1996), a "firm

indication" of fraud is required before a referral is mandatory.

Peters recognized that this permits the agent to "'perfect'

preliminary indications of fraud by ruling out, through an audit,

possible innocent explanations for faulty returns."  Id.  Peters

recognized the IRS agent's discretion in determining when his or

her investigation has progressed to the point that a referral can

be made that would allow an informed decision as to whether to

undertake a criminal investigation.  Id. (citing United States v.

44

Mapp, 561 F.2d 685, 690 (7th Cir. 1977)).  An IRS agent who begins to think that fraud might have occurred is not automatically or necessarily required to immediately refer the matter to a fraud technical advisor.

In a declaration, Yee says that, when he told Carey of Hee's frustrations, his intention was "to dissuade her from causing undue stress to Mr. Hee . . . because [Yee] believed that Ms. Carey would act in a less abrasive manner with her supervisor present."  ECF No. 198-6, PageID # 3571.  Yee says that he "never intended for [his] comments to be construed as a threat."  Id. Hee's own evidence thus demonstrates that no threat was intended and that the alleged threat to Carey in May 2009, combined with other facts available at that time, did not require Carey to refer the matter to the fraud technical advisor at that time. Carey had only preliminary indications of possible fraudulent activity.

This court denies Hee's motions seeking reconsideration of the court's order of April 27, 2015.

**V.      HEE'S MOTION FOR NEW TRIAL BASED ON ALLEGEDLY ERRONEOUS EVIDENTIARY RULINGS AT TRIAL IS DENIED.**

Having determined that reconsideration of this court's pretrial denial of Hee's Motion to Dismiss is unwarranted, the court turns to the portion of Hee's Motion for New Trial that asserts the court made erroneous evidentiary rulings during trial.

45

Rule 33(a) of the Federal Rules of Criminal Procedure provides:  "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  If the case was tried without a jury, the court may take additional testimony and enter a new judgment."  The burden of justifying a new trial rests with the moving party. See United States v. Endicott, 869 F.2d 452, 454 (9th Cir. 1989). A "motion for new trial is directed to the discretion of the judge."  United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981); accord United States v. Mack, 362 F.3d 597, 600 (9th Cir. 2004) (reviewing the denial of a motion for new trial under Rule 33(a) under an abuse of discretion standard).  A district court's power to grant a motion for new trial is much broader than its power to grant a motion for judgment of acquittal, United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992), as a new trial may be granted when the "interest of justice so requires," Fed. R. Crim. P. 33(a).

Hee argues that, at trial, the court improperly precluded testimony as hearsay.  The court is unpersuaded.

Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  A leading treatise on the subject states:

46

> To be considered hearsay, a statement made
> out of court must be offered in evidence to
> prove the truth of the matter it asserts.
> This part of the definition arises out of the
> factfinder's need to assess the credibility
> of the person who made a statement offered
> for its truth.  When a witness testifies in
> court, the trier can assess the witness's
> perception, narration, and memory to
> determine whether the testimony accurately
> represents the facts observed.  Concerning a
> declarant who made a statement outside the
> courtroom, however, these factors are more
> difficult to assess.  Because the safeguards
> that apply to a witness do not exist in
> regard to a declarant, an out-of-court
> statement offered for its truth is hearsay
> and is generally not admissible.

Mark S. Brodin, Joseph M. McLaughlin, Jack B. Weinstein, &

Margaret A. Berger, Weinstein's Federal Evidence § 801.11 (2d ed

2015).

Hee fails to show any error.  The gist of Hee's

complaint is that the court prevented witnesses from testifying

about their understandings of why Hee did certain things.  The

court ruled that such testimony was impermissible if the

understanding was based on something Hee had said to the witness.

See, e.g., Testimony of Adrianne Hee, ECF No. 198-16, PageID

# 3665 (sustaining hearsay objection when witness was asked,

"What was your understanding as to why you were put on salary?").

The court did not completely disallow testimony about the

witnesses' understandings.  Instead, the court indicated the

witnesses could testify about their understandings upon laying a

foundation that the understandings were based on something other than out-of-court statements by Hee.

For example, Adrianne Hee, one of Hee's daughters, was asked, "What was your understanding as to why you were put on salary?"  When the Government raised a hearsay objection, the court explained that, "to the extent that her understanding is based on what somebody else told her, I'm not going to let her answer.  If you want to lay a foundation that she had some independent way to know this, you can go ahead and do that."  ECF No. 198-16, PageID # 3666; see id., PageID # 3675 (same); see also Full Testimony of Adrianne Hee ECF No. 181, PageID # 2165 (same), 2177 (same); Testimony of Breanne "Liko" Hee (Hee's other daughter), ECF No. 193, PageID # 3136 (same); Testimony of Wendy Hee (Hee's wife), ECF No. 192, PageID # 3080-81 (sustaining hearsay/lack of foundation objection).

Hee claims that this court's rulings forced him to testify about his state of mind.  Hee says that, in sustaining objections to testimony by witnesses about their understandings, the court negated Hee's right to remain silent, as Hee had to testify himself to establish his good faith defense.  See ECF No. 198-1, PageID # 3556.  In other words, Hee is arguing that, had his family members been able to testify about their understandings, even if those understandings were based entirely on what Hee said to them, Hee would not have had to testify about

his own intentions.  This claim demonstrates that Hee was attempting to use hearsay that the court properly prohibited, as Hee was attempting to introduce evidence of purported beliefs free of any opportunity for the Government to conduct any cross-examination about whether Hee actually had those beliefs. Notably, Hee himself told the court on July 8, 2015, prior to testifying, that his decision to testify was a voluntary choice. See ECF No. 193, PageID #s 3123-24.

In sustaining hearsay objections to questions about a witness's understanding, the court expressly noted that Hee could introduce that testimony if he first laid a proper foundation as to the source of that understanding.  Hee's failure to even attempt to lay such a foundation indicates that the witnesses were actually attempting to testify about what Hee had said.

When the court refused to allow Hee's daughter to answer a question about her understanding of why she was on Waimana's payroll, it was concerned that any answer would have been tantamount to a statement that "my father told me the reason I was on salary was . . . ."  The Government would have been able to cross-examine only Hee's daughter with respect to the accuracy of her recollection, without examining Hee as to the validity of the purported reason, or as to whether Hee truly believed what he purportedly told his daughter.  This is quintessential hearsay.

Had there been a proper foundation for Hee's daughter's understanding of why she was on salary, she would have been allowed to testify that, for example, she was on salary because she worked twenty hours per week for the company, or had performed certain duties on the company's behalf.  The absence of a proper foundation was telling.

Hee appears to be making a two-pronged argument concerning the excluded testimony.

First, Hee appears to be arguing that the excluded testimony did not involve hearsay at all, because it was not offered for the truth of what Hee said.  This court thinks the statements were indeed offered for their truth.

Hee claims that the excluded testimony would have indicated that Hee thought in good faith that what he was doing was allowed by tax laws, and that the accuracy of Hee's belief is not in issue.  But what this argument by Hee ignores is that each excluded statement inherently included Hee's assertion that "I in good faith believe that . . . ."  It is this statement of good faith belief, omitted from the express statement yet clearly implicit in each statement, that was surely at issue, and the truth of whether Hee really had such a good faith belief could never be tested if such testimony were admitted.  In short, any statement implying Hee's belief was being offered for the purpose of showing Hee's purported belief.  This is undeniably a statement offered for its truth.

Second, Hee appears to be arguing that, even if the offered statements constituted hearsay, they fell under the exception to the bar on hearsay articulated in Rule 803(3) of the Federal Rules of Evidence.  Under that rule, hearsay may be admitted if it is a statement of a declarant's

> then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Fed. R. Evid. 803(3).

In sustaining the hearsay objections, this court was cognizant that Hee's family members were not being asked to testify that Hee said that it looked as if it were about to rain, or that Hee was sad.  Instead, the family members were being asked to recount what Hee claimed he believed.

Each statement that Hee says the court should have allowed contained Hee's opinion or belief.  Although state of mind evidence may be admitted, <u>see</u> Fed. R. Evid. 803(3), Hee's statements of belief were akin to statements such as "I am not doing anything illegal," which even Hee conceded at the hearing on his motion would be distinguishable from what Rule 803 would allow.  Hee was in essence stating a legal opinion that "I have a good reason for paying my nonworking children salaries."  Such self-serving justifications, if admissible under Rule 803(3), would induce individuals committing crimes to repeatedly tell those around them, "I am acting within the law."

Interestingly, while referring to the state of mind exception, Hee does not actually analyze how statements that are tantamount to declarations of innocence fall under Rule 803(3). Hee does not, for example, even attempt to fit the excluded statements under evidence of motive, intent, or plan. A court might admit a declarant's statement that "I have to keep this a secret so no one stops me from doing what I plan to do," or "I intend to cut my wife out of my will," or "I plan to leave this town." By contrast, the statements in issue in this case appear to have reflected what Hee claims were longstanding beliefs. If Hee's statements of belief that he was acting within the law are not admissible under Rule 803(3), Hee's evidentiary argument fails because Hee does not identify any other hearsay exception that his statements fall under.

Although the purported statements were indeed hearsay and properly excluded, the court notes that, even if they were improperly excluded, that assumed error did not affect the trial outcome. Not only did the court invite Hee to lay a proper foundation for the testimony, the evidence of Hee's guilt introduced at trial was overwhelming. Hee was not prejudiced by the court's evidentiary rulings such that the interest of justice requires a new trial. To the extent Hee's Motion for New Trial is based on the court's evidentiary rulings, the motion is denied.

**VI.        CONCLUSION.**

        The court denies Hee's Motion to Dismiss for Grand Jury
Abuse and to Unseal Grand Jury Transcripts and Materials, Motion
for Judgment of Acquittal, Renewed Motion to Dismiss Case With
Prejudice, and Motion for New Trial.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, October 27, 2015.



                         /s/ Susan Oki Mollway
                        Susan Oki Mollway
                        Chief United States District Judge

United States of America v. Albert S.N. Hee, Crim. No. 14-00826 SOM; ORDER DENYING (1)
MOTION TO DISMISS FOR GRAND JURY ABUSE AND TO UNSEAL GRAND JURY TRANSCRIPTS AND
MATERIALS, (2) MOTION FOR JUDGMENT OF ACQUITTAL, (3) RENEWED MOTION TO DISMISS, AND
(4) MOTION FOR NEW TRIAL.